**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

**COQEICMIRTVU DAVIS,**

**Plaintiff,**

**v.** **Civil Action No.: 4:20-CV-03365**

**REGIONAL ACCEPTANCE CORPORATION,**

**Defendant.**

**APPENDIX OF UNREPORTED CASES CITED IN MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO STAY**

| Page Number | Case Name |
|---|---|
| 1 | *Alesia v. Square, Inc.*, No. 20-cv-00806, 2020 U.S. Dist. LEXIS (N.D. Cal. Oct. 9, 2020) |
| 10 | *Aujuard v. Portfolio Recovery Assocs., LLC*, No. 2:18-cv-01130, 2020 U.S. Dist. LEXIS 185462 (E.D. Cal. Oct. 6, 2020) |
| 12 | *Bacon v. Artificial Grass Liquidators Location 1, Inc.*, No. 8:18-cv-01220, 2019 U.S. Dist. LEXIS 231120 (C.D. Cal. May 1, 2019) |
| 19 | *Blower v. Portfolio Recovery Assocs., LLC*, No. 19-cv-02270, 2020 U.S. Dist. LEXIS 130505 (S.D. Cal. July 23, 2020) |
| 21 | *Borden v. eFinancial, LLC*, No. 19-cv-1430, 2020 U.S. Dist. LEXIS 192912 (W.D. Wash. Oct. 16, 2020) |
| 25 | *Creasy v. Charter Communs., Inc.*, No. 20-cv-1199, 2020 U.S. Dist. LEXIS 177798 (E.D. La. Sept. 28, 2020) |
| 37 | *Cunningham v. Homeside Fin., LLC*, No. 17-cv-2088, 2017 U.S. Dist. LEXIS 197712 (D. Md. Nov. 30, 2017) |
| 40 | *Delozier v. Nationstar Mortg., LLC*, No. 3:16-cv-1433, 2016 U.S. Dist. LEXIS 183823 (M.D. Tenn. Oct. 27, 2016) |
| 42 | *Errington v. Time Warner Cable, Inc.*, No. 2:15-cv-02196, 2016 U.S. Dist. LEXIS 66317 (C.D. Cal. May 18, 2016) |
| 47 | *Franz v. Force Factor, LLC*, No. 20-cv-01012, 2020 U.S. Dist. LEXIS 213941 (S.D. Cal. Nov. 16, 2020) |

| Page Number | Case Name |
|---|---|
| 52 | *Hammond v. Floor & Décor Outlets of Am.*, No. 3:19-cv-01099, 2020 U.S. Dist. LEXIS 213686 (M.D. Tenn., Nov. 16, 2020) |
| 58 | *Jones v. Credit Acceptance Corp.,* No. 15-cv-13165, 2016 U.S. Dist. LEXIS 174152 (E.D. Mich. Oct. 31, 2016) |
| 62 | *Jones v. Fiorella Ins. Agency*, No. 20-cv-14105, 2020 U.S. Dist. LEXIS 119167 |
| 65 | *Loftus v. Signpost, Inc.*, No. 19-cv-7984, 2020 U.S. Dist. LEXIS 193130 (S.D.N.Y. Oct. 19, 2020) |
| 67 | *Mendoza v. UnitedHealth Group, Inc.*, No. 13-cv-1553, 2014 U.S. Dist. LEXIS 1616 (N.D. Cal. Jan. 6, 2014) |
| 70 | *Monaghan v. Sebelius*, No. 12-cv-15488, 2013 U.S. Dist. LEXIS 89585 (E.D. Mich. June 26, 2013) |
| 72 | *Neal v. Wal-Mart Stores, Inc.*, No. 3:17-cv-022, 2020 U.S. Dist. LEXIS 88203 (W.D.N.C. May 19, 2020) |
| 75 | *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-cv-1058, 2015 U.S. Dist. LEXIS 29573 (E.D. Tex. Mar. 11, 2015) |
| 85 | *Palmer v. Kci United States*, No. 4:19-cv-3084, 2020 U.S. Dist. LEXIS 204718 (D. Neb. Nov. 3, 2020) |
| 90 | *Rose v. Wells Fargo Advisors, LLC*, No. 1:16-cv-562, 2016 U.S. Dist. LEXIS 85287 (N.D. Ga. June 14, 2016) |
| 92 | *Saunders v. Sunrun, Inc.*, No. 19-cv-04548, 2020 U.S. Dist. LEXIS 202015 (N.D. Cal. Oct. 29, 2020) |
| 94 | *Sparling v. Doyle*, No. 13-cv-00323, 2014 U.S. Dist. LEXIS 200068 (W.D. Tex. Mar. 3, 2014) |
| 99 | *Trim v. Mayvenn, Inc.*, No. 20-cv-03917, 2020 U.S. Dist. LEXIS 205361 (N.D. Cal. Nov. 3, 2020) |
| 105 | *Whattoff-Hall v. Portfolio Recovery Assocs., LLC*, No. 3:19-cv-02267, 2020 U.S. Dist. LEXIS 130375 (S.D. Cal. July 23, 2020) |
| 107 | *Willis v. Big Lots, Inc.*, No. 2:12-cv-604, 2014 U.S. Dist. LEXIS 196721 (S.D. Ohio Apr. 16, 2014) |




As of: January 6, 2021 9:21 PM Z

# Aleisa v. Square, Inc.

United States District Court for the Northern District of California

October 9, 2020, Decided; October 9, 2020, Filed

Case No. 20-cv-00806-EMC

**Reporter**

2020 U.S. Dist. LEXIS 188024 *; 2020 WL 5993226

MISHARI ALEISA, et al., Plaintiffs, v. SQUARE, INC., A DELAWARE CORPORATION, Defendant.

**Counsel:** **[*1]** For Mishari Aleisa, Nicole Belluomini, Plaintiffs: Seyed Abbas Kazerounian, LEAD ATTORNEY, Kazerouni Law Group, APC, Costa Mesa, CA USA; Jason A. Ibey, Kazerouni Law Group, APC, St. George, UT USA; Yana Hart, Kazerouni Law Group, APC, San Diego, CA USA.

For Square, Inc., A Delaware Corporation, Defendant: Shannon Z. Petersen, LEAD ATTORNEY, Sieun Jennifer Lee, Sheppard Mullin Richter & Hampton LLP, San Diego, CA USA; Tiffany Cheung, LEAD ATTORNEY, Michael Burshteyn, Morrison & Foerster LLP, San Francisco, CA USA; Cheyenne J. Overall, Morrison Foerster LLP, San Francisco, CA USA; Lisa S Yun, Sheppard Mullin Richter Hampton LLP, San Diego, CA USA; Nancy R. Thomas, Morrison & Foerster LLP, Los Angeles, CA USA.

**Judges:** EDWARD M. CHEN, United States District Judge.

**Opinion by:** EDWARD M. CHEN

## Opinion

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND GRANTING DEFENDANT'S MOTION TO STAY**

Docket Nos. 33, 42

Plaintiffs Mishari Aleisa and Nicole Belluomini filed a putative class action against Defendant Square, Inc. ("Square") asserting claims for violation of the Telephone Consumer Protection Act ("TCPA" or the "Act"), 47 U.S.C. §§ 201-231. *See* Docket No. 1 ("Compl."). Plaintiffs allege that Square texted them without their authorization in violation **[*2]** of the Act. *See id.*

Pending before the Court are Square's (1) amended motion to dismiss Belluomini's claims for lack of Article III standing under Federal Rule of Civil Procedure 12(b)(1);[1] and (2) motion to stay pending the Supreme Court's decision in *Facebook, Inc. v. Duguid* (*Duguid II*), No. 19-511 (U.S. filed Oct. 17, 2019). *See* Docket Nos. 33 (amending Docket No. 23), 42. For the reasons discussed below, Square's motion to dismiss is **DENIED** and its motion to stay is **GRANTED**.[2]

### I. BACKGROUND

[1] Defendant does not move to dismiss Aleisa's claims at this time.

[2] Because the Court grants Square's motion to stay pending the *Duguid II* decision, it need not address Square's motion to stay this action pending the Federal Communications Commission's (FCC's) definition of the statutory term "automatic telephone dialing system" (ATDS). *See* Docket No. 25.

A. Factual Background

The complaint alleges as follows. Belluomini is the regular and sole user of the cellphone number ending in 4446. Compl. ¶ 80. On May 12, 2017, Belluomini visited Taste Kitchen & Table ("Taste") in Fairfax, California. *Id.* ¶ 81. After placing her order, Taste processed Belluomini's credit card payment through Square's point-of-sale (POS) system. *Id.* ¶ 82. Belluomini alleges that she did not enter her cellphone number to receive a copy of her digital receipt or to earn loyalty rewards at Taste. *Id.* ¶ 83. Almost immediately after her transaction, however, Belluomini received the following automated text message from Square:




*Id.* ¶ 84-85. The link within the text message redirects to Square's website for Taste's **[*3]** loyalty program. *Id.* ¶ 86. According to Belluomini, Square's text messages caused her actual harm, including "an invasion of privacy," a "private nuisance," diminished battery life, and lost time. *Id.* ¶ 92.

Aleisa is the regular and sole user of the cellphone number ending in 5566. Compl. ¶ 57. On July 28, 2018, Aleisa visited Samovar Teashouse Café ("Samovar") in San Francisco, California. *Id.* ¶ 58. After placing his order, Samovar processed Aleisa's credit card payment through Square's POS system. *Id.* ¶ 59. The POS system invited Aleisa to join Samovar's loyalty program by providing his cellphone number, and he did. *Id.* ¶ 60. Almost immediately after the transaction, Aleisa received a text message stating that he earned a "loyalty star" from Samovar because of his purchase, which he could accumulate toward free products. *Id.* ¶ 61. According to Aleisa, he also received three other text messages following purchases at other food and beverage retailers without his authorization. *Id.* ¶¶ 65, 69, 71-73.

Importantly, both Plaintiffs allege that "Square sent loyalty texts to Plaintiff's cellphone number (and those of the putative class members) by using an ATDS as defined by 47 U.S.C. § 227(a)(1)." *Id.* ¶¶ 76, **[*4]** 89, 97, 98, 114, 117, 126(b), 133, 144,

B. Procedural History

On February 3, 2020, Plaintiffs filed a complaint against Defendant alleging non-willful (Count 1) and willful (Count 2) violations of the TCPA, which prohibits making "any call (other than a call made . . . with the prior express consent of the called party) using any automatic telephone dialing system [ATDS] or any artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . unless such call is made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii).

On April 17, 2020, Square filed its motion to dismiss Belluomini's claims for lack of Article III standing under Rule 12(b)(1), *see* Docket No. 23 ("MTD"), which it amended on July 2, 2020, *see* Docket No. 33 ("Am. MTD"). Meanwhile, Square also moved to stay this action pending the resolution of an FCC petition that it contends will decide how the agency interprets the term "ATDS." *See* Docket No. 25 ("First MTS") at 9. On August 7, 2020, Square filed a second motion to stay this action, this time pending the Supreme Court's decision in *Facebook, Inc. v. Duguid*, No. 19-511 (U.S. filed Oct. 17, 2019). *See* Docket No. 42 **[*5]** ("Second MTS").

## II. LEGAL STANDARD

A. Motion to Dismiss Under Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction. When subject matter jurisdiction is challenged, "[t]he party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). A Rule 12(b)(1) motion will be granted if the complaint, considered in its entirety, fails on its face to allege facts sufficient to

establish subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 (9th Cir. 2003). "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under [Rule] 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

The "irreducible constitutional minimum" of standing requires a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins* ("*Spokeo II*"), 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016). These three elements are referred to as, respectively, injury-in-fact, causation, and redressability. *Planned Parenthood of Greater Was. & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1100, 1108 (9th Cir. 2020). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements," which at the pleadings stage means "'clearly . . . alleg[ing] facts demonstrating' each element." **[*6]** *Spokeo II*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)).

B. Motion to Stay

A court's power to stay proceedings is incidental to its inherent power to control the disposition of its cases in the interests of efficiency and fairness to the court, counsel, and litigants. *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936). In determining whether to stay proceedings, the district court "must weigh competing interests and maintain an even balance" between the hardships that would be suffered by the parties if a stay were or were not granted, as well as judicial economy. *Id.* at 254-55. "If there is even a fair possibility" that the stay will harm the non-moving party, the party seeking the stay "must make out a clear case of hardship or inequity in being required to go forward." *Id.* at 255.

The Ninth Circuit has clarified that these competing interests include:

> (1) the possible damage which may result from the granting of a stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-55). However, "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' **[*7]** within the meaning of *Landis*." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005).

## III. MOTION TO DISMISS

Square contends that Belluomini lacks Article III standing because she has failed to allege injury-in-fact and causation.[3] Neither of these arguments has merit.

A. Injury-in-fact

Square's first argument is that the receipt of a single text message, even without consent and in violation of the TCPA, is not enough for Article III standing. Am. MTD at 8. In support of this proposition, Square cites to the Eleventh Circuit's decision in *Salcedo v. Hanna*, where the court held that a text message is akin to "having a flyer briefly waived in one's face . . . [a]nnoying, perhaps, but not a basis for invoking the jurisdiction of the federal courts." 936 F.3d 1162, 1172 (11th Cir. 2019). Whatever the reach of standing under *Salcedo*, this Court is governed by Ninth Circuit law. Notably, *Salcedo* does distinguish *Van Patten*: "We note that out sister circuit has reached the opposite conclusion in this context." 936 F.3d at 1170 (citing *Van Patten*, 847 F.3d at 1043

The Ninth Circuit's decision in *Van Patten* governs. *Van Patten* held that a single telephone call or text message from a telemarketer is sufficient to satisfy Article III's injury-in-fact requirement. In *Van Patten*, the plaintiff provided his cellphone number to a gym in the process **[*8]** of signing up for a gym membership. 847 F.3d 1037, 1040 (9th Cir.

[3] Square does not contest that Belluomini's injuries are redressable.

2017). After the plaintiff cancelled his membership, the gym texted Van Patten to offer him a special deal to rejoin the gym. *Id.* at 1041. The panel held that Congress established the TCPA to protect the plaintiff's substantive right to privacy, namely the right to be free from unsolicited telemarketing phone calls or text messages that "invade the privacy and disturb the solitude of their recipients." *Id.* at 1043. Therefore, "a violation of the TCPA is a concrete, *de facto* injury." *Id.* Significantly, the court stated "a" violation of the TCPA is sufficient. The court did not require multiple texts in order to constitute "a" TCPA violation. Moreover, the court noted "a plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress identified," which is that he/she/they received an unsolicited text message or telephone call from a telemarketer. *Id.* (quoting *Spokeo II*, 136 S. Ct. at 1549). *See also Duguid v. Facebook, Inc.* ("*Duguid I*"), 926 F.3d 1146, 1150 (9th Cir. 2019), *cert. granted in part*, 207 L. Ed. 2d 1118, 2020 WL 3865252 (U.S. 2020) (reaffirming *Van Patten*'s holding that a person who alleges receiving unsolicited text messages "adequately alleges a concrete injury in fact" under the TCPA).

Square cites to recent decisions from the **[*9]** Southern District of California that are readily distinguishable. *Selby v. Ocwen Loan Servicing, LLC* is inapplicable to the facts of this case because it involved debt-collection calls, which are exempted from the TCPA's prohibition against telemarketing calls. *See* No. 3:17-CV-973-CAB-BLM, 2017 U.S. Dist. LEXIS 189995, 2017 WL 5495095, at *3 ("Calls from debt collectors are undoubtedly unwanted, stressful, and frustrating, but the TCPA was not intended to protect any concrete interests associated with calls from debt collectors or creditors."). *Shuckett v. DialAmerica Mktg* is also distinguishable not only because it was a summary judgment decision, but also because the plaintiff in that case did not allege or introduce any evidence that she was aware of the call and that it caused her a nuisance. No. 17CV2073-LAB (KSC), 2019 U.S. Dist. LEXIS 127049, 2019 WL 3429184, at *3 (S.D. Cal. July 30, 2019) ("While a missed call may be sufficient to confer standing if the plaintiff can demonstrate that he or she was aware of the call and it caused nuisance, it is not sufficient for a plaintiff to allege simply that he or she *would have been aware* of the call given what they were doing on that day.").

Accordingly, Belluomini's allegations that she received an unsolicited text message from Square regarding Taste's loyalty program are sufficient **[*10]** to satisfy Article III's injury-in-fact requirement.

B. Causation

Square's lack-of-causation argument is premised on the disputed fact that Belluomini provided Square with her cellphone number and explicitly consented to enroll in Taste's loyalty program and to receive automated marketing texts from Square pertaining to that program. Am. MTD at 8, 10-12. Indeed, the *Van Patten* court dismissed the plaintiff's TCPA claims in that case because he "gave prior express consent to receive Defendant's text messages" by giving the gym "his cellular telephone number for the purpose of a gym membership contract." 847 F.3d at 1045. Therefore, unless plaintiff expressly withdrew his consent, the gym could send him automated text messages "about some things, such as follow-up questions about his gym membership application." *Id.* With consent, her TCPA claims would likely fail as a matter of law.[4]

---

[4] Square also cites to several decisions from this district for the proposition that a defendant does not "make" a text message or call within the meaning of the TCPA where the text message is triggered by the user's actions. Mot. 10-13. But all of those cases are distinguishable because they involved a user of an application or service—either the plaintiff or a third party—actively choosing to send text messages to some of its contacts through the application. *See, e.g., Cour v. Life360, Inc.*, No. 16-CV-00805-TEH, 2016 U.S. Dist. LEXIS 98945, 2016 WL 4039279, at *3 (N.D. Cal. July 28, 2016) ("Here by contrast, Life360 users choose which of their contacts should receive an invitation and then press an 'invite' button before invitations are sent."); *Figueroa v. Everalbum, Inc.*, No. C 17-05909 JSW, 2018 U.S. Dist. LEXIS 198967, 2018 WL 3399404, at *3 (N.D. Cal. May 9, 2018), *rev'd on other grounds*, 809 F. App'x 399 (9th Cir. 2020) ("The Ever App only sends invitational texts when a user makes the affirmative choice to allow the user to allow the App to access her list of contacts."); *Huricks v. Shopkick, Inc.*, No. C-14-2464 MMC, 2015 U.S. Dist. LEXIS 112596, 2015 WL 5013299, at *3 (N.D. Cal. Aug. 24, 2015) ("Shopkick offers evidence that, at the

In the complaint, however, Belluomini specifically alleges that she did *not* provide Square with her cellphone number, let alone consent to receive texts from Taste's loyalty program. Compl. ¶ 83. Therefore, if the Court focuses exclusively **[*11]** on the specific allegations in the complaint—as it must under *Iqbal/Twombly*—Square's argument cannot prevail at this juncture. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("[A] court must accept as true all of the allegations contained in a complaint." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

The more fundamental problem with Square's argument is that it goes to the merits, not standing. As Judge Gonzalez Rogers recently explained in *Berman v. Freedom Fin. Network, LLC*,

> *Defendants here confuse causation of plaintiff's injury with a defense to liability*. To establish the TCPA injury, all Berman need show is that he was contacted by defendants by means of an ATDS. . . . Express consent is an affirmative defense on which defendants bear the burden, in other words, an excuse for an otherwise liable defendant. Should defendants establish Berman's express consent, they can avoid liability to him *but will not eliminate this Court's jurisdiction to decide his claim*.

400 F. Supp. 3d 964, 982 (N.D. Cal. 2019) (emphasis added). Contesting the merits of causation, a common matter in dispute in tort and statutory cases, does not raise a constitutional standing issue in every case. *Cf. Paul v. Davis*, 424 U.S. 693, 700, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976) (holding that there is no constitutional "right to be free of injury wherever the State may be characterized as the tortfeasor" **[*12]** because "such a reading would make of the Fourteenth Amendment a font of tort law").

Even if standing were somehow implicated, a "[j]urisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues *going to the merits* of an action." *Id.* (emphasis added) (quoting *Sun Valley Gas., Inc. v. Ernst Enters*., 711 F.2d 138, 140 (9th Cir. 1983)). Such is the case here.

Square purports to offer *extrinsic* evidence that she received the text message because she agreed to Taste's loyalty program, confirmed her cellphone number, and pressed "Claim Your Star." Am. Mot. at 12. Square contends that the Court can consider this extrinsic evidence of consent because Square is mounting a "factual attack" to the complaint under Rule 12(b)(1), whereby "the challenger *disputes the truth of the allegations* that, by themselves, would otherwise invoke federal jurisdiction." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (emphasis added) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).[5] But not providing "express consent" is a necessary requirement of Belluomini's TCPA claim that is spelled out on the face of the statute. *See* 47 U.S.C. § 227(b)(1)(A)(iii) (prohibiting telemarketing calls "other than a call made . . . with the *prior express consent* of the called party" (emphasis **[*13]** added)). Thus, there is no way that the Court can resolve Square's factual attack on the Court's jurisdiction without also deciding the merits of Belluomini's TCPA claim. *See Berman*, 400 F. Supp. 3d at 979 (explaining that the court previously denied Rule 12(b)(1) motion to dismiss because "there are factual issues in dispute that cannot be determined based upon the record here"). This is a key factual dispute going to the merits and not appropriate for resolution as a standing question.

In sum, because the complaint alleges sufficient facts to establish injury-in-fact and causation under Article III, Square's 12(b)(1) motion to dismiss is

---

time plaintiffs received the subject texts, a user of its app 'must [have] proceed[ed] through a multi-step invitation flow within the app' to cause text messages to be sent to contacts in the user's phone.").

[5] By contrast, a "facial attack" occurs when a "challenger asserts that the allegations contained in the complaint are *insufficient on their face* to invoke federal jurisdiction." *Wolfe*, 392 F.3d at 363 (emphasis added) (quoting *Safe Air for Everyone*, 373 F.3d at 1039)).

**DENIED**.

## IV. MOTION TO STAY

Square also moves to stay the proceedings in this action pending the anticipated Supreme Court's decision in *Duguid II*. Second MTS at 6.

A. The Definition of ATDS

The TCPA defines an ATDS as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1) (emphases added). The TCPA empowers the FCC "to prescribe regulations to implement the requirements of this subsection." 47 U.S.C. § 227(b)(2); 47 C.F.R. § 1.2(a).

In July 2015, the FCC issued a declaratory order defining ATDS as any "dialing equipment **[*14]** [that] generally has the capacity to store or produce, and dial random or sequential numbers even if it is not presently used for that purpose, including when the caller is calling a set list of consumers." *In the Matter of Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991* ("2015 Order"), 30 FCC Rcd. 7961, 7971-72 (July 10, 2015). On March 16, 2018, the D.C. Circuit set aside this definition of ATDS as "an unreasonably expansive interpretation of the statute" because it "would appear to subject ordinary calls from any conventional smartphone to the Act's coverage." *ACA Int'l v. FCC*, 885 F.3d 687, 692, 435 U.S. App. D.C. 1 (D.C. Cir. 2018). After *ACA International*, the circuit courts have split on defining ATDS.[6]

In *Duguid I*, the plaintiff alleged that "Facebook maintained a database of phone numbers and—using a template and coding that automatically supplied the browser information and time of access—programmed its equipment to send automated messages to those numbers." 926 F.3d at 1150. The district court concluded that Facebook's platform was not an ATDS because "[p]laintiff's own allegations suggest *direct targeting* that is inconsistent with the sort of random or sequential number generation required for an ATDS." *Duguid v. Facebook, Inc.*, No. 15-CV-00985-JST, 2017 U.S. Dist. LEXIS 22562, 2017 WL 635117, at *4 (N.D. Cal. Feb. 16, 2017) (emphasis added) (quoting **[*15]** *Flores v Adir Int'l, LLC*, No. 15-cv-00076-AB, 2015 U.S. Dist. LEXIS 92176, 2015 WL 4340020, at *4 (C.D. Cal. July 15, 2015)). According to Square, the equipment it used to send Plaintiffs the loyalty text messages would not be an ATDS under this "direct targeting" exception because it only sends messages to specific customers immediately following their transactions, not randomly or sequentially. Second MTS at 8-9.

The Ninth Circuit reversed the district court, reasoning that

> In *Marks*, we clarified that the adverbial phrase "using a random or sequential number generator" modifies only the verb "to produce," and not the preceding verb, "to store." 904 F.3d at 1052. In other words, an ATDS need not be able to use a random or sequential generator to store numbers—it suffices to merely have the capacity to "store numbers to be called" and "to dial such numbers

---

[6] *Compare Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301, 1304-05 (11th Cir. 2020) ("Because neither phone system used randomly or sequentially generated numbers . . . the Act does not cover them."), *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 460 (7th Cir. 2020) (holding that the system at issue is not an ATDS because it "neither stores nor produces numbers using a random or sequential number generator"), *and Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018) ("The TCPA's prohibition on autodialers is [] not the proper means of redress" because "the prior owner of Dominguez's telephone number had affirmatively opted to receive them, not because of random number generation"), *with Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 (2d Cir. 2020) (holding that the defendant's program was an ATDS even though it did not store numbers using a random or sequential number generator), *Allan v. Penn. Higher Educ Assistance Agency*, 968 F.3d 567, 578-79 (6th Cir. 2020)(holding that an ATDS is an equipment that can automatically dial stored telephone numbers even if it does not store those numbers using an automated or sequential number generator), *and Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1049-50 (9th Cir. 2018) ("[T]he statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a 'random or sequential number generator,' but also includes devices with the capacity to dial stored numbers automatically").

automatically." *Id.* at 1053.

*Duguid I*, 926 F.3d at 1151. As a result, the Ninth Circuit defined ATDS as "equipment which has the capacity—(1) to store numbers to be called *or* (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically." *Duguid I*, 926 F.3d at 1150 (quoting *Marks*, 904 F.3d at 1053). This broad definition "includes a device that stores telephone numbers to be called, whether or not those numbers have been generated by a random or sequential number generator." **[*16]** *Marks*, 904 F.3d at 1043. The equipment that Square used to send Plaintiffs' loyalty text messages likely falls under this definition of ATDS.

On July 2, 2020, the Supreme Court granted Facebook's petition for certiorari in *Duguid II*, scheduling oral argument for December 8, 2020. 207 L. Ed. 2d 1118, 2020 WL 3865252, at *1. In doing so, the Supreme Court agreed to decide the following question:

> Whether the definition of ATDS in the TCPA encompasses any device that can "store" and "automatically dial" telephone numbers, even if the device does not "us[e] a random or sequential number generator."

Petition for Writ of Certiorari, *Duguid II*, No. 19-511 (U.S. filed Oct. 17, 2019). The Supreme Court is likely to issue an opinion on this question in the first half of 2021, which should resolve the circuit split and provide a uniform definition of ATDS. It may also address the issue of capacity versus use.

B. Stay Pending *Duguid II*

All three of the *Landis* factors weigh in favor of granting Square's motion to stay the proceedings pending the Supreme Court's forthcoming decision in *Duguid II*. First, and most importantly, issuing a stay until the Supreme Court decides *Duguid II* would greatly simplify a key question of law in the instant case—what constitutes an **[*17]** ATDS. There is no dispute that Plaintiffs must prove that Square sent them loyalty text messages using an ATDS. *See* 47 U.S.C. § 227(b)(1)(A)(iii). But whether Square used an ATDS will depend on how the Supreme Court defines that term in *Duguid II*. If the Supreme Court reverses the Ninth Circuit and holds that an ATDS must use a "random or sequential number generator," 47 U.S.C. § 227(a)(1), then Plaintiff's TCPA claim is likely doomed because, according to Square, the equipment it used to send loyalty text messages to Plaintiffs does not use a random or sequential number generator. In fact, Plaintiffs allege in the complaint that their cellphone numbers are "*captured, stored* and *linked* with the payment card used to complete the transaction," such that "Square . . . [*automatically*] sends *that consumer* . . . unsolicited 'loyalty texts' for marketing purposes." Compl. ¶¶ 13, 15, 17-18 (emphasis added). The complaint does not allege that Square's ATDS uses random or sequential number generator. Therefore, the Supreme Court's upcoming *Duguid II* opinion might not only decide an important legal question in this case, it could altogether dispose of Plaintiffs' complaint as a matter of law. *United States v. Garcia-Gomez*, No. 14-CR-00120-EMC-5, 2019 U.S. Dist. LEXIS 12623, 2019 WL 331279, at *2 (N.D. Cal. Jan. 25, 2019) **[*18]** (granting a stay because the Supreme Court granted certiorari, and the Ninth Circuit ordered additional briefing, in cases that would define a term that is central to one of the defendant's claims); *Bay Area Surgical Grp., Inc. v. Aetna Life Ins. Co.*, No. 5:13-CV-05430 EJD, 2014 U.S. Dist. LEXIS 83152, 2014 WL 2759571, at *3 (N.D. Cal. June 17, 2014) ("Efficiency and simplification resulting from the abatement of a federal action may weigh in favor of a stay.").

Plaintiffs' rely heavily on *Komaiko v. Baker Techs., Inc.*, where the court denied the defendant's request for a stay because

> [U]nder Ninth Circuit precedent that is not before the Supreme Court in [*Duguid II*], Baker's technology could still be considered an ATDS under Ninth Circuit law if it *has the capacity* to store or produce numbers 'using a random or sequential number generator,' regardless of whether it was being used for that purpose when it sent texts to the dispensaries' customers."

No. 19-CV-03795-DMR, 2020 U.S. Dist. LEXIS 143953, 2020 WL 5104041, at *3 (N.D. Cal. Aug.

11, 2020). But as noted above, the complaint herein does not allege the capacity to generate random or sequential numbers, and at the hearing, Plaintiffs conceded they have no information at present to so indicate.

Second, "the early stage of this litigation weighs in favor of a stay." *Capella Photonics, Inc. v. Cisco Sys., Inc.*, No. C-14-3348 EMC, 2015 U.S. Dist. LEXIS 27953, 2015 WL 1006582, at *2 (N.D. Cal. Mar. 6, 2015) **[*19]** . The case is still in the pleadings stage, even though the parties have conducted very limited jurisdictional discovery. "Consequently, very little substantive work has been done in this case, and there are no immediately pressing deadlines or trial dates." *Id.* "In the absence of a stay, the parties will have to expend time and money conducting discovery on an issue central to Defendant's liability while lacking a clear idea of the law that will ultimately apply at summary judgment or at trial." *Ambrezewicz v. LeadPoint, Inc.*, No. EDCV162331JGBKKX, 2017 U.S. Dist. LEXIS 214342, 2017 WL 8185862, at *4 (C.D. Cal. May 8, 2017). Indeed, the parties and the Court would have to engage in costly and time-consuming class action discovery and ongoing litigation, which could be wasted if the Supreme Court reverses the Ninth Circuit in *Duguid II*. *Larson v. Trans Union, LLC*, No. 12-CV-05726-WHO, 2015 U.S. Dist. LEXIS 83459, 2015 WL 3945052, at *8 (N.D. Cal. June 26, 2015) ("[I]f the case is not stayed, the Court, the parties, and the absent class members . . . would all face the risk of dedicating substantial resources to proceedings that may ultimately prove unnecessary.").

Third, Plaintiffs argue that they will be prejudiced because a stay will cause "the irretrievable loss of **[*20]** critical evidence." Docket No. 49 ("Opp'n to MTS"), at 12-14. Specifically, Plaintiffs worry that Twilio and Bandwidth, Square's former vendors who sent the text messages at issue in this case, will destroy their records related to the text messages. *Id.* at 12. Indeed, Plaintiffs have submitted evidence that they are likely to "struggle in obtaining text message logs from third party carriers because carrier's average retention period of text message logs (without consent) is approximately 18-24 months." *Id.* at 13. These are legitimate concerns, but the Court is convinced that the parties have several tools at their disposal—like preservation agreements or preservation subpoenas, for example—that can preserve relevant third-party vendor information while the case is stayed. Moreover, Square risks sanctions, including issues or presumption sanctions, if relevant discovery is lost. Therefore, with the appropriate protective measures in place, the risk of potentially lost evidence is insufficient to deny a stay in the face of a pending Supreme Court decision that will decide a key legal question in the case. *Larson*, 2015 U.S. Dist. LEXIS 83459, 2015 WL 3945052, at *8 ("I agree with Trans Union that it is implausible that a one-year delay will cause either of these **[*21]** things to occur, and Larson provides no specific facts or reasoning that indicate otherwise."); *Bay Area Surgical Grp.*, 2014 U.S. Dist. LEXIS 83152, 2014 WL 2759571, at *5 ("This nebulous contention [regarding the risk of lost evidence] is entirely unsupported, however; just what evidence is at risk and how it could possibly be lost or destroyed is a mystery.").[7]

Accordingly, Square's motion to stay the proceedings in this action pending the Supreme Court's decision in *Duguid II* is **GRANTED**. The parties are directed to meet, confer, and notify the Court on the best way to preserve relevant evidence in the hands of Square's third-party vendors. The Court will maintain the stay if the parties provide the Court sufficient assurances that relevant third-party vendor information will be preserved for the duration of the stay. If such assurances are not provided, the Court reserves the authority to allow limited preservative discovery directed to those third-party vendors.

## V. CONCLUSION

Square's motion to dismiss is **DENIED**. Square's motion to stay pending the Supreme Court's decision in *Duguid II* is **GRANTED**.

[7] If, however, the Court becomes convinced that no adequate protective measure can be established, it will consider permitted limited preservative discovery.

This order disposes of Docket Nos. 23, 25, 33, and 42.

**IT IS SO ORDERED**.

Dated: October 9, 2020

/s/ Edward M. Chen

EDWARD M. CHEN

United States District Judge

---

End of Document

No *Shepard's* Signal™
As of: January 6, 2021 9:23 PM Z

# Aujuard v. Portfolio Recovery Assocs., LLC

United States District Court for the Eastern District of California

October 6, 2020, Decided; October 6, 2020, Filed

Case No. 2:18-cv-01130-TLN-CKD

**Reporter**
2020 U.S. Dist. LEXIS 185462 *

CAMERON AUJUARD, Plaintiff, v. PORTFOLIO RECOVERY ASSOCIATES, LLC; and DOES 1 - 10 inclusive, Defendant.

**Counsel: [*1]** For Portfolio Recovery Associates, LLC, Defendant: TROUTMAN PEPPER, HAMILTON SANDERS LLP, San Diego, CA.

**Judges:** Troy L. Nunley, United States District Judge.

**Opinion by:** Troy L. Nunley

## Opinion

### STIPULATION AND ORDER TO STAY CASE

Pursuant to the Civil L.R. 143, Defendant Portfolio Recovery Associates, LLC ("PRA") and Plaintiff Cameron Aujuard ("Plaintiff") (together, the "parties"), through their respective counsel, stipulate and respectfully request a stay of all proceedings in this case pending the decision of the Supreme Court of the United States in *Facebook, Inc. v. Duguid*, No. 19-511, 2020 U.S. LEXIS 3559 (July 9, 2020). Accordingly, the parties STIPULATE and AGREE as follows:

1. On April 2, 2018, Plaintiff filed the present action against PRA for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788, *et seq.* (Dkt. No. 1-1.)

2. In connection with her TCPA claims, Plaintiff alleges PRA used an automatic telephone dialing system to place telephone calls to her cellular telephone without her prior express consent. (*See* Dkt. No. 1-1 ¶¶ 11, 13.)

3. In its Answer to the Complaint, PRA asserted that "the telephone system used to allegedly contact Plaintiff does not constitute an automatic **[*2]** telephone dialing system ("ATDS") under the TCPA. (*See* Dkt. No. 4.)

4. On July 9, 2020, the Supreme Court of the United States granted certiorari in *Facebook, Inc. v. Duguid*, No. 19-511. The central issue the Supreme Court will review and consider in *Facebook* is the definition of an automatic telephone dialing system under the TCPA. Specifically, "[w]hether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'" *See* Petition for Writ of Certiorari at ii, *Facebook, Inc.*, No. 19-511 (U.S. Oct. 17, 2019). The case will be argued before the Supreme Court during the October 2020 Term.

5. As evidenced by the parties' pleadings, PRA's Motion for Summary Judgment, (Dkt. No. 19), and Plaintiff's opposition to PRA's Motion for Summary Judgment, (Dkt. No. 23), the definition of an automatic telephone dialing system under the

TCPA is a central, and disputed, issue in the present action.

6. The parties agree that a stay of all proceedings in this matter is appropriate until the Supreme Court issues a decision in *Facebook* regarding the definition of an automatic **[*3]** telephone dialing system under the TCPA.

7. The proposed stay is in the furtherance of judicial economy and will avoid unnecessary expense for the parties and the Court.

8. The proposed stay is for good cause and is not made for an improper purpose. Neither party will suffer any prejudice as a result of the stay.

IT IS THEREFORE STIPULATED AND AGREED between the parties, by and through their respective counsel, that, subject to this court's approval:

1. All proceedings in this action are stayed pending the decision of the Supreme Court of the United States in *Facebook, Inc. v. Duguid*, No. 19-511, 2020 U.S. LEXIS 3559 (July 9, 2020).

2. The parties shall provide the Court with a joint status report within fourteen (14) days of the Supreme Court's decision in *Facebook*.

3. The stay may be lifted at any time by order of the court. Respectfully submitted this 6th day of October 2020:

*/S/ Jessica Lohr*

Jessica Lohr

Troutman Pepper

Hamilton Sanders LLP

11682 El Camino Real, Suite 400

San Diego, CA 92130-2092

Tel: 858-509-6000

Fax: 858-509-6040

Email: jessica.lohr@troutman.com

Attorney for Defendant

Portfolio Recovery Associates, LLC

*/S/ Todd M. Friedman*

Todd M. Friedman, Esq.

Law Offices of Todd M. Friedman,

P.C.

21550 Oxnard St., Suite **[*4]** 780

Woodland Hills, CA 91367

Tel: 866-598-5042

Fax: 866-633-0228

Email: tfriedman@toddflaw.com

Attorney for Plaintiff

Cameron Aujuard

**PURSUANT TO STIPULATION, IT IS SO ORDERED**.

Dated: October 6, 2020

/s/ Troy L. Nunley

Troy L. Nunley

United States District Judge

---

End of Document



As of: January 6, 2021 9:24 PM Z

# Bacon v. Artificial Grass Liquidators Location 1, Inc.

United States District Court for the Central District of California

May 1, 2019, Decided; May 1, 2019, Filed

Case No. 8:18-cv-01220-JLS-ADS

**Reporter**
2019 U.S. Dist. LEXIS 231120 *

Adrian Bacon v. Artificial Grass Liquidators Location 1, Inc.

**Counsel:** **[*1]** ATTORNEYS PRESENT FOR PLAINTIFF: Not Present.

ATTORNEYS PRESENT FOR DEFENDANT: Not Present.

**Judges:** JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE.

**Opinion by:** JOSEPHINE L. STATON

## Opinion

**CIVIL MINUTES — GENERAL**

**PROCEEDINGS: (IN CHAMBERS) ORDER: (1) DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, TO STRIKE CLASS ALLEGATIONS (Doc. 24); (2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STAY (Doc. 25)**

Before the Court are two Motions filed by Defendant Artificial Grass Liquidators Location 1, Inc.: a Motion for Judgment on the Pleadings, or in the Alternative, to Strike Class Allegations (MJP, Doc. 24); and a Motion to Stay (MTS, Doc. 25.) Plaintiff opposed both motions (MJP Opp., Doc. 27; MTS Opp., Doc. 28), and Defendant replied (MJP Reply, Doc. 29; MTS Reply, Doc. 30). The Court finds this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. R. 7-15. Accordingly, the hearing set for **May 3, 2019, at 10:30 a.m., is VACATED**. For the following reasons, the Court DENIES Defendant's Motion for Judgment on the Pleadings, or in the Alternative, to Strike Class Allegations, and GRANTS in part and DENIES in part Defendant's Motion to Stay.

### I. BACKGROUND

Defendant is **[*2]** a synthetic turf company. (Compl. ¶ 32, Doc. 1.) On July 5, 2018, Plaintiff alleges that Defendant sent him an automated promotional text message. (*Id.* ¶ 35.) Plaintiff claims that he did not provide Defendant with his consent to be contacted by automated text messages. (*Id.* ¶¶ 38-40.) Plaintiff alleges, on information and belief, that Defendant sent the same or similar text message to individuals throughout the country. (*Id.* ¶ 42.)

On July 10, 2018, Plaintiff filed this action, on behalf of himself and a putative class, alleging violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b). (Compl. ¶¶ 83-90.) On February 15, 2019, Defendant filed the instant motions, seeking judgment on the

pleadings, to strike the class allegations in the Complaint, and to stay this action pending two Ninth Circuit cases and the Federal Communications Commission's ("FCC") anticipated clarification of the definition of an "automatic telephone dialing system" (ATDS) under the TCPA. (*See* MJP at 1-2; MTS at 1.)

## II. MOTION FOR JUDGMENT ON THE PLEADINGS

### A. Legal Standard

"The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing. Because the motions are functionally identical, the same standard **[*3]** of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog." *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Here, where Defendant seeks dismissal for Plaintiff's failure to plead viable claims, the appropriate analog is Rule 12(b)(6). *U.S. ex rel. Cafasso v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).

In deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all "well-pleaded factual allegations" in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). A court must draw all reasonable inferences in the light most favorable to the non-moving party. See *Daniels-Hall v. National Education Association*, 629 F.3d 992, 998 (9th Cir. 2010). Yet, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A plaintiff must not merely allege conduct that is conceivable; "[w]hen a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation **[*4]** marks omitted).

### B. Discussion

Defendant argues that Plaintiff's claim fails as a matter of law because his "interests are not within the 'zone of interests' intended to be protected by the TCPA because he and [his counsel] use the statute as a business venture rather than to rectify their legitimate consumer protection interests." (MJP at 5.) Defendant argues — relying solely on information outside of the Complaint — that Plaintiff and his counsel are both attorneys that file frivolous TCPA actions on behalf of one another for the purpose of extracting attorneys' fees from companies like Defendant. (*Id.* at 2-3; *See* Request for Judicial Notice, Doc. 24-2.) Thus, Defendant argues that Plaintiff uses the TCPA "as a business" and falls outside of the zone of interests protected by the statute. For support, Defendant cites to *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 804-806 (W.D. Penn. 2016),[1] where the court concluded, on summary judgment, that a plaintiff fell outside the zone of interests of the TCPA based on her admission that she purchased prepaid cell phones for sole purposed of bringing TCPA lawsuits. *Id.* at 799.

---

[1] Defendant also refers in passing to *Tel. Sci. Corp. v. Asset Recovery Sols., LLC*, No. 15-CV-5182, 2016 U.S. Dist. LEXIS 104234, 2016 WL 4179150 (N.D. Ill. Aug. 8, 2016), where the court concluded, on a Rule 12(b)(6) motion, that a corporation operating a service to help consumers avoid computerized telephone calls was not within the zone of interests of the TCPA. 2016 U.S. Dist. LEXIS 104234, [W]at *15. Obviously, this action is distinguishable because Plaintiff is *not* a corporation and nothing in the Complaint suggests that Plaintiff "provid[es] telecommunication services rather than consum[es] them." 2016 U.S. Dist. LEXIS 104234, [W]at *15 (quoting *Cellco P'ship v. Wilcrest Health Care Mgmt. Inc.*, No. CIV.A. 09-3534 MLC, 2012 U.S. Dist. LEXIS 64407, 2012 WL 1638056, at *9 (D.N.J. May 8, 2012)).

Defendant's argument fails because it relies solely on information outside of the Complaint. The Court DENIES Defendant's Request for Judicial Notice of the various **[*5]** lawsuits Plaintiff and his counsel have filed. (*See* RJN at 1-3.) "[W]hile 'undisputed matters of public record' are judicially noticeable, a court may not take notice of disputed facts in public records." *Pinterest, Inc. v. Pintrips, Inc.*, 15 F. Supp. 3d 992, 997 (N.D. Cal. 2014) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)). "A 'hotly contested question cannot be answered solely by reference to information gleaned from judicially noticeable documents.'" *Blech v. Gantman*, Case No. 8:18-cv-02086-JLS-JDE, 2019 U.S. Dist. LEXIS 131066 at *7 (C.D. Cal. Apr. 24, 2019) (quoting *Pinterest*, 15 F. Supp. at 997). Thus, the Court cannot dismiss Plaintiff's Complaint solely by reference to judicially noticeable documents that purportedly establish that Plaintiff uses the TCPA as a business. Assuming without deciding that *Stoops* was correctly decided, it was resolved on a summary judgment motion based on the plaintiff's deposition testimony. *See Stoops*, 197 F. Supp. 3d at 799, 805. Here, there is simply nothing in Plaintiff's Complaint suggesting that he uses the TCPA "as a business venture." (*See* MJP at 5.)

Accordingly, the Court DENIES Defendant's Motion for Judgment on the Pleadings.

## III. MOTION TO STRIKE CLASS ALLEGATIONS

### A. Legal Standard

Under Rule 12(f), a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure **[*6]** of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial. . .." *Whittlestone, Inc. v. Handi—Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds*, 510 U.S. 517, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994)).

"[M]otions to strike, as a general rule, are disfavored." *Beal v. Lifetouch, Inc.*, No. CV 10-8454-JST (MLGx), 2011 U.S. Dist. LEXIS 33758, 2011 WL 995884, at *7 (C.D. Cal. Mar. 15, 2011) (quoting *Stabilisierungsfonds Fur Wein v. Kaiser*, 647 F.2d 200, 201, 207 U.S. App. D.C. 375 (D.C. Cir. 1981)). "This is because they are 'often used as delaying tactics, and because of the limited importance of pleadings in federal practice.'" *Id.* (quoting *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996)). Thus, "[m]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Id.* (quoting *Lilley v. Charren*, 936 F. Supp. 708, 713 (N.D.Cal.1996)). "Rule 12(f) is 'neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint.'" *Yamamoto v. Omiya*, 564 F.2d 1319, 1327 (9th Cir.1977). "Were [courts] to read Rule 12(f) in a manner that allowed litigants to use it as a means to dismiss some or all of a pleading ..., [they] would be creating redundancies within the Federal Rules of Civil Procedure, because a Rule 12(b)(6) motion (or a motion for summary judgment at a later stage in the proceedings) already serves such a purpose." *Whittlestone*, 618 F.3d at 974.

### B. Discussion

Defendant argues that because Plaintiff uses the TCPA "as a business," he is "uniquely unqualified to serve as a class representative." **[*7]** (MJP at 6.) Defendant cites to cases that have denied motions for class certification to TCPA-attorney plaintiffs. *See, e.g.*, *Nghiem v. Dick's Sporting Goods, Inc.*, 318 F.R.D. 375, 381 (C.D. Cal. 2016) (holding that "plaintiffs' attorney specializing in consumer and debtor disputes" was atypical and inadequate representative for class of consumers).

The Court concludes that Defendant's Motion to Strike is "premature at the pleadings stage, as the issue of class certification is not yet before the Court." *Beal*, 2011 U.S. Dist. LEXIS 33758, 2011 WL 995884, at *7. "[T]he issue of class relief is generally more appropriately determined though a

motion for class certification." *Lightbourne v. Printroom Inc.*, Case No.: SACV 13-876-JLS (RNBx), 2014 U.S. Dist. LEXIS 194729, 2014 WL 12597108, at *8 (C.D. Cal. Sept. 8, 2014). "This is because 'the shape and form of a class action evolves only through the process of discovery.'" *Id.* (quoting *In re Wal-Mart Stores, Inc. Wage and Hour Litigation*, 505 F.Supp.2d 609, 615 (N.D. Cal. 2007) (internal citation omitted)); *see also* 7AA Charles Alan Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure Civil § 1785.3 (3d 2005) ("As a practical matter, the court's determination [as to class susceptibility] usually should be predicated on more information than the complaint itself affords. Thus, courts frequently have ruled that discovery relating to the issue whether a class action is appropriate needs to be undertaken before deciding whether to allow the action **[*8]** to proceed on a class basis.")

Accordingly, the Court DENIES Defendant's Motion to Strike.

## IV. MOTION TO STAY

Defendant argues for a stay pursuant to the Court's inherent authority pending the determination of two Ninth Circuit appeals and a possible clarification from the FCC regarding the definition of an ATDS. (MTS at 4, 6.) In the alternative, Defendant argues for a stay pursuant to the primary jurisdiction doctrine pending the FCC's clarification. (*Id.* at 10.)

### A. Inherent Authority

#### 1. Legal Standard

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936). Accordingly, "[a] trial court may . . . enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case . . . [regardless of] whether the separate proceedings are judicial, administrative, or arbitral in character . . . ." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979).

The decision whether to grant a stay is committed to the "sound discretion" of the district court and is based on weighing "the competing interests which will be affected by the granting or refusal to grant a stay . . .." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). Specifically, **[*9]** in determining whether to stay a proceeding, the court considers: (1) "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer in being required to go forward"; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.*

#### 2. Discussion

First, as to the pending Ninth Circuit cases, *Gallion v. Charter Commc'ns, Inc.*, No. 18-55667 (9th Cir.) and *Duguid v. Facebook, Inc.*, No. 17-15320 (9th Cir.), both cases involve whether the TCPA violates the First Amendment. Specifically, in 2015 Congress added the government-debt exception to the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii). *See Fontes v. Time Warner Cable, Inc.*, Case No. 2:14-CV-02060-CAS(CWx), 2018 U.S. Dist. LEXIS 227760, 2018 WL 5901158, at *2 (C.D. Cal. Aug. 20, 2018). The defendants in *Gallion* argued that the addition of this exception renders § 227(b)(1)(A)(iii) a content-based regulation and thus it must withstand strict scrutiny. *See Gallion v. Charter Commc'ns, Inc.*, 287 F. Supp. 3d 920, 925-26 (C.D. Cal. Feb. 26, 2018.) The district court in *Gallion* agreed with four other district courts and concluded that though § 227(b)(1)(A)(3) was indeed now subject to strict scrutiny, it withstood such scrutiny. *See id.* at 931 (citing *Brickman v. Facebook, Inc.*, 230 F. Supp. 3d 1036, 1045-49 (N.D. Cal. 2017); *Holt v. Facebook, Inc.*, 240 F. Supp. 3d 1021, 1033-34 (N.D. Cal. 2017); *Mejia v. Time Warner Cable Inc.*, No. 15-CV-6445 (JPO), 2017 WL 3278926, at *14-17 (S.D.N.Y. Aug. 1, 2017); **[*10]** *Greenley v. Laborers' Int'l Union of N.*

*Am.*, 271 F .Supp. 3d 1128, 1148-51 (D. Minn. 2017)). While the district court in *Duguid* did not decide the First Amendment issue, the defendants revived the argument on appeal. *See Duguid v. Facebook, Inc.*, No. 15-CV-00985-JST, 2016 U.S. Dist. LEXIS 39628, 2016 WL 1169365, at *6 (N.D. Cal. Mar. 24, 2016); *Duguid v. Facebook, Inc.*, No. 17-15320, Doc. 59 (9th Cir. Nov. 8, 2018). The Ninth Circuit heard oral arguments in *Duguid* and *Gallion* on March 11, 2019.[2]

Two district courts have ordered stays pending the result of *Gallion* and the Court agrees with their reasoning. *See Fontes*, 2018 WL 5901158, at *2; *Meza v. Sirius XM Radio, Inc.*, Case No.: 17-cv-2252-AJB-JMA, 2018 U.S. Dist. LEXIS 164601, 2018 WL 4599718, at *3-5 (C.D. Cal. Sept. 25, 2018). Similar to *Fontes*, "Defendant[] challenge[s] the constitutionality of the TCPA, and argue[s] that this challenge may moot its claimed liability." *See Fontes*, 2018 WL 5901158, at *2. (*See* Answer at 20, Doc. 16.) Though Plaintiff argues that *Gallion* is "unlikely to provide Defendant any relief from this matter" (MTS Opp. at 2), "irrespective of how the Ninth Circuit rules on the TCPA's constitutionality, its decision will provide controlling guidance on one of defendant's affirmative defenses." *Fontes*, 2018 WL 5901158, at *3. Thus, a stay will simplify the issues in this case. Further, any prejudice to Plaintiff from a stay will be minimal. As noted above, oral argument was heard **[*11]** in *Gallion* and *Duguid* over a month ago and thus a decision on the First Amendment issue will likely soon issue. Moreover, "[w]hile being required to defend a suit, without more, does not constitute a clear case of hardship or inequity, courts have recognized that the burden of proceeding with potentially unnecessary litigation can favor granting a stay, particularly in conjunction with the savings to judicial resources." *Fontes*, 2018 WL 5901158, at *3 (internal citations and quotations marks omitted). Accordingly, the Court concludes that a stay is warranted pending the Ninth Circuit's determination of *Gallion* and *Duguid*.

However, a stay is not warranted under the Court's inherent authority pending the FCC's possible clarification of the definition of an ATDS in the wake of *ACA Int'l v. FCC*, 885 F.3d 687, 435 U.S. App. D.C. 1 (D.C. Cir. 2018). Defendant argues that whether the device it used to contact Plaintiff is an ATDS is "one of the central issues in this case." (MTS at 1.) *ACA* set aside the FCC's 2015 definition of an ATDS. *See ACA*, 885 F.3d at 695. Thus, Defendant argues, the Court should stay this action pending the FCC's interpretation of ATDS after *ACA*. (MTS at 1.)

As another court has explained, however, "there is no guarantee that an FCC action is on the horizon or would ultimately simplify issues, proof, and questions of law **[*12]** in this case." *Knapper v. Cox Communications, Inc.*, No. CV-17-00913-PHX-SPL, 2019 U.S. Dist. LEXIS 8274, 2019 WL 250430, at *4 (D. Ariz. Jan. 27, 2019) (internal quotation marks omitted). Thus, a stay in this action pending an FCC decision could be indefinite, which would prejudice Plaintiff. Further, in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018), the Ninth Circuit ruled on the definition of an ATDS after *ACA*. As such, a stay is unnecessary because *Marks* provides binding guidance on the meaning of ATDS after *ACA*. *See Knapper*, 2019 WL 250430, at *2, *4. Finally, though it is possible that the FCC could, "at some point in time, [] rule on potentially relevant and dispositive issues in this case," this "argument alone . . . is not a sufficient basis for claiming hardship or inequity." *Id.* (citing *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005)).

Accordingly, pursuant to the Court's inherent authority, the Court GRANTS Defendant's Motion to Stay pending the Ninth Circuit's determination of *Gallion* and *Duguid*, but DENIES it as to the FCC's possible clarification of the definition of an ATDS.

**B. Primary Jurisdiction**

[2] The Ninth Circuit stayed appeals in *Brickman* and *Holt* pending the resolution of *Gallion* and *Duguid*. *See Brickman v. Facebook Inc.*, No. 17-80080, Doc. 29, 2018 U.S. App. LEXIS 36430 (9th Cir. Dec. 21, 2018); *Holt v. Facebook Inc.*, No. 17-80086, Doc. 31, 2018 U.S. App. LEXIS 36430 (9th Cir. Dec. 21, 2018).

**1. Legal Standard**

"The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). "The doctrine is prudential, and applies when 'a court **[*13]** determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch.'" *Tran v. Sioux Honey Ass'n, Cooperative*, Case No. 8:17-cv-110-JLS—JCGx, 2017 U.S. Dist. LEXIS 193871, 2017 WL 5587276, at *1 (C.D. Cal. Oct. 11, 2017) (quoting *Clark*, 523 F.3d at 1114). "The doctrine applies only if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency . . . and if protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *Id.* (quoting *Clark*, 523 F.3d at 1114) (internal quotation marks omitted).

"When a district court determines that primary jurisdiction applies, it enables a 'referral' of the issue to the relevant agency." 2017 U.S. Dist. LEXIS 193871, [WL] at *2 (quoting *Clark*, 523 F.3d at 1115). "This means the court either stays proceedings or dismisses the case without prejudice, and the parties seek an administrative ruling—there is no formal transfer between the court and the agency." *Id.* (quoting *Clark*, 523 F.3d at 1115) (internal quotation marks omitted). "No fixed formula exists for applying the doctrine, but courts have traditionally examined the following factors: (1) [a] **[*14]** need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Id.* (quoting *Clark*, 523 F.3d at 1115) (internal quotation marks omitted). "[C]ourts must also consider whether invoking primary jurisdiction would needlessly delay the resolution of claims." *Id.* (quoting *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 760 (9th Cir. 2015)). "In *Astiana*, the Ninth Circuit stated that '[u]nder our precedent, 'efficiency' is the 'deciding factor' in whether to invoke primary jurisdiction." *Id.* (quoting *Astiana*, 783 F.3d at 760).

**2. Discussion**

Here, "Congress has delegated the FCC with the authority to make rules and regulations to implement the TCPA." *Knapper*, 2019 WL 250430, at *2 (citing *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009)). "Therefore, the FCC has interpretative authority over the TCPA and its accompanying regulations." *Id.* Accordingly, "the second through fourth prongs are met," and the issue here is only whether the FCC needs to resolve the definition of an ATDS. *Id.*

The Court agrees with *Knapper* that the FCC does not need to decide the definition of an ATDS before the Court can resolve this case. *Id.* Given the Ninth Circuit's **[*15]** guidance in *Marks*, the definition of an ATDS is not a matter of first impression for the Court. *Knapper*, 2019 WL 250430, at *2. Further, the FCC could take quite awhile to issue an ATDS ruling and waiting for such a ruling would "needlessly delay the resolution" of Plaintiff's case. *See Astiana*, 783 F.3d at 760.

Accordingly, the Court DENIES Defendant's Motion to Stay pursuant to the primary jurisdiction doctrine.

**V. <u>CONCLUSION</u>**

For the foregoing reasons, the Court:

- DENIES Defendant's Motion for Judgment on the Pleadings, or in the Alternative, to Strike Class Allegations;

- and GRANTS Defendant's Motion to Stay as to the Ninth Circuit's determination of *Gallion* and *Duguid*, but DENIES it as to the FCC's possible clarification of the definition of an ATDS.

Defendant is ORDERED to file a status report **every 30 days from the date of this Order** regarding *Gallion* and *Duguid*'s progress and to notify the Court within **fourteen (14) days** of a decision in either case.

---

End of Document

Cited
As of: January 6, 2021 9:23 PM Z

# Blower v. Portfolio Recovery Assocs., LLC

United States District Court for the Southern District of California

July 23, 2020, Decided; July 23, 2020, Filed

Case No. 19-cv-02270-BAS-LL

**Reporter**
2020 U.S. Dist. LEXIS 130505 *; 2020 WL 5223544

PHILLIP BLOWER, Plaintiff, v. PORTFOLIO RECOVERY ASSOCIATES, LLC, Defendant.

**Counsel:** **[*1]** For Phillip Blower, Plaintiff: Joshua B. Swigart, LEAD ATTORNEY, Swigart Law Group, APC, San Diego, CA; Daniel G. Shay, Law Office of Daniel G. Shay, San Diego, CA.

For Portfolio Recovery Associates, LLC, Defendant: James K. Trefil, LEAD ATTORNEY, PRO HAC VICE, Troutman Sanders LLP, Richmond, VA; Jessica Rose Ellis Lohr, LEAD ATTORNEY, Troutman Pepper Hamilton Sanders LLP, San Diego, CA.

**Judges:** Hon. Cynthia Bashant, United States District Judge.

**Opinion by:** Cynthia Bashant

## Opinion

**ORDER GRANTING JOINT MOTION TO STAY PROCEEDINGS**

Plaintiff commenced this action on November 26, 2019 alleging, *inter alia*, violations of the Telephone Consumer Protection Act ("TCPA"). (ECF No. 1.) At the core of the TCPA dispute is whether Defendant used an automatic telephone dialing system ("ATDS") to place telephone calls to a cellular telephone without prior express consent.

The Supreme Court recently granted a petition for certiorari in *Facebook, Inc. v. Duguid*, in which the Court has been asked to "[w]hether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'" *See* Pet. for Writ of Cert. at **[*2]** ii, *Facebook, Inc.*, No. 19-511 (U.S. Oct. 17, 2019).

The parties represent that this question is central to the dispute in the instant case and thus jointly request a stay until the Supreme Court issues a decision in *Facebook*. (ECF No. 23.) The parties also agree, in the interim, to participate in a mediation of this case as one of 54 related matters against Defendant pending in Judicial Arbitration Mediation Services, before the American Arbitration Association, and in the United States District Court for the Southern District of California. (*Id.*)

Good cause appearing, the Court **GRANTS** the Joint Motion (ECF No. 23) and **ORDERS** as follows:

1. All proceedings in this action are stayed pending the decision of the Supreme Court of the United States in *Facebook, Inc. v. Duguid*, No. 19-511, 2020 U.S. LEXIS 3559 (July 9, 2020).

2. The parties shall provide the Court with a Stipulation and Proposed Order regarding

remaining case management deadlines within fourteen (14) days of the Supreme Court's decision in *Facebook*.

3. The stay may be lifted at any time by order of the Court.

4. Should the parties reach a settlement agreement, the parties will promptly file a joint motion to dismiss.

**IT IS SO ORDERED**.

**DATED: July 23, [*3] 2020**

/s/ Cynthia Bashant

Hon. Cynthia Bashant

United States District Judge

---

End of Document




As of: January 6, 2021 9:22 PM Z

# Borden v. eFinancial, LLC

United States District Court for the Western District of Washington

October 16, 2020, Decided; October 16, 2020, Filed

CASE NO. C19-1430JLR

**Reporter**

2020 U.S. Dist. LEXIS 192912 *; 2020 WL 7324815

DAVID BORDEN, Plaintiff, v. EFINANCIAL, LLC, Defendant.

**Counsel: [*1]** For David Borden, Plaintiff: Dominique Renee Scalia, LEAD ATTORNEY, Daniel J. Bugbee, DBS LAW, SEATTLE, WA; Josh Glickman, LEAD ATTORNEY, PRO HAC VICE, SOCIAL JUSTICE LAW COLLECTIVE, OVERLAND PARK, KS; Shawn Heller, LEAD ATTORNEY, PRO HAC VICE, SOCIAL JUSTICE LAW COLLECTIVE, DUNEDIN, FL.

For eFinancial LLC, individually, and on behalf of all others similarly situated, Defendant: Debra Rae Bernard, LEAD ATTORNEY, PRO HAC VICE, PERKINS COIE (IL), CHICAGO, IL; James G Snell, LEAD ATTORNEY, PRO HAC VICE, PERKINS COIE LLP (PA CA), PALO ALTO, CA; Nicola Menaldo, PERKINS COIE (SEA), SEATTLE, WA.

**Judges:** JAMES L. ROBART, United States District Judge.

**Opinion by:** JAMES L. ROBART

## Opinion

ORDER GRANTING MOTION TO STAY

Before the court is Defendant eFinancial, LLC's ("eFinancial") motion to stay. (Mot. (Dkt. # 40).) Plaintiff David Borden opposes eFinancial's motion. (Opp. (Dkt. # 46).) The court has considered the motion, the parties' submissions concerning the motion, the parties' notices of supplemental authority (Dkt. ## 48-50), the relevant portions of the record, and the applicable law. Being fully advised, the court GRANTS eFinancial's motion to stay (Dkt. # 40).

### I. BACKGROUND

Mr. Borden filed his original complaint in this **[*2]** proposed class action on September 9, 2019. (Compl. (Dkt. # 1).) On August 10, 2020, Mr. Borden filed his amended complaint, asserting on behalf of himself and a proposed class one cause of action under the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("the TCPA"). (Am. Compl. (Dkt. # 39).) The TCPA prohibits companies from using an "automatic telephone dialing system" ("ATDS") to make calls to a telephone number assigned to a cellular service. 47 U.S.C. § 227(b)(1)(A). It defines an ATDS as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* The TCPA does not impose liability where the "called party" provides "prior express consent" to receive calls. *Id.* § 227(b)(1)(A).

Mr. Borden alleges that after completing a form on Progressive.com's website that offered a quote for life insurance, he was directed to a page on

eFinancial's website which requested additional information. (Am. Compl. ¶¶ 13-16.) After completing the eFinancial form, Mr. Borden clicked a button labeled "Next, your rates," to proceed with the rate quote. (*Id.* ¶¶ 17-20.) Mr. Borden alleges that he did not see a message in fine print below **[*3]** the "Next, your rates" button that stated that by clicking the button, he would consent to receive offers of insurance from eFinancial by email, telephone, and text. (*Id.* ¶¶ 21-22.) Although Mr. Borden decided not to move forward with his application for life insurance, he subsequently began to receive telemarketing text messages from eFinancial on his personal cell phone. (*Id.* ¶¶ 29-32.) He alleges that eFinancial sent the text messages using an ATDS and that the "Next, your rates" button and the fine print beneath it were insufficient to establish that he gave "prior express consent" to receive messages within the meaning of the TCPA. (*Id.* ¶¶ 22-25, 37.)

The interpretation of the statutory definition of "ATDS" is the subject of a split among the circuit courts of appeal. Specifically, the circuits are divided on the question of whether the clause "random or sequential number generator" in Section 227(a)(1)(A) modifies both "to store" and "to produce." The Third, Seventh, and Eleventh Circuits have concluded that a system that simply dials from a stored list of numbers is not an ATDS because the system must have the capacity to generate random or sequential numbers to be called to qualify as an ATDS. **[*4]** *See Dominguez v. Yahoo, Inc.*, 894 F.3d 116 (3d Cir. 2018); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458 (7th Cir. 2020); *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301 (11th Cir. 2020). The Second, Sixth, and Ninth Circuits, however, have concluded that a system that can automatically dial numbers from a stored list meets the definition of an ATDS, even if that system does not use a random or sequential number generator. In *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1151 (9th Cir. 2019), the Ninth Circuit held that "the adverbial phrase 'using a random or sequential number generator' modifies only the verb 'to produce,' and not the preceding verb, 'to store.'" Thus, "an ATDS need not be able to use a random or sequential generator to store numbers—it suffices to merely have the capacity to 'store numbers to be called' and 'to dial such numbers automatically.'" *Id.* (internal citations omitted); *see also Duran v. LaBoom Disco, Inc.*, 955 F.3d 279 (2d Cir. 2020) (following the Ninth Circuit); *Allan v. Pa. Higher Educ. Assistance Agency*, 968 F.3d 567 (6th Cir. 2020) (joining the Second Circuit and Ninth Circuit).

On July 9, 2020, the Supreme Court granted certiorari review of the Ninth Circuit's decision in *Duguid* to resolve this circuit split. *Facebook, Inc. v. Duguid*, 207 L. Ed. 2d 1118, 2020 WL 3865252 (U.S. 2020) ("*Duguid II*"). The Court accepted review of the following question:

> Whether the definition of ATDS in the TCPA encompasses any device that can "store" and "automatically dial" telephone numbers, even if the device does not "us[e] a random or sequential number generator."

*Id.* (noting the Court had accepted review **[*5]** of the second question in Facebook's petition). (*See* Mot. Ex. 1 at ii (Facebook's petition for review, listing proposed questions). Oral argument is set to take place on December 8, 2020. *See* http://www.supremecourt.gov/docket/docketfiles/html/19-511.html .

eFinancial now moves for a stay of proceedings in this case pending the Supreme Court's issuance of its ruling in *Duguid II*.

## II. DISCUSSION

### A. Legal Standard

A district court's discretion to stay proceedings "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936). In deciding whether to stay proceedings, a district court must weigh various competing interests, including "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer [if the case is

allowed] to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). "A stay should not be granted unless it appears likely the other proceedings will be concluded within **[*6]** a reasonable time in relation to the urgency of the claims presented to the court." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979). The burden is on the movant to show that a stay is appropriate. *Clinton v. Jones*, 520 U.S. 681, 708, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997).

The court concludes that the *Lockyer* factors weigh in favor of staying this case pending the Supreme Court's resolution of *Duguid II*. First, and most importantly, a stay will promote the orderly course of justice because the Supreme Court's decision will inform the central question at issue here: whether eFinancial used an ATDS to send its text messages to Mr. Borden. (*See* Am. Compl. ¶ 51 (listing, as the first of Mr. Borden's allegations regarding common questions under Fed. R. Civ. P. 23(a)(2), "whether Defendant (or another on its behalf) used an ATDS to send the eFinancial Insurance Text Message Advertisements to Plaintiff and the Plaintiff Class").) Mr. Borden's only claim in this action is that eFinancial used an ATDS to send text messages in violation of the TCPA, and his factual allegations show that the text messages at issue were sent to him because he entered his phone number into eFinancial's web form. If the system that eFinancial uses to send its text messages does not meet the definition of an ATDS—a definition that the Supreme Court is expected **[*7]** to clarify in *Duguid II*—then Mr. Borden's individual and class claims against eFinancial are not covered by the TCPA. A stay pending the resolution of this question will promote the orderly course of justice by allowing the parties to avoid expending time and money conducting class action discovery and certification briefing[1] on an issue central to eFinancial's liability while the definition of ATDS remains unsettled.

Second, a stay is unlikely to cause harm to Mr. Borden. Mr. Borden does not allege that eFinancial has continued to send him text messages or that he is suffering any ongoing harm from eFinancial's actions. Rather, Mr. Borden seeks only statutory damages. "[A] delay in collecting potential damages is not a particularly severe hardship." *See Babare v. Sigue Corp.*, No. C20-0894JCC, 2020 U.S. Dist. LEXIS 180262, *4 (W.D. Wash. Sept. 30, 2020) (citing *CMAX*, 300 F.2d at 268-69). Mr. Borden also argues that he faces a risk of an "irretrievable loss of critical evidence" if a stay is granted (*see* Opp. at 15), but this risk appears minimal in light of the parties' obligations to preserve evidence. *See Canady v. Bridgecrest Acceptance Corp.*, No. CV-19-04738-PHX-DWL, 2020 U.S. Dist. LEXIS 161629, 2020 WL 5249263, at *3-4 (D. Ariz. Sept. 3, 2020) (describing these obligations). Although Mr. Borden has argued that a stay pending a decision in *Duguid II* would be **[*8]** "indefinite," the Supreme Court has set oral argument in this case for December 8, 2020, and a ruling on the matter is likely by the end of the Court's term in mid-2021.

Finally, proceeding with this case in the absence of a stay is likely to impose hardship on eFinancial, including the substantial costs inherent in conducting class discovery and briefing motions that might ultimately prove to be affected or rendered unnecessary by the Supreme Court's resolution of *Duguid II*.

In sum, the *Lockyer* factors weigh strongly in favor of granting eFinancial's motion to stay. The court GRANTS eFinancial's motion.

## III. CONCLUSION

For the foregoing reasons, eFinancial's motion to stay the proceedings in this case pending the Supreme Court's decision in *Duguid II* (Dkt. # 40), is GRANTED. The parties are directed to file a joint

[1] The current deadline for completion of discovery is December 11, 2020, and the deadline for Mr. Borden to file his motion for class certification is March 12, 2021. (Order Extending Discovery and Class Certification Deadlines (Dkt. # 34).)

status report that proposes a new case schedule within 14 days of the date the Supreme Court issues its opinion in *Duguid II*.

Dated this 16th day of October, 2020.

/s/ James L. Robart

JAMES L. ROBART

United States District Judge

---

**End of Document**


Caution
As of: January 6, 2021 9:18 PM Z

# Creasy v. Charter Communs., Inc.

United States District Court for the Eastern District of Louisiana

September 28, 2020, Decided; September 28, 2020, Filed

CIVIL ACTION NO. 20-1199 SECTION "F"

**Reporter**
2020 U.S. Dist. LEXIS 177798 *

STACY CREASY, ET AL. v. CHARTER COMMUNICATIONS, INC.

**Subsequent History:** Dismissed by, Without prejudice Creasy v. Charter Communs., Inc., 2020 U.S. Dist. LEXIS 241533 (E.D. La., Dec. 23, 2020)

## Case Summary

### Overview

HOLDINGS: [1]-The court dismissed the majority of the class plaintiffs' claims alleging that defendant repeatedly violated 47 U.S.C.S. § 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act of 1991 for lack of subject matter jurisdiction because the entirety of the version of § 227(b)(1)(A)(iii) that existed before the Supreme Court severed the government-debt exception was void, and the unconstitutional amended version of § 227(b)(1)(A)(iii) was what applied to defendant at the time of all but one of the challenged communications at issue; [2]-The court granted a stay pending the U.S. Supreme Court's decision in Facebook, Inc. v. Duguid because the decision would illuminate an unsettled and key area of the law, and a stay would promote judicial economy, conserve party resources, and increase the likelihood of a just and correct outcome.

### Outcome

Motion to dismiss granted in part and denied in part; motion to stay granted.

## LexisNexis® Headnotes

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

Evidence > Burdens of Proof > Allocation

***HN1***[] **Defenses, Demurrers & Objections, Motions to Dismiss**

Motions filed under Fed. R. Civ. P. 12(b)(1) allow a party to challenge a court's subject matter jurisdiction. As a court of limited jurisdiction, a federal court must affirmatively ascertain subject-matter jurisdiction before adjudicating a suit. A district court should dismiss where it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction. A court may find that plausible set of facts by considering (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. The party asserting jurisdiction bears the burden of proof.

Constitutional Law > ... > Fundamental Freedoms > Freedom of Speech > Scope

***HN2***[] **Fundamental Freedoms, Freedom of Speech**

It is a timeless principle that an unconstitutional law is void, and is as no law. That principle colors many doctrines, but it suggests that-in the vast run of scenarios-a speaker should not be punished for engaging in speech that was restricted in an unconstitutional fashion. It also supports the general rule that once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid law of the United States' to enforce).

Governments > Courts > Judicial Precedent

***HN3***[] **Courts, Judicial Precedent**

Without exception, federal district courts are bound by Supreme Court precedent. Occasionally, however, a fragmented Court decides a case, but no single rationale explaining the result enjoys the assent of five Justices. In such scenarios, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds. As a result, when the Justices fail to converge on a single majority rationale for a decision, the only precedent that comes of such a decision is the position adopted by the narrowest concurrence.

Governments > Courts > Judicial Precedent > Dicta

Governments > Courts > Judicial Precedent

***HN4***[] **Judicial Precedent, Dicta**

Obiter dictum is defined as a judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive). Where general expressions in an opinion go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision.

Constitutional Law > ... > Fundamental Freedoms > Freedom of Speech > Political Speech

Constitutional Law > ... > Fundamental Freedoms > Freedom of Speech > Scope

***HN5***[] **Freedom of Speech, Political Speech**

The 2015 amendment adding the government-debt exception to 47 U.S.C.S. § 227(b)(1)(A)(iii) converted a theretofore neutral speech restriction into an invalid content-discriminatory one. Indeed, when divorced from the exception enabling one category of speech above all others, § 227(b)(1)(A)(iii) was (and now again is) a valid time-place-manner restriction on speech. Only by appending the government-debt exception to § 227(b)(1)(A)(iii)'s general robocall ban did Congress begin to impermissibly favor debt-collection speech over political and other speech.

Constitutional Law > ... > Fundamental Freedoms > Freedom of Speech > Scope

***HN6***[] **Fundamental Freedoms, Freedom of Speech**

A restriction cannot possibly be content-based if it does not treat different categories of content differently; an exception cannot be unconstitutionally discriminatory without reference to the broader rule in which it appears.

Civil Procedure > Appeals > Reviewability of Lower Court Decisions > Preservation for Review

***HN7***[] **Reviewability of Lower Court Decisions, Preservation for Review**

A remedy is only necessary where there has first

been a wrong.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Civil Procedure > ... > Pleadings > Complaints > Requirements for Complaint

**HN8[] Motions to Dismiss, Failure to State Claim**

Fed. R. Civ. P. 12(b)(6) allows a party to move for dismissal of a complaint that fails to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. To demonstrate a facially plausible basis for relief, a plaintiff must plead facts which allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. In determining whether a plaintiff has met this burden, a court must accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff, but must not accord an assumption of truth to conclusory allegations and threadbare assertions. The foregoing presumptions are not to be applied mindlessly, however. Thus, in considering a motion to dismiss, the court may review any documents attached to or incorporated into the plaintiff's complaint by reference. In addition, the court may judicially notice matters of public record and other facts not subject to reasonable dispute.

Antitrust & Trade Law > Consumer Protection > Telemarketing

Business & Corporate Law > ... > Establishment > Elements > Application of Agency Law Principles

Business & Corporate Compliance > ... > Communications Law > Federal Acts > Telephone Consumer Protection Act

**HN9[] Consumer Protection, Telemarketing**

Under federal common-law principles of agency, there is vicarious liability for Telephone Consumer Protection Act violations.

Antitrust & Trade Law > Consumer Protection > Telemarketing

Business & Corporate Compliance > ... > Communications Law > Federal Acts > Telephone Consumer Protection Act

**HN10[] Consumer Protection, Telemarketing**

As interpreted by the Federal Communications Commission, the Telephone Consumer Protection Act robocall restriction bars both automated voice calls and automated text messages.

Governments > Courts > Authority to Adjudicate

**HN11[] Courts, Authority to Adjudicate**

If a court can readily determine that it lacks jurisdiction over the cause or the defendant, the proper course is to dismiss on that ground.

Civil Procedure > Judgments > Entry of Judgments > Stays of Judgments

Governments > Courts > Authority to Adjudicate

**HN12[] Entry of Judgments, Stays of Judgments**

The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls

for the exercise of judgment, which must weigh competing interests and maintain an even balance.

Civil Procedure > Judgments > Entry of Judgments > Stays of Judgments

Evidence > Burdens of Proof > Allocation

***HN13***[] **Entry of Judgments, Stays of Judgments**

The proponent of a stay bears the burden of establishing its need.

**Counsel:** **[*1]** For Stacy Creasy, on behalf of herself and others similarly situated, Tiffanie Hogans, Plaintiffs: Katherine Zabetti Crouch, LEAD ATTORNEY, Crouch Law, LLC, New Orleans, LA; Aaron David Radbil, PRO HAC VICE, Greenwald Davidson Radbil PLLC, Austin, TX.

For Charter Communications, Inc., doing business as, Spectrum, Defendant: David Edmund Redmann, Jr., LEAD ATTORNEY, Bradley, Murchison, Kelly & Shea, LLC (New Orleans), New Orleans, LA; Paul A. Grammatico, PRO HAC VICE, Kabat Chapman & Ozmer LLP, Los Angeles, CA; Ryan Watstein, Kabat Chapman & Ozmer LLP, Atlanta, GA.

**Judges:** MARTIN L. C. FELDMAN, UNITED STATES DISTRICT JUDGE.

**Opinion by:** MARTIN L. C. FELDMAN

## Opinion

ORDER AND REASONS

Before the Court are a pair of related motions brought by the defendant: a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), and in the alternative, a motion to stay pending the Supreme Court's forthcoming decision in Facebook, Inc. v. Duguid, No. 19-511. For the reasons that follow, the motion to dismiss is GRANTED IN PART and DENIED IN PART, and the motion to stay is GRANTED.

**Background**

In this putative class action, the plaintiffs accuse the defendant Charter Communications, Inc. of repeatedly violating § 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act of 1991 **[*2]** (TCPA), which prohibits almost all robocalls to cell phones. See 47 U.S.C. § 227(b)(1)(A)(iii). In 2015, Congress amended that provision's general robocall restriction to permit robocalls made to collect debts owed to or guaranteed by the federal government. That "government-debt exception" was short-lived. On July 6, 2020, the Supreme Court struck it down as an unconstitutional content-based restriction on speech and severed it from the rest of the statute. See Barr v. Am. Ass'n of Political Consultants (AAPC), 140 S. Ct. 2335, 207 L. Ed. 2d 784 (2020).

At primary issue here is that decision's effect on this Court's subject matter jurisdiction over this case. In its motion to dismiss, Charter contends that the Supreme Court's fractured decision[1] in

[1] Complicating matters immensely is the Court's inability to reach a clear majority decision in AAPC. Justice Kavanaugh announced the judgment of the Court in a plurality opinion which Chief Justice Roberts and Justice Alito joined in whole, and which Justice Thomas joined in part. AAPC, 140 S. Ct. at 2343-56. Justice Sotomayor concurred in the judgment. Id. at 2356-57. Justice Breyer, joined by Justices Ginsburg and Kagan, concurred in the judgment with respect to severability, but dissented as to the plurality's application of strict scrutiny to § 227(b)(1)(A)(iii)'s content-based distinction. Id. at 2357-63. And Justice Gorsuch issued a final opinion, in which he concurred in the judgment in part and dissented on yet other grounds, and in which Justice Thomas joined in part. Id. at 2363-67.

AAPC amounts to an adjudication that the entirety of § 227(b)(1)(A)(iii) was unconstitutional from the moment Congress enacted the offending government-debt exception to the moment the Court severed that exception to preserve the rest of the law in AAPC. Extending that premise to its natural conclusion, Charter argues that its alleged violations of an unconstitutional law are not enforceable in federal court.

The plaintiffs argue just the opposite: namely, that by severing the new-fangled government-debt **[*3]** exception to *preserve* the general ban as a going concern, the Court *confirmed* that § 227(b)(1)(A)(iii) was constitutional all along. Thus, the plaintiffs suggest, Charter's conception of AAPC is fundamentally flawed, and as a result, its argument for dismissal under Rule 12(b)(1) is "just plain wrong."

What, then, does AAPC have to say of the matter? Unfortunately for all involved, precious little. In the few lines of nonbinding dicta shedding any light on the issue, the Court offered a pair of squarely contradictory answers. The three-Justice plurality opinion authored by Justice Kavanaugh concluded that while "no one should be penalized or held liable for making robocalls to collect government debt" as a result of the Court's invalidation of the exception that purported to authorize such robocalls, the Court's decision would not "negate the liability of parties who made robocalls covered by the robocall restriction" during the timeframe in which the exception remained operative. Id. at 2355 n.12. Justice Gorsuch (joined by Justice Thomas) disagreed. In his view, by "shield[ing] *only* government-debt collection callers from past liability under an admittedly unconstitutional law," the plurality "[wound] up endorsing the very same **[*4]** kind of content discrimination [it said it was] seeking to eliminate." Id. at 2366.

This, of course, places the Court in an uncomfortable position. (And to their credit, the parties make much of this decisive distinction.) In any event, confronted with a genuine issue of first impression, and with little more to guide it than passing Supreme Court dicta of no precedential force,[2] the Court concludes that Justice Gorsuch's is the better argument as a matter of law and logic. Congress's 2015 enactment of the government-debt exception rendered § 227(b)(1)(A)(iii) an unconstitutional content-based restriction on speech. In the years *preceding* Congress's addition of the exception, § 227(b)(1)(A)(iii) did not discriminate on the content of robocalls, and was, as the Supreme Court has observed, a constitutional time-place-manner restriction on speech. Likewise, now that AAPC has done away with the offending exception, § 227(b)(1)(A)(iii) figures to remain good law in the years to come. However, in the years in which § 227(b)(1)(A)(iii) permitted robocalls of one category of content (government-debt collection) while prohibiting robocalls of all other categories of content, the *entirety* of the provision was, indeed, unconstitutional.

That fact deprives the Court of jurisdiction **[*5]** over much of this action.

I.

In the operative complaint, the plaintiffs allege that Charter violated § 227(b)(1)(A)(iii) at least 130 times by transmitting auto-dialed calls and texts to the plaintiffs without consent to do so. Importantly for present purposes, all but one of those violations is alleged to have occurred during the time period in which the government-debt exception remained operative within § 227(b)(1)(A)(iii). The lone improper communication alleged to have occurred *after* the Supreme Court's July 6, 2020 decision in AAPC is a July 11, 2020 text message to plaintiff Stacy Creasy. See Am. Compl. ¶ 40.

---

The Court's failure to unite behind a sufficiently agreeable rationale does a disservice to litigants and lower courts. See generally Ryan C. Williams, *Questioning* Marks*: Plurality Decisions and Precedential Constraint*, 69 STAN. L. REV. 795 (2017) (observing the confusion that commonly results from fractured plurality decisions like AAPC and proposing a renewed approach for drawing doctrinal significance from such decisions). Here, it has led the parties to wildly dissimilar understandings of AAPC's legal effect - all in the utmost good faith and preparation. In the future, it may engender a circuit split which confronts the Court anew.

[2] See infra note 4.

With respect to each of the pre-AAPC communications, Charter asserts that the Court lacks subject matter jurisdiction to adjudicate the legality of such communications because federal courts lack authority to enforce violations of unconstitutional laws. With respect to the July 11, 2020 text message to Creasy, Charter seeks dismissal on two independent grounds: first, it asserts that the Court lacks subject matter jurisdiction because the text is not traceable to Charter (FED. R. CIV. P. 12(b)(1)), and second, it maintains that even if the Court does have jurisdiction to adjudicate the plaintiffs' claim with respect to that text, the **[*6]** plaintiffs nevertheless fail to state a claim upon which relief can be granted (FED. R. CIV. P. 12(b)(6)).

As an alternative ground for dismissal of plaintiff Tiffanie Hogans' claims, Charter contends that the Court cannot assert personal jurisdiction over it because Charter is not subject to general jurisdiction in Louisiana and because specific jurisdiction is improper since Hogans' claims do not arise from Charter's contacts with Louisiana.

The Court addresses each of these arguments in turn.

A.

Charter first argues that the Court lacks subject matter jurisdiction to adjudicate any violations of § 227(b)(1)(A)(iii) that the plaintiffs allege to have occurred between Congress's enactment of the government-debt exception and the Supreme Court's severance of that exception in AAPC.[3] As explained below, Charter is correct.

1. Applicable Legal Standards

***HN1***[] Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge a court's subject matter jurisdiction. "As a court of limited jurisdiction, a federal court must affirmatively ascertain subject-matter jurisdiction before adjudicating a suit. A district court should dismiss where it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction." Bank of La. v. FDIC, 919 F.3d 916, 922 (5th Cir. 2019) **[*7]** (quoting Venable v. La. Workers' Comp. Corp., 740 F.3d 937, 941 (5th Cir. 2013) (internal quotation marks omitted)). "A court may find that plausible set of facts by considering '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" Id. (quoting Spotts v. United States, 613 F.3d 559, 566 (5th Cir. 2010)). "The party asserting jurisdiction bears the burden of proof." Id. (citing Griener v. United States, 900 F.3d 700, 703 (5th Cir. 2018)).

***HN2***[] Of particular significance here is the timeless principle that "[a]n unconstitutional law is void, and is as no law." Ex Parte Siebold, 100 U.S. 371, 376, 25 L. Ed. 717 (1879); id. ("An offence created by [an unconstitutional law] is not a crime."); see also Reynoldsville Casket Co. v. Hyde, 514 U.S. 749, 760, 115 S. Ct. 1745, 131 L. Ed. 2d 820 (1995) (Scalia, J., concurring) ("[W]hat a court does with regard to an unconstitutional law is simply to *ignore* it. It decides the case '*disregarding the [unconstitutional] law*,' because a law repugnant to the Constitution 'is void, and is as no law.'" (second alteration in original) (citation omitted) (first quoting Marbury v. Madison, 5 U.S. (1 Cranch) 137, 178, 2 L. Ed. 60 (1803); then quoting Siebold, 100 U.S. at 376)). That principle colors many doctrines, but as relevant here, it suggests that - in the vast run of scenarios - a speaker should not be punished for engaging in speech that was restricted in an unconstitutional fashion. Cf. Grayned v. City of Rockford, 408 U.S. 104, 107 n.2, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972) (holding, also with regard to an invalid time-place-manner restriction, that determining the speaker's fate required assessing "the facial constitutionality of the [restriction] in effect" at the time of the speech at issue). It also supports the general rule that "once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the **[*8]** United States' to enforce)." United States v. Baucum, 80 F.3d 539, 541-42, 317 U.S. App. D.C. 63 (D.C. Cir. 1996) (per curiam).

[3] As noted above, that time period covers all but one of the allegedly illegal communications at issue in this case.

2. Precedent, Plurality Opinions, and AAPC

***HN3***[] Without exception, federal district courts are bound by Supreme Court precedent. See, e.g., Amy Coney Barrett, *Precedent and Jurisprudential Disagreement*, 91 TEX. L. REV. 1711, 1712 (2013) (observing that "vertical stare decisis, a court's obligation to follow the precedent of a superior court, . . . is an inflexible rule that admits of no exception" (footnote omitted)). Occasionally, however, "a fragmented Court decides a case," but "no single rationale explaining the result enjoys the assent of five Justices." Marks v. United States, 430 U.S. 188, 193, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977). In such scenarios, "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." Id. (quoting Gregg v. Georgia, 428 U.S. 153, 169 n.15, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976) (plurality opinion)). As a result, "when the Justices fail to converge on a single majority rationale for a decision," the only precedent that comes of such a decision is the position adopted by the narrowest concurrence. See Williams, *supra* note 1, at 798.

Cognizant of this rule, the plurality in AAPC spelled out the technical holdings of the Court in explicit terms: (1) "Six Members of the Court . . . conclude that Congress has impermissibly favored debt-collection speech over political **[*9]** and other speech, in violation of the First Amendment," and (2) "[S]even members of the Court conclude that the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed from the remainder of the statute." AAPC, 140 S. Ct. at 2343 (plurality opinion). That much is binding on all other courts.

Nevertheless, although it is not binding on this Court, the AAPC plurality's footnoted statement that the Court's decision "does not negate the liability of parties who made robocalls covered by the robocall restriction [during the relevant timeframe]" is extremely persuasive authority.[4] As such, the Court has paid it extensive consideration - while also observing the equally important facts that Justices Gorsuch and Thomas seemed to disagree, and that the remaining four Justices declined to weigh in on the issue. With that in mind, on full consideration of the issue - as presented and refined by the adversarially tested motion at hand - the Court proceeds to the merits.

3. Subject Matter Jurisdiction over Pre-AAPC Violations

As Charter contends, the Court indeed lacks subject matter jurisdiction over **[*10]** each of the supposed § 227(b)(1)(A)(iii) violations the plaintiffs allege to have occurred before the Supreme Court restored the constitutional muster of § 227(b)(1)(A)(iii) by severing the government-debt exception in AAPC. As a majority of the Court held in AAPC, ***HN5***[] the 2015 amendment adding the government-debt exception to § 227(b)(1)(A)(iii) converted a theretofore neutral speech restriction into an invalid content-discriminatory one. Indeed, when divorced from the exception enabling one category of speech above all others, § 227(b)(1)(A)(iii) was (and now again *is*) a valid time-place-manner restriction on speech. Only by appending the government-debt exception to § 227(b)(1)(A)(iii)'s general robocall ban did Congress begin to "impermissibly favor[] debt-collection speech over political and other speech." Id. (stating the conclusion of six Justices).

While that holding affirmatively binds this Court as one of just two holdings to command the votes of a majority of the Justices in AAPC, it is also inescapable as a logical matter. Indeed, while the plaintiffs argue that the Court's severance of the *exception* has no bearing on the constitutionality of

[4] This footnote is merely persuasive, as opposed to mandatory, because it appears in an opinion commanding the votes of only three Justices, and because, as Charter astutely observes, it constitutes mere "obiter dictum." ***HN4***[] "Obiter dictum" is defined as "[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive)." *Obiter dictum*, BLACK'S LAW DICTIONARY (10th ed. 2014). As Chief Justice Marshall remarked in Cohens v. Virginia, where "general expressions" in an opinion "go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision." 19 U.S. (6 Wheat.) 264, 399, 5 L. Ed. 257 (1821).

the *rule*, the exception and the rule are in fact inextricably intertwined for the purposes of any reasonable analysis. ***HN6***[] Simply put, **[*11]** a restriction cannot possibly be content-based if it does not treat different categories of content differently; an exception cannot be unconstitutionally discriminatory without reference to the broader rule in which it appears. A review of the statutory text before and after the addition of the government-debt exception confirms as much.

Prior to the exception's enactment in 2015 (and now again, post-severance), § 227(b)(1)(A)(iii) read(s) as follows: It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecord voice . . .
>
> > (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

This neutral version of § 227(b)(1)(A)(iii) did not apply when Charter transmitted all but one of the automated communications alleged here. Instead, the following version of § 227(b)(1)(A)(iii) applied:

> It shall be **[*12]** unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecord voice . . .
>
> > (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, *unless such call is made solely to collect a debt owed to or guaranteed by the United States*;

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).

Viewing these provisions side-by-side shows how Congress's addition of a single exception could fundamentally alter the *entire* provision. Without the exception, § 227(b)(1)(A)(iii) bans the gamut of robocalls with no regard to content. With the exception, it allows robocalls of one category, while banning all others. This distinction is plain, and it drove the binding result in AAPC. See AAPC, 140 S. Ct. at 2346 (plurality opinion) ("Section 227(b)(1)(A)(iii) generally bars robocalls to cell phones. Since the 2015 amendment, the law has exempted robocalls to collect government **[*13]** debt. The initial First Amendment question is whether the robocall restriction, *with the government-debt exception*, is content-based. The answer is yes." (emphasis added)); id. at 2356-57 (Sotomayor, J., concurring in the judgment) ("Even under intermediate scrutiny, the Government has not explained how a debt-collection robocall about a government-backed debt is any less intrusive or could be any less harassing than a debt-collection robocall about a privately backed debt."); id. at 2364 (Gorsuch, J., concurring in the judgment in part and dissenting in part) ("The statute is content-based because it allows speech on a subject the government favors (collecting its debts) while banning speech on other disfavored subjects (including political matters).").

This is not a situation where "one section of a [provision]" being "repugnant to the Constitution" does not "render[] the whole [provision] void." See Seila Law LLC v. CFPB, 140 S. Ct. 2183, 2208, 207 L. Ed. 2d 494 (2020) (plurality opinion) (quoting Loeb v. Columbia Twp. Trs., 179 U.S. 472, 490, 21 S. Ct. 174, 45 L. Ed. 280 (1900)). Precisely the opposite is the case here: the *entirety* of the pre-severance version of § 227(b)(1)(A)(iii) *is* void because it *itself* was repugnant to the Constitution before the Supreme Court restored it to constitutional health in AAPC.

As a further matter, "severability" functions as a "remedy" in this context. **[*14]** See, e.g., id. at 2356 (plurality opinion) (rejecting Justice Gorsuch's "proposed remedy of injunctive relief"); id. at 2365-

67 (Gorsuch, J., concurring in the judgment in part and dissenting in part) (criticizing the plurality's imposition of a severance "remedy"). ***HN7***[] A remedy is only necessary where there has first been a "wrong." In this context, that wrong was experienced by Charter and all other robocallers (or would-be robocallers) whose constitutionally protected speech was outlawed while Congress affirmatively blessed robocalls of other content in violation of the First Amendment. The policy implications of this finding are beyond the Court's purview - indeed, any added likelihood that defendants may evade liability for robocalls that Congress would have preferred to ban from 2015 to 2020 is the unfortunate price of the Court's enforcement of a constitutionally dictated result. It is for the elected branches, and not this Court, to determine whether that price is unduly high.[5] Legislative choices have consequences.

In any event, the unconstitutional *amended* version of § 227(b)(1)(A)(iii) is what applied to Charter at the time of the challenged communications at issue, and that fact deprives the Court of subject matter jurisdiction **[*15]** to adjudicate Charter's liability with regard to such communications. See, e.g., Baucum, 80 F.3d at 541-42 (observing that federal courts are without jurisdiction to enforce violations of an unconstitutional statute "since there is no valid 'law of the United States' to enforce").

B.

With respect to the lone remaining violation asserted by the plaintiffs - the allegedly unlawful text message Charter sent Stacy Creasy on July 11, 2020 - Charter likewise seeks dismissal for lack of subject matter jurisdiction. However, Charter offers little to no support for this argument, and the Court dismisses it out of hand - indeed, it flies in the face of each of the Court's holdings with regard to the communications that *pre*-dated AAPC. See supra subsection I.A.3.

In the alternative, Charter urges the Court to dismiss this claim under Rule 12(b)(6). That argument also fails.

***HN8***[] Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint that fails to state a claim upon which relief can be granted. "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). To demonstrate a facially plausible basis for relief, a plaintiff **[*16]** must plead facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In determining whether a plaintiff has met this burden, a court must "accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff," but must not accord an assumption of truth to conclusory allegations and threadbare assertions. Thompson v. City of Waco, 764 F.3d 500, 502 (5th Cir. 2014).

The foregoing presumptions are not to be applied mindlessly, however. Thus, in considering a motion to dismiss, the Court may review any documents attached to or incorporated into the plaintiff's complaint by reference. Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004). In addition, the Court may judicially notice matters of public record and other facts not subject to reasonable dispute. See United States *ex rel.* Willard v. Humana Health Plan of Tex. Inc., 336 F.3d 375, 379 (5th Cir. 2003).

Applying these standards to the plaintiffs' lone remaining claim is relatively straightforward. In Paragraph 40 of the Amended Complaint, the plaintiffs allege that plaintiff Stacy Creasy received

[5] Query whether it would be good and fair policy to punish the class of speakers that bore the brunt of an unconstitutional provision while letting off the hook the class of speakers that benefited from such a provision. Cf. AAPC, 140 S. Ct. at 2366 (Gorsuch, J., concurring in the judgment in part and dissenting in part) ("[A] holding that shields *only* government-debt collection callers from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate.").

an unwanted text message[6] from Spectrum Mobile. "Spectrum Mobile" is a brand and subsidiary of defendant Charter Communications, Inc.[7] And the plaintiffs allege, correctly, that Charter "offers its services to consumers and businesses under the **[*17]** Spectrum brand." See Am. Compl. ¶ 9. Thus, Charter's argument that the plaintiffs fail to state a claim against *Charter* - as opposed to *Spectrum*, the alleged sender of the July 11, 2020 text message to Creasy - is unpersuasive at the motion to dismiss stage. Regardless, even if Charter Communications, Inc. and Spectrum Mobile, LLC are technically distinct entities as Charter avers, this fact is without legal consequence as "the Federal Communications Commission has ruled that, ***HN9***[] under federal common-law principles of agency, there is vicarious liability for TCPA violations." Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 136 S. Ct. 663, 674, 193 L. Ed. 2d 571 (2016) (citing *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574 (2013)).

Accordingly, Charter falls one yard shy of the goal line in its effort to dispose of the entirety of the plaintiffs' Amended Complaint. With respect to the only improper communication they allege to have occurred after the Supreme Court's decision in AAPC, the plaintiffs do state a plausible claim upon which relief can be granted.

C.

Because the Court lacks subject matter jurisdiction over each of the plaintiffs' claims particular to plaintiff Tiffanie Hogans, Charter's personal jurisdiction **[*18]** arguments with regard to Ms. Hogans' claims need not - and *may not*[8] - be addressed.

II.

As an alternative to total dismissal, Charter seeks a stay of these proceedings pending the Supreme Court's decision in Facebook, Inc. v. Duguid, No. 19-511. Oral argument in Facebook has been set for December 8, 2020, and the Court will presumably enjoy a full complement of Justices by the end of October Term 2020. Accordingly, a 2021 decision in Facebook is probable. Because such a decision would illuminate an unsettled area of the law that is key to this case, and because a stay will promote judicial economy, conserve party resources, and increase the likelihood of a just and correct outcome, the Court determines that a stay of these proceedings is warranted.

A.

> ***HN12***[] [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

Landis v. N. Am. Co., 299 U.S. 248, 254-55, 57 S. Ct. 163, 81 L. Ed. 153 (1936).

***HN13***[] "The proponent of a stay bears the burden of establishing its need." Clinton v. Jones, 520 U.S. 681, 708, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997).

B.

The circumstances here **[*19]** firmly favor a stay for several related reasons. All stem from the fact that a decision in Facebook promises to

[6] ***HN10***[] As interpreted by the FCC, the TCPA's robocall restriction "bars both automated voice calls and automated text messages." AAPC, 140 S. Ct. at 2344 n.1 (citing *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14115 (2003)).

[7] See CHARTER COMMC'NS, ABOUT CHARTER, corporate.charter.com/about-charter (last visited Sept. 26, 2020). This fact is not subject to reasonable dispute and is therefore judicially noticeable at the motion to dismiss stage. See Willard, 336 F.3d at 379.

[8] Cf. Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 436, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007) ***HN11***[] ("If . . . a court can readily determine that it lacks jurisdiction over the cause or the defendant, the proper course [is] to dismiss on that ground.").

significantly hone the issues in this case. In Facebook, the Court will resolve a circuit split[9] concerning the scope of the TCPA's definition of an "automatic telephone dialing system" (ATDS). In particular, the Court will determine "[w]hether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator." Facebook, Inc. v. Duguid, No. 19-511, 2020 U.S. LEXIS 3559 (U.S. July 9, 2020).

The answer to that question has immediate bearing on the scope of the plaintiffs' action. Because the plaintiffs allege that Charter was attempting to contact a particular customer in its July 11, 2020 text message to Ms. Creasy, a decision by the Supreme Court that an ATDS must employ a random or sequential number generator for liability to attach under the TCPA would likely be dispositive of the plaintiffs' action.

Thus, in its significant potential to narrow and refine the issues in this case, a decision in Facebook promises to benefit the parties and the **[*20]** Court in a multitude of ways. Among other likely benefits, pausing this litigation in wait of a ruling in Facebook may (1) prevent a waste of judicial and party resources in the event that Facebook clearly dictates that the plaintiffs' remaining claims are without merit, (2) limit and streamline discovery in the event that the plaintiffs' claims *do* have merit, and (3) reduce the risk of an incorrect decision by sharpening the legal issues at play.

Against these benefits, there is little conceivable risk to any party. Indeed, while a stay will slow the plaintiffs' pursuit of a possible recovery, it will not pose a substantial risk of loss of evidence (since Charter is a sophisticated defendant that is presumably well aware of its preservation obligations) or continued, unremedied harm.

Largely for these reasons, a great number of similarly situated courts have issued stays pending a decision in Facebook. See Mot. to Stay at 9 (collecting cases).

Accordingly, in its best "exercise of judgment," the Court deems Charter's proposed stay to be well warranted. See Landis, 299 U.S. at 254.

### Conclusion

The Supreme Court's decision in AAPC cannot logically be read as anything other than a ruling that § 227(b)(1)(A)(iii) was unconstitutional **[*21]** in the form in which the Court received it. *That* version of the provision, which included the government-debt exception that the Court has now severed, was unconstitutional when Charter engaged in all but one of the allegedly illegal communications the plaintiffs complain of.

An unconstitutional statute being "as no law," the Court may not enforce the pre-AAPC version of § 227(b)(1)(A)(iii) against Charter here. While this compels dismissal of the bulk of the plaintiffs' claims, the plaintiffs have stated a plausible claim with regard to the single communication they allege to have occurred *after* AAPC cured § 227(b)(1)(A)(iii)'s constitutional defect and preserved § 227(b)(1)(A)(iii) as a going concern.

Because the viability of the plaintiffs' surviving claim will turn in large part on the Supreme Court's forthcoming decision in Facebook, Inc. v. Duguid, staying this action in wait of such a decision is the best course.

* * *

Accordingly, for the foregoing reasons, IT IS ORDERED:

1. That the defendant's motion to dismiss is GRANTED with respect to all asserted TCPA violations alleged to have occurred before July 6, 2020;

2. That the defendant's motion to dismiss is DENIED with respect to all asserted TCPA violations alleged to have occurred after **[*22]** July 6, 2020;

[9] Compare, e.g., Duguid v. Facebook, Inc., 926 F.3d 1146 (9th Cir. 2019), with, e.g., Dominguez ex rel. Himself v. Yahoo, Inc., 894 F.3d 116 (3d Cir. 2018).

3. That the defendant's motion to stay is GRANTED; and

4. That these proceedings are accordingly STAYED pending dispositive action by the Supreme Court in Facebook, Inc. v. Duguid, No. 19-511.

New Orleans, Louisiana, September 28, 2020

/s/ Martin L. C. Feldman

MARTIN L. C. FELDMAN

UNITED STATES DISTRICT JUDGE

---

**End of Document**


Neutral
As of: January 6, 2021 9:19 PM Z

# Cunningham v. Homeside Fin., LLC

United States District Court for the District of Maryland

November 30, 2017, Decided; December 1, 2017, Filed

CIVIL ACTION NO. MJG-17-2088

**Reporter**

2017 U.S. Dist. LEXIS 197712 *; 2017 WL 5970719

CRAIG CUNNINGHAM, on behalf of himself and others similarly situated, Plaintiff vs. HOMESIDE FINANCIAL, LLC, Defendant

**Subsequent History:** Dismissed by, Without prejudice, Motion denied by, As moot Cunningham v. Homeside Fin., LLC, 2018 U.S. Dist. LEXIS 176501 (D. Md., Oct. 15, 2018)

**Counsel:** **[*1]** For Craig Cunningham, on behalf of himself and others similarly situated, Plaintiff: Anthony I Paronich, PRO HAC VICE, Broderick and Paronich PC, Boston, MA; Brian K Murphy, Jonathan P Misny, PRO HAC VICE, Murray Murphy Moul and Basil LLP, Columbus, OH; Stephen Howard Ring, Stephen H Ring PC, Rockville, MD.

For Homeside Financial LLC, Defendant: Patrick R Buckler, LEAD ATTORNEY, Hillary Victoria Colonna, Womble Bond Dickinson (US) LLP, Baltimore, MD.

**Judges:** Marvin J. Garbis, United States District Judge.

**Opinion by:** Marvin J. Garbis

## Opinion

MEMORANDUM & ORDER RE: STAY

The Court has before it Defendant's Motion to Stay Proceedings [ECF No. 17] and the materials related thereto. The Court has reviewed the materials provided by the parties and finds that a hearing is not needed.

I. BACKGROUND

Plaintiff Craig Cunningham ("Cunningham") filed a putative class action against Defendant Homeside Financial, LLC ("Homeside") asserting violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Cunningham alleges that Homeside "placed telemarketing calls to [his] cellular telephone number for the purposes of advertising its services using an automated dialing system." Compl. ¶ 2, ECF No. 1.

The TCPA provides a private cause **[*2]** of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). 47 U.S.C. § 227(b)(3). The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). Cunningham alleges that he did not consent to receive the calls, and since telemarketing campaigns generally place calls to thousands or millions of potential customers, he is suing on behalf of a proposed nationwide class of others who also received illegal

telemarketing calls. Compl. ¶ 3.

Homeside asserts that it only contacts customers who have consented to receive calls, and the dialing equipment it uses is not an "automatic telephone dialing system" ("ATDS") for purposes of the TCPA. Answer ¶¶ 11, 19-20, Fifth Affirmative Defense, ECF No. 15.

In 2015, the Federal Communication Commission ("FCC"), which has the authority to issue regulations implementing the TCPA, released a Declaratory Ruling and Order that construed the statutory definition of an ATDS, stating that "dialing equipment generally has the capacity **[*3]** to store or produce, and dial random or sequential numbers [and thus meets the TCPA's definition of 'autodialer'] even if it is not presently used for that purpose, including when the caller is calling a set list of consumers." In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 30 F.C.C. Rcd. 7961 (July 10, 2015). The FCC ruling prompted significant litigation and was challenged by a consolidated appeal to the D.C. Circuit in ACA Int'l, et al. v. FCC, Case No. 15-1211.[1] Briefing was completed, and oral argument was held in the D.C. Circuit on October 19, 2016.

Homeside filed the instant motion to stay proceedings, requesting that the Court stay this matter pending the D.C. Circuit's decision in ACA Int'l on the validity and meaning of the FCC's ruling with regard to the definition of ATDS.

II. LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Maryland v. Universal Elections, Inc., 729 F.3d 370, 379 (4th Cir. 2013) (quoting Landis v. N. Am. Co., 299 U.S. 248, 254-55, 57 S. Ct. 163, 81 L. Ed. 153 (1936)). Indeed, "[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of **[*4]** an action before it, pending resolution of independent proceedings which bear upon the case." Leyva v. Certified Grocers of Cal., Ltd., 593 F.2d 857, 863-64 (9th Cir. 1979).

In exercising discretion to stay a case, a court "must weigh competing interests." Landis, 299 U.S. at 255. When deciding a motion to stay, courts weigh the following three factors:

(1) the interests of judicial economy;

(2) hardship and equity to the moving party if the action is not stayed; and

(3) potential prejudice to the non-moving party.

Davis v. Biomet Orthopedics, LLC, No. CIV. 12-3738-JKB, 2013 U.S. Dist. LEXIS 24529, 2013 WL 682906, at *1 (D. Md. Feb. 22, 2013)(quoting Johnson v. DePuy Orthopaedics, Inc., No. 12 Civ. 2274(JFA), 2012 U.S. Dist. LEXIS 141336, 2012 WL 4538642, *2 (D.S.C. Oct. 1, 2012)). Further, the court must ensure that the stay is not "immoderate" and limit the scope of the stay within a reasonable time frame. Landis, 299 U.S. at 257.

III. DISCUSSION

Plaintiff's primary argument in opposition to a stay concerns the potential spoliation of telephone records. The Court does not find this argument persuasive. Homeside has initiated a litigation hold to preserve all records. Additionally, on November 13, 2017, the Court granted the Unopposed Motion Requesting Leave of Court to Commence Discovery and Issue a Third Party Subpoena [ECF No. 24] to a third party, QuoteLogic, the owner or operator of MinuteMortgageQuotes.com. See Order, ECF No. 25. As such, it appears that Plaintiff's concerns with regard to spoliation of records **[*5]** during the pendency of a stay have been alleviated.

It also appears that resolution of the meaning of an ATDS will directly affect this case, either by having a dispositive effect on the claims or at least by focusing discovery.[2] Because the D.C. Circuit

[1] The D.C. Circuit can reverse the FCC ruling and remand the case to the FCC to carry out the judgment of the Court, subject to review by the Supreme Court upon writ of certiorari. 47 U.S.C. § 402.

[2] Homeside has raised factual challenges to Cunningham's

Court has the exclusive jurisdiction to review the FCC ruling, 28 U.S.C. § 2342(1), its ruling will be binding. Staying the case pending the ruling will permit the Court and the parties to evaluate the viability of Plaintiff's claims under the most complete precedent and streamline the proceedings. Therefore, Plaintiff is unlikely to be prejudiced by a stay that could reduce the burden of litigation on both parties. Further, a stay could promote the efficient use of judicial resources.

The Court is, however, mindful of Plaintiff's concern regarding an indefinite stay. Since oral argument in the ACA Int'l case was over a year ago, a decision will not likely remain pending for long. The stay is not indefinite because it is directly tied to the proceedings in that case. Upon issuance of the opinion in ACA Int'l, either party may move to lift the stay.

IV. CONCLUSION

For the foregoing reasons:

1. Defendant's Motion to Stay Proceedings [ECF No. 17] is GRANTED.

**[*6]** 2. The case is hereby STAYED until further Order.

   a. The case shall remain stayed until the issuance of the opinion from the D.C. Circuit.

   b. The parties shall notify the Court within seven days of the D.C. Circuit opinion's filing.

   c. Either party may provide status reports as deemed appropriate.

SO ORDERED, on Thursday, November 30, 2017.

/s/ Marvin J. Garbis

United States District Judge

End of Document

prerecorded-voice claims. If the Court were to find that Cunningham failed to sustain a TCPA claim based on the use of a prerecorded voice, the Court would still need to determine whether Homeside used an ATDS, as defined in the FCC Order or possibly as redefined by the D.C. Circuit.


Cited
As of: January 6, 2021 9:18 PM Z

# Delozier v. Nationstar Mortg., LLC

United States District Court for the Middle District of Tennessee, Nashville Division

October 27, 2016, Filed

NO. 3-16-1433

**Reporter**
2016 U.S. Dist. LEXIS 183823 *

MICAH DELOZIER, et al. v. NATIONSTAR MORTGAGE, LLC.

**Counsel:** **[*1]** For Micah Delozier, Plaintiff: Melissa A. Tannehill, Agruss Law Firm, LLC, Chicago, IL; Michael J. McNulty, McNulty & Associates, PLLC, Nashville, TN.

For Nationstar Mortgage, LLC, Defendant: Douglas Ray Pierce, LEAD ATTORNEY, Elizabeth A. Holt, King & Ballow, Nashville, TN.

**Judges:** TODD J. CAMPBELL, UNITED STATES DISTRICT JUDGE.

**Opinion by:** TODD J. CAMPBELL

## Opinion

ORDER

Pending before the Court is Defendant's Motion to Stay Proceedings (Docket No. 22). Defendant asks the Court to stay these proceedings pending a ruling by the U.S. Court of Appeals for the District of Columbia in the consolidated case of *ACA International v. Federal Communications Commission* (Case No. 15-1211).

Plaintiffs' Amended Complaint in this case alleges that Defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, by repeatedly contacting Plaintiffs on Plaintiffs' cellular telephones, without Plaintiff's prior express consent, through use of an automatic telephone dialing system ("ATDS"). Plaintiffs allege, among other things, that the telephone dialing system used by Defendant has the capacity to store telephone numbers and to call stored telephone numbers automatically and without human intervention. In order to establish a successful **[*2]** TCPA claim, Plaintiffs will have to prove that Defendant contacted them using a ATDS. 47 U.S.C. § 227.

At issue in the *ACA* case is the Federal Communications Commission's ("FCC") interpretation of the term "automatic telephone dialing system," particularly the use of the word "capacity" within the definition. *See* Docket No. 23-1. The U.S. Courts of Appeal have exclusive jurisdiction to determine the validity of all final orders of the FCC. 28 U.S.C. § 2342(1). Petitioners in the *ACA* case contend that the FCC's interpretation expands the definition of an "automatic telephone dialing system" beyond the definition Congress intended. Thus, the ruling in the *ACA* case will clarify the definition of ATDS, which is at issue in this case.

The Court, in its discretion, finds that, under the circumstances, staying this action for a relatively short period of time would promote judicial economy, narrow and/or simplify the issues in this case, and avoid possible litigation costs and hardships.

The Court will not stay this action indefinitely, however. This action is STAYED until February 1, 2017. Once the D.C. Circuit Court of Appeals has ruled in the *ACA* case, or at the latest by February 1, 2017, the parties shall notify the Court **[*3]** in writing as to the status and/or ruling of the *ACA* case.

IT IS SO ORDERED.

/s/ Todd J. Campbell

TODD J. CAMPBELL

UNITED STATES DISTRICT JUDGE

---

End of Document




As of: January 6, 2021 9:17 PM Z

# Errington v. Time Warner Cable Inc.

United States District Court for the Central District of California

May 18, 2016, Decided; May 18, 2016, Filed

2:15-CV-02196 RSWL (DTB)

**Reporter**
2016 U.S. Dist. LEXIS 66317 *

JASON ERRINGTON, Plaintiff, v. TIME WARNER CABLE INC., Defendant.

**Prior History:** Fontes v. Time Warner Cable Inc., 2014 U.S. Dist. LEXIS 68561 (C.D. Cal., May 19, 2014)

**Counsel:** **[*1]** For Jason Errington, Plaintiff: Trinette Gragirena Kent, Lemberg Law LLC, Phoenix, AZ.

For Time Warner Cable, Inc., Defendant: Amy E Beverlin, Kabat Chapman and Ozmer LLP, Los Angeles, CA; Ryan D Watstein, PRO HAC VICE, Kabat Chapman and Ozmer LLP, Atlanta, GA.

**Judges:** HONORABLE RONALD S.W. LEW, Senior United States District Judge.

**Opinion by:** RONALD S.W. LEW

## Opinion

**ORDER re: DEFENDANT'S MOTION TO STAY PROCEEDINGS** [21]; **DEFENDANT'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT'S MOTION TO STAY PROCEEDINGS** [21-3]; **DEFENDANT'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT'S REPLY** [24-1]

Currently before the Court is Defendant Time Warner Cable, Inc.'s ("Defendant") Motion to Stay Proceedings ("Motion") [21]. Defendant moves to stay this action pending decisions from the United States Supreme Court and the United States Court of Appeals for the D.C. Circuit in Spokeo, Inc. v. Robins, 742 F.3d 409 (9th Cir. 2014), *cert granted*, 135 S. Ct. 1892, 191 L. Ed. 2d 762 (U.S. Apr. 27, 2015) (No. 13-1339) and ACA International v. FCC, No. 15-1211, 2015 U.S. App. LEXIS 18554 (D.C. Cir.), respectively. Also before the Court are Defendant's Requests for Judicial Notice [21-3, 24-1].

**I. BACKGROUND**

**A. Factual Background**

Plaintiff is an individual residing in Upland, California. Compl. ¶ 4, ECF No. 1. Defendant is a business entity located in New York, New York. Id. at ¶ 6. **[*2]** Defendant, in the ordinary course of business, engages in the collection of consumer debts. Id. at ¶ 7.

A financial obligation was incurred and owed to Defendant by a person who is not a party to this lawsuit (hereinafter "Debtor"). Id. at ¶ 8. Debtor's alleged obligation arises from a transaction in which services were acquired on credit. Id. at ¶ 10.

Defendant placed calls to Plaintiff's number in an attempt to collect a debt that belonged to the Debtor, as the phone number the Debtor provided to Defendant was the same as Plaintiff's phone number. Id. at ¶ 13. Plaintiff alleges the calls were placed using an automatic telephone dialing system ("ATDS") and/or by using an artificial or prerecorded voice ("Robocalls"). During a live conversation, Plaintiff informed Defendant that it was calling the wrong number. Id. at ¶ 17. Defendant allegedly continued calling Plaintiff using an ATDS and/or Robocalls, but has since ceased. Id. at ¶ 18. Plaintiff's Complaint alleges violation of the TCPA and the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788.

**B. Procedural Background**

On October 26, 2015, Plaintiff filed its Complaint [1]. On December 4, 2015, the parties stipulated to extend the time **[*3]** within which Defendant could answer Plaintiff's Complaint [9]. On January 4, 2016, Defendant filed its Answer [12]. On February 24, 2016, Defendant filed its Motion to Stay Proceedings [21]. On March 8, 2016, Plaintiff filed his Opposition [22]. On March 15, 2016, Defendant filed its Reply [24].

**II. DISCUSSION**

**A. Legal Standard**

1. Motion to Stay Proceedings

A district court has "broad discretion to stay proceedings as an incident to its power to control its own docket," i.e. to grant a "Landis stay." Clinton v. Jones, 520 U.S. 681, 706, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997) (citing Landis v. N. Am. Co., 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936)). The Court, therefore, may "find it . . . efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." Leyva v. Certified Grocers of Cal., Ltd., 593 F.2d 857, 863 (9th Cir. 1979). The rule applies to judicial proceedings and does not require the issues of such proceedings be necessarily controlling of the action before the Court. Id. at 863-864. A stay should not be granted unless it appears likely that the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims. Id.; see Landis, 299 U.S. at 256-257 (discretion abused because the stay "continue[d] in effect" without "reasonable limits.").

In exercising its discretion in determining whether to **[*4]** grant a Landis stay, a court must weigh the competing interests of the various parties that may be affected by the decision to grant or refuse to grant the stay. Lockyer v. Mirant Corp., 398 F.3d 1098, 1110 (9th Cir. 2005). Specifically, the court must consider: (1) the possible damage or harm to the non-moving party which may result from granting the stay; (2) the hardship or inequity the moving party may suffer in being required to go forward with the case if the request for a stay is denied; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." Id. The proponent of a stay has the burden of proving that a stay is justified. Clinton v. Jones, 520 U.S. 681, 708, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997).

Regarding the second Lockyer factor, courts have held that there is no likelihood of damage or harm to the non-moving party merely because the stay could cause a delay to the plaintiff in receiving money damages. See Bay Area Surgical Group, Inc. v. Aetna Life Ins. Co., No. 5:13-CV-05430-EJD, 2014 U.S. Dist. LEXIS 83152, 2014 WL 2759571, at *5 (N.D. Cal. June 17, 2014); see also Nussbaum v. Diversified Consultants, Inc., No. 15-CV-600, 2015 U.S. Dist. LEXIS 129750, 2015 WL 5707147, at *2 (D. N.J. Sept. 28, 2015) ("Because delay results inherently from the issuance of a stay, courts have found that mere delay does not, without more, necessitate a finding of undue prejudice and clear tactical disadvantage.").

**[*5] B. Analysis**

1. Defendant's Requests for Judicial Notice

Grants of judicial notice are a matter of judicial discretion. See United States v. Nat. Med. Enters., Inc., 792 F.2d 906, 912 (9th Cir. 1994). "The Court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Further, the Court "may take judicial notice of proceedings in other courts, whether in the federal or state systems." Duckett v. Godinez, 67 F.3d 734, 741 (9th Cir. 1995).

In Defendant's Request for Judicial Notice in Support of Defendant's Motion to Stay Proceedings [21-3], Defendant requests that this Court take judicial notice of the following: (1) the Joint Brief for Petitioners in ACA International, Inc. v. Federal Communications Commission, ECF No. 1585568 (D.C. Cir. Nov. 25, 2015); (2) the Scheduling Order in ACA International, Inc. v. Federal Communications Commission, ECF No. 1577930 (D.C. Cir. Oct. 13, 2015); and (3) the Brief for Petitioners in Spokeo, Inc. v. Robins, No. 13-1339 (U.S. July 2, 2015). The items subject to Defendant's Request [21-3] are attached as Exhibits A, B, and C. Pursuant to its discretion, this Court **GRANTS** **[*6]** Defendant's Request [21-3].

In Defendant's Request for Judicial Notice in Support of Defendant's Reply [24-1], Defendant requests that this Court take judicial notice of the following: (1) this Court's February 26, 2016 Order Granting Motion to Stay Action in Chattanond v. Discover Financial Services, LLC, No. 15-CV-08549-RSWL-JC (C.D. Cal. Nov. 2, 2015), attached to Defendant's Request as Exhibit 1. Pursuant to its discretion, this Court **GRANTS** Defendant's Request [24-1].

2. Defendant's Motion to Stay Proceedings

*a. A Stay is Not Warranted Pending the Supreme Court's Decision in Spokeo*

In Robins v. Spokeo, Inc., the Ninth Circuit held that an individual plaintiff has Article III standing to sue under the Fair Credit Reporting Act ("FCRA") where the plaintiff alleged violations of statutory rights but had not pled actual harm in its complaint. 742 F.3d 409 (9th Cir. 2014), cert. granted, 135 S. Ct. 1892, 191 L. Ed. 2d 762 (U.S. Apr. 27, 2015) (No. 13-1339). The Ninth Circuit determined that "[w]hen . . . the statutory cause of action does not require proof of actual damages, a plaintiff can suffer a violation of the statutory right without suffering actual damages." Id.

On April 27, 2015, the Supreme Court granted certiorari in Spokeo, Inc. v. Robins, 135 S. Ct. 1892, 191 L. Ed. 2d 762 (2015). The question presented to the Supreme Court **[*7]** in Spokeo is: "Whether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute." Question Presented, Spokeo, 135 S. Ct. 1892, 191 L. Ed. 2d 762, available at http://www.supremecourt.gov/qp/13-01339qp.pdf. The oral argument in Spokeo took place on November 2, 2015. Supreme Court of the United States, Granted & Noted List, available at http://www.supremecourt.gov/grantednotedlist/15grantednotedlist .

While Spokeo involves claims under the FCRA, the constitutional question extends to the TCPA. If the Supreme Court were to answer the certified question in Spokeo in the negative, TCPA plaintiffs who have not suffered any concrete harm as a result of a defendant's violation of the TCPA would have no standing to sue. See Eric B. Fromer Chiropractic, Inc. v. New York Life Ins. & Annuity Corp., No. 15-cv-04767-AB, 2015 U.S. Dist. LEXIS 148476, 2015 WL 6579779, at *2 (C.D. Cal. Oct. 19, 2015); see also Chattanond, No. 2:15-cv-09549-RSWL-JC.

The Supreme Court's ruling in Spokeo was expected to resolve whether a plaintiff can rely on a bare statutory violation to establish Article III standing, or whether allegations of actual damage

are required. However, the Supreme Court handed down its decision in Spokeo on May 16, 2016, **[*8]** and in doing so, declined to decide the key standing issue. See Spokeo, Inc. v. Robins, No. 12-1339, 136 S. Ct. 1540, 194 L. Ed. 2d 635, 2016 U.S. LEXIS 3046, 2016 WL 2842447 (S. Ct. 2016). Rather, the Court threw out the Ninth Circuit's ruling in favor of the plaintiffs, reasoning that the Ninth Circuit's standing analysis was "incomplete." 2016 U.S. LEXIS 3046, [WL] at * 1. Justice Alito, writing on behalf of the majority, noted that the Court took "no position on the correctness of the Ninth Circuit's ultimate conclusion." 2016 U.S. LEXIS 3046, [WL] at *2. The Ninth Circuit's ruling was vacated and remanded for further analysis of the standing issue. Consequently, this Court cannot speculate as to when the standing issue in Spokeo will be resolved, or whether the issue will be resolved with such expedience sufficient to warrant a stay. For this reason, the Court declines to grant Defendant's Motion to Stay the action pending resolution of the standing issue in Spokeo.

*b. A Stay is Warranted Pending the D.C. Circuit's Decision in ACA*

The following two appeals are before the D.C. Circuit: (1) ACA Int'l v. Fed. Commc'ns Comm'n, Appeal No. 15-1211 (D.C. Circuit) (filed on Oct. 13, 2015), and (2) Chamber of Commerce v. Fed. Commc'ns Comm'n, Appeal No. 15-1306 (D.C. Circuit) (filed on Sept. 2, 2015). The D.C. Circuit consolidated Appeal No. 15-1306, and others, with Appeal **[*9]** No. 15-1211 for resolution in ACA. The Court should find that a stay is warranted pending the D.C. Circuit's decision in ACA.

In ACA, the D.C. Circuit will address, among other things, what type of equipment constitutes an "ATDS." Under the TCPA, an "ATDS" is equipment "which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). On appeal is the Federal Communications Commissions' ("FCC") finding that a piece of equipment has sufficient capacity to qualify as an ATDS if it has the present or "potential" capacity to store or produce numbers to be called using a random generator, but not if it only has the "theoretical" capacity. See In re Rules & Regulatiosn Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd 7961 (2015) ("July 2015 Ruling"). The July 2015 Ruling does not clarify the difference between "potential" and "theoretical" capacity.

The D.C. Circuit will determine whether the FCC's treatment of the term "capacity" in defining ATDS is "arbitrary, capricious, [or] an abuse of discretion," and thus results in an approach that does not comport with the caller's constitutional rights of due process **[*10]** and freedom of speech, and that disregards the applicable statute. Def.'s Req. for Judicial Notice Ex. A, ECF No. 21-3. Because Plaintiff must prove that Defendant called him using an ATDS in order to establish a TCPA claim, the definition of an ATDS is directly implicated in this litigation. See Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1043 (9th Cir. 2012) ("The three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system [ATDS]; (3) without the recipient's prior express consent.").

The Court notes that the final briefing in Appeal No. 15-1211 was completed on February 24, 2016. Def.'s Req. for Judicial Notice Ex. A. Accordingly, the appeal before the D.C. Circuit is not likely to remain pending for an extended period of time, and the possible prejudice to Plaintiff is minimal. Additionally, hardship to Defendant and considerations of judicial economy weigh in favor of a stay. If the case is not stayed, Defendant may suffer hardship in conducting discovery and trial preparation in light of the uncertain difference between "potential" capacity and "theoretical" capacity under the definition of an ATDS. Lastly, granting a stay may simplify the issues in this case and **[*11]** conserve judicial resources. Any Order by this Court which is issued in reliance on the July 2015 Ruling will be called into question if the D.C. Circuit overturns the July 2015 Ruling. Accordingly, the Court and both parties will benefit from a clarification of the applicable law. See Provo, 2015 U.S. Dist. LEXIS 100491, 2015 WL 6144029, at *1.

Based on the foregoing, this Court **GRANTS**

Defendant's Requests for Judicial Notice [21-3, 24-1] and **GRANTS** Defendant's Motion to Stay Proceedings [21].

Defendant shall confer with Plaintiff and file a status report advising the Court of the outcome of the decisions from the United States Supreme Court and/or the United States Court of Appeals for the D.C. Circuit within 14 days from the date of decision. The status report shall also include the parties' position as to how this Court should proceed.

**IT IS SO ORDERED**.

DATED: May 18, 2016

/s/ RONALD S.W. LEW

**HONORABLE RONALD S.W. LEW**

Senior U.S. District Judge

---

**End of Document**

No *Shepard's* Signal™
As of: January 6, 2021 9:16 PM Z

# Frantz v. Force Factor, LLC

United States District Court for the Southern District of California

November 13, 2020, Decided; November 16, 2020, Filed

Case No. 20-cv-1012-MMA (KSC)

**Reporter**
2020 U.S. Dist. LEXIS 213941 *

ERIC FRANTZ, Plaintiff, v. FORCE FACTOR, LLC, Defendant.

**Counsel: [*1]** For Eric Frantz on behalf of himself and all others similarly situated, Plaintiff: Alexis M. Wood, Kas L. Gallucci, LEAD ATTORNEYS, Law Offices of Ronald A. Marron, San Diego, CA; Ronald Marron, LEAD ATTORNEY, Law Office of Ronald Marron, San Diego, CA.

For Force Factor, LLC, Defendant: Daniel Scott Silverman, LEAD ATTORNEY, VENABLE LLP, Los Angeles, CA.

**Judges:** HON. MICHAEL M. ANELLO, United States District Judge.

**Opinion by:** MICHAEL M. ANELLO

## Opinion

### ORDER GRANTING DEFENDANT'S MOTION TO STAY

[Doc. No. 16]

Force Factor, LLC ("Defendant") moves to stay the action pending resolution of *Facebook, Inc. v. Duguid*, Sup. Ct. Dkt. No. 19-511. *See* Doc. No. 16.[1] Eric Frantz ("Plaintiff") filed an opposition to Defendant's motion, and Defendant replied. *See* Doc. Nos. 18, 19. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1. *See* Doc. No. 24. For the reasons set forth below, the Court **GRANTS** Defendant's motion to stay.

### I. BACKGROUND

This case arises from a series of promotional text messages Plaintiff received from Defendant. According to Plaintiff's First Amended Complaint ("FAC"), in October 2019, Plaintiff began receiving promotional text messages from Defendant **[*2]** after texting the word "SCORE" to receive a complimentary bottle of one of Defendant's products. *See* Doc. No. 12 ("FAC") ¶ 29. Plaintiff alleges Defendant sent these text messages using an automatic telephone dialing system ("ATDS") in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1). *See id.* ¶¶ 35, 39. Plaintiff contends the promotional text messages were sent using an ATDS, "which had the capacity to produce or store numbers randomly or sequentially, and to place text message calls to Plaintiff's cellular telephone by dialing such numbers." *Id.* ¶ 35. Furthermore, Plaintiff alleges these text messages were sent without the prior express consent of Plaintiff and that the text messages were not sent for emergency purposes. *See id.* ¶¶ 37, 38. Plaintiff alleges negligent and willful violations of the TCPA pursuant to 48 U.S.C.

[1] All citations refer to the pagination assigned by the CM/ECF system.

§ 227. *See* FAC ¶¶ 51-63. Defendant now moves to stay this action pending resolution of *Facebook, Inc. v. Duguid*, Sup. Ct. Dkt. No. 19-511, currently before the United States Supreme Court. *See* Doc. No. 16.

## II. LEGAL STANDARD

"A district court has discretionary power to stay proceedings in its own court . . . ." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936)). "The power to stay a case is 'incidental to **[*3]** the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Halliwell v. A-T Sols.*, No. 13-cv-2014-H (KSC), 2014 U.S. Dist. LEXIS 126919, 2014 WL 4472724, at *7 (S.D. Cal. Sept. 10, 2014) (quoting *Landis*, 299 U.S. at 254). A district court may stay a case "pending resolution of independent proceedings which bear upon the case," even if those proceedings are not "necessarily controlling of the action before the court." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) (citations omitted). However, "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255.

In determining whether to grant a stay, courts in the Ninth Circuit weigh the "competing interests which will be affected by the granting or refusal to grant a stay," including

> [1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Lockyer*, 398 F.3d at 1110 (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). "'If there is even a fair possibility that the stay **[*4]** will work damage to someone else,' the stay may be inappropriate absent a showing by the moving party of 'hardship or inequity.'" *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (quoting *Landis*, 299 U.S. at 255). The burden is on the movant to show that a stay is appropriate. *Clinton v. Jones*, 520 U.S. 681, 708, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997) (citing *Landis*, 299 U.S. at 255).

## III. DISCUSSION

### A. The Definition of an ATDS

Under the TCPA, it is "unlawful for any person within the United States . . . (A) to make any call . . . using any [ATDS] . . . (iii) to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines an ATDS as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The interpretation of 47 U.S.C. § 227(a)(1)(A) is the subject of a split among the circuit courts of appeal. "Specifically, the circuits are divided on the question of whether the clause 'random or sequential number generator' in Section 227(a)(1)(A) modifies both 'to store' and 'to produce.'" *Borden v. eFinancial, LLC*, No. C19-1430JLR, 2020 U.S. Dist. LEXIS 192912, at *3 (W.D. Wash. Oct. 16, 2020). "The Third, Seventh, and Eleventh [Circuits] have read the TCPA to apply only to devices with the capacity to 'generate random or sequential telephone numbers and dial those numbers.'" *Komaiko v. Baker Techs., Inc.*, No. 19-cv-03795-DMR, 2020 U.S. Dist. LEXIS 143953, 2020 WL 5104041, at *2 (N.D. Cal. Aug. 11, 2020) (brackets **[*5]** omitted) (quoting *Dominguez on Behalf of Himself v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018)); *see also* *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 461 (7th Cir. 2020); *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1306-10 (11th Cir. 2020). In contrast, the Ninth Circuit defined an ATDS as

"equipment which has the capacity—(1) to store numbers to be called *or* (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically." *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1150 (9th Cir. 2019) (emphasis added) (quoting *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018)). On July 9, 2020, the Supreme Court granted certiorari review of the Ninth Circuit's decision in *Duguid* to resolve this circuit split. *See Facebook, Inc. v. Duguid*, Sup. Ct. Dkt. No. 19-511. The Supreme Court's docket provides the following question presented: "[w]hether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'" *Id.*

**B. Stay Pending *Facebook***

Defendant argues that a stay pending the Supreme Court's decision in *Facebook* is warranted for the following reasons: (1) the Supreme Court's Decision in *Facebook* "will simplify the issues, narrow discovery, and potentially dispose of—or at least define—a necessary element of Plaintiff's claim"; (2) Defendant will suffer substantial harm if the case is not stayed pending the decision in *Facebook* ***[*6]*** ; and (3) a stay would neither harm nor prejudice Plaintiff. Doc. No. 16 at 13-14; *see also* Doc. No. 19 at 4, 9, 10. Plaintiff counters that a stay is not warranted for the following reasons: (1) Plaintiff will be prejudiced by a stay; (2) denial of a stay will not result in hardship to Defendant; and (3) Defendant failed to establish that the Supreme Court's decision in *Facebook* will simplify the issues of this case. *See* Doc. No. 18 at 10-11, 15, 18-19.

**1. Damage Resulting from Granting a Stay**

The first factor the Court considers is "the possible damage which may result from the granting of a stay." *Lockyer*, 398 F.3d at 1110 (quoting *CMAX, Inc.*, 300 F.2d at 268). Plaintiff argues that he will be prejudiced by a "lengthy stay." Doc. No. 18 at 10. Plaintiff's primary concern is the risk of evidence being lost or destroyed. *See id.* at 12. Plaintiff also contends that a stay would force the putative class to wait "at least an additional year" before receiving any sort of relief from Defendant's marketing messages. *Id.* at 15.

The Court finds these concerns are relatively minimal and do not justify the denial of Defendant's motion to stay. First, both parties have an obligation to preserve evidence, and Defendant is aware of this obligation. *See Canady v. Bridgecrest Acceptance Corp.*, No. CV-19-04738-PHX-DWL, 2020 U.S. Dist. LEXIS 161629, 2020 WL 5249263, at *4 (D. Ariz. Sept. 3, 2020) **[*7]** (noting that the obligation to preserve evidence reduces the risk of evidence being destroyed, lost, corrupted, or forgotten); *Borden*, 2020 U.S. Dist. LEXIS 192912, at *7 (noting that the risk of evidence loss "appears minimal in light of the parties' obligations to preserve evidence"); *see also* Doc. No. 19 at 7 ("[Defendant] is preserving potentially relevant documents within its possession, custody, or control."). Second, the requested stay is not impermissibly "indefinite in nature." *Dependable Highway Exp., Inc.*, 498 F.3d at 1066. Rather, Defendant requests a stay of these proceedings pending the Supreme Court's decision in *Facebook*. Several courts have recognized that a 2021 decision in *Facebook* is likely. *See Borden*, 2020 U.S. Dist. LEXIS 192912, at *8; *Creasy v. Charter Communs., Inc.*, No. CV 20-1199, 2020 U.S. Dist. LEXIS 177798, 2020 WL 5761117, at *7 (E.D. La. Sept. 28, 2020); *Canady*, 2020 U.S. Dist. LEXIS 161629, 2020 WL 5249263, at *3. Therefore, a stay would only minimally delay discovery. The obligation to preserve evidence, "coupled with the fact that the stay is not for an indefinite amount of time, further underscores that there is little risk of harm in instituting a stay." *Canady*, 2020 U.S. Dist. LEXIS 161629, 2020 WL 5249263, at *4.

Plaintiff also argues a stay is improper because the putative class is "likely" still receiving marketing text messages from Defendant; therefore, the "individuals in the putative class will be forced [to wait] at least an additional **[*8]** year on top of the usual litigation for any sort of potential relief should a stay be granted." Doc. No. 18 at 15. Plaintiff's

argument is speculative. Plaintiff offers no support for the conclusion that Defendant is continuing to send marketing text messages in violation of the TCPA. Furthermore, nothing from the FAC suggests Plaintiff is in jeopardy of receiving additional text messages. *See Reynolds v. Geico Corp.*, No. 2:16-CV-01940-SU, 2017 U.S. Dist. LEXIS 28867, 2017 WL 815238, at *4 (D. Or. Mar. 1, 2017) (noting that the potential prejudice to the plaintiff was minimal where there was no indication that the plaintiff was at risk of receiving additional text messages).

Accordingly, the court finds the first factor weighs in favor of a stay.

### 2. Hardship or Inequity Defendant May Suffer Absent a Stay

The second factor the Court considers is "the hardship or inequity which a party may suffer in being required to go forward." *Lockyer*, 398 F.3d at 1110 (quoting *CMAX, Inc.*, 300 F.2d at 268). Defendant argues that, "if a stay is not granted, [Defendant] will be forced to expend unnecessary time and resources to defend relief that may be all but foreclosed by the Supreme Court's ruling in [*Facebook*]." Doc. No. 16 at 28. Specifically, Defendant contends that, in the absence of a stay, "the parties may be forced to **[*9]** complete the following benchmarks without the benefit of knowing the ATDS definition—a cornerstone issue in this litigation: fact discovery, class discovery, expert discovery, class certification, and summary judgment." *Id.* Plaintiff responds that Defendant has not established any hardship sufficient to warrant a stay because ATDS-related discovery will be needed regardless of the Supreme Court's decision in *Facebook. See* Doc. No. 18 at 16.

ATDS related discovery will likely be necessary regardless of the outcome in *Facebook*. However, the Supreme Court's decision in *Facebook* may narrow the scope of discovery because it will limit discovery to a single definition of an ATDS. *See Canady*, 2020 U.S. Dist. LEXIS 161629, 2020 WL 5249263, at *4 ("The Supreme Court's resolution of *Facebook* has the potential to significantly narrow the issues involved in this case, including the scope of discovery as to [the plaintiff's] ATDS allegations and the scope of [the plaintiff's] class-certification request."); *Saunders v. Sunrun, Inc.*, No. 19-cv-04548-HSG, 2020 U.S. Dist. LEXIS 202015, 2020 WL 6342937, at *2 (N.D. Cal. Oct. 29, 2020) ("[A] decision in [*Facebook*] will likely simplify the matter and inform the parameters of discovery."). Furthermore, "[i]n the absence of a stay, the parties will have to expend time and money conducting discovery **[*10]** on an issue central to Defendant's liability while lacking a clear idea of the law that will ultimately apply at summary judgment or at trial." *Ambrezewicz v. LeadPoint, Inc.*, No. EDCV 16-2331 JGB (KKx), 2017 U.S. Dist. LEXIS 214342, 2017 WL 8185862, at *4 (C.D. Cal. May 8, 2017); *see also Aleisa v. Square, Inc.*, No. 20-cv-00806-EMC, 2020 U.S. Dist. LEXIS 188024, 2020 WL 5993226, at *8 (N.D. Cal. Oct. 9, 2020) ("[T]he parties and the Court would have to engage in costly and time-consuming class action discovery and ongoing litigation, which could be wasted."). Additionally, "[i]t is well-recognized that discovery in class actions is expensive and asymmetric, with defendants bearing most of the burdens." *Babare v. Sigue Corp.*, No. C20-0894-JCC, 2020 U.S. Dist. LEXIS 180262, at *6 (W.D. Wash. Sep. 30, 2020).

Accordingly, the court finds that the second factor weighs in favor of a stay.

### 3. The Orderly Course of Justice

The third factor the Court considers is "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer*, 398 F.3d at 1110 (quoting *CMAX, Inc.*, 300 F.2d at 268). Defendant argues that "any decision rendered by the Supreme Court will necessarily simplify numerous practical aspects of this case, including discovery, class certification, and motions practice, and will prevent duplicative proceedings." Doc. No. 16 at 24. Plaintiff responds that "Defendant's **[*11]** failure to explain how a decision in *Facebook* would narrow the scope of discovery . . . is reason enough to deny its motion." Doc. No. 18 at 19.

As discussed in the preceding section, a stay pending the outcome of *Facebook* will promote the orderly course of justice by clarifying the issues involved in this case. *See supra* Section III.B.2. The Supreme Court's decision in *Facebook* will provide clarity to the definition of an ATDS, a central issue in both of Plaintiff's claims—negligent and willful violations of the TCPA. *See Sealey v. Chase Bank (U.S.A.), N.A.*, No. 19-CV-07710-JST, 2020 U.S. Dist. LEXIS 183537, 2020 WL 5814108, at *2 (N.D. Cal. Sept. 29, 2020) ("[T]he orderly course of justice dictates that [*Facebook*] should be decided first, as that case addresses the central question at issue here."); *Borden*, 2020 U.S. Dist. LEXIS 192912, at *6 ("[A] stay will promote the orderly course of justice because the Supreme Court's decision will inform the central question at issue here: whether [the defendant] used an ATDS to send its text messages to [the plaintiff].").

Accordingly, the Court finds that the third factor weighs in favor of granting a stay. Therefore, after weighing the competing interests, the Court concludes that a stay is warranted pending the Supreme Court's resolution of *Facebook*.

## IV. CONCLUSION [*12]

For the foregoing reasons, the Court **GRANTS** Defendant's motion to stay and **STAYS** this action pending the Supreme Court's resolution of *Facebook, Inc. v. Duguid*, Sup. Ct. Dkt. No. 19-511. The Court **ORDERS** that the parties submit a joint status report within **5 days** of the Supreme Court issuing its decision.

**IT IS SO ORDERED**.

Dated: November 13, 2020

/s/ Michael M. Anello

HON. MICHAEL M. ANELLO

United States District Judge

---

**End of Document**


Neutral
As of: January 6, 2021 9:13 PM Z

# Hammond v. Floor & Decor Outlets of Am.

United States District Court for the Middle District of Tennessee, Nashville Division

November 16, 2020, Filed

Case No. 3:19-cv-01099

**Reporter**
2020 U.S. Dist. LEXIS 213686 *; 2020 WL 6712168

GERMMA HAMMOND, on behalf of himself and others similarly situated, Plaintiffs, v. FLOOR AND DECOR OUTLETS OF AMERICA, INC., Defendant.

**Prior History:** Hammond v. Floor & Decor Outlets of Am., Inc., 2020 U.S. Dist. LEXIS 84203 (M.D. Tenn., May 13, 2020)

**Counsel: [*1]** For Germma Hammond on behalf of himself and all other similarly situated employees, Plaintiff: Charles P. Yezbak, III, Yezbak Law Offices, Nashville, TN; Diana J. Nobile, Gregory K. McGillivary, Hillary D. LeBeau, McGillivary Steele Elkin LLP, Washington, DC; N. Chase Teeples, Yezbak Law Offices, Nashville, TN.

For Floor and Decor Outlets of America, Inc., Defendant: Katharine R. Cloud, Keane A. Barger, Riley, Warnock & Jacobson, Nashville, TN; Lincoln O. Bisbee, Russell R. Bruch, Morgan, Lewis & Bockius (DC Office), Washington, DC.

**Judges:** ALETA A. TRAUGER, United States District Judge.

**Opinion by:** ALETA A. TRAUGER

## Opinion

### MEMORANDUM and ORDER

Four days prior to its deadline for providing to counsel for the plaintiff the full names, last known addresses, and email addresses of employees entitled to receive notice of this collective action, defendant Floor and Decor Outlets of America, Inc. ("F&D") has filed an Expedited Motion to Stay Notice for Out-of-State Individuals, to Exclude Notice to Individuals Who Worked Three or Fewer Total Days, and for an Accelerated Telephonic Hearing. (Doc. No. 167.) Also pending are F&D's Request for a Telephonic Hearing or, In the Alternative, Motion for Leave to File a Reply (Doc. **[*2]** No. 171), and the plaintiff's Motion for Approval of Revised Notice (Doc. No. 166).

For the reasons set forth herein, F&D's motions will be denied, and the plaintiff's motion will be granted.

### I. STATEMENT OF THE CASE

On May 13, 2020, the court entered a Memorandum and separate Order denying F&D's motion to dismiss or strike portions of the collective action Complaint, which was based on F&D's argument that, under the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California* ("*BMS*"), 137 S. Ct. 1773, 1787, 198 L. Ed. 2d 395 (2017), the court lacks personal jurisdiction over the defendant with respect to claims brought by opt-in plaintiffs who do not

reside in Tennessee and whose claims have no connection to Tennessee. (Doc. Nos. 40, 41.) In finding that it does have jurisdiction over those claims and that *BMS* does not apply to FLSA collective actions, the court recognized that no circuit court of appeals had yet addressed the question of whether *BMS* applies to FLSA collective actions and that the district courts nationwide are split on the question. (Doc. No. 42, at 24 (collecting cases).) That remains true.

On August 19, 2020, however, the Sixth Circuit granted the plaintiff in an unrelated FLSA action leave **[*3]** to pursue an interlocutory appeal of a decision by the Western District of Tennessee reaching the opposite conclusion. *Canaday v. Anthem Cos.*, 439 F. Supp. 3d 1042, 1049 (W.D. Tenn. 2020), *interlocutory app. granted, In re: Canaday*, No. 20-0504 (6th Cir. Aug. 19, 2020).[1] Briefing in the appellate case was originally supposed to have been concluded by early December, but the dates have now been extended, and briefing is not anticipated to be concluded until early January. *See Canaday v. The Anthem Cos.*, No. 20-5947 (6th Cir. Oct. 30, 2020) (briefing letter).

After much litigation in the present case on the question of whether the plaintiff and/or several opt-in plaintiffs should be compelled to arbitration, the court entered an order on November 3, 2020 conditionally certifying a nationwide collective action, defining membership in the collective action, and setting various related deadlines, including a deadline for F&D to provide the names and contact information for current and former employees entitled to receive notice of the collective action and a date by which the plaintiff should submit to the court an amended notice to class members and motion for approval of such amended notice. (Doc. No. 165.) Only after entry of this order did F&D **[*4]** bring to the court's attention the pending appeal in *Canaday v. Anthem Companies*.

In its Expedited Motion, F&D asks that the court stay notice to out-of-state individuals—and toll the statute of limitations for those individuals—until the Sixth Circuit has issued an opinion in *Canaday* and resolved the question of whether *BMS* applies to FLSA collective actions. Incidentally, F&D also asks the court to excuse it from supplying contact information for former employees who otherwise are within the definition of the collective but (1) were hired and terminated on the same day or (2) worked three or fewer total days (a group that would seem to include individuals who were hired and fired the same day).

The plaintiff filed his Expedited Response to the motion, asking that the court summarily deny the defendant's motion on the basis that it is unnecessary, prejudicial, and untimely. (Doc. No. 170.)

The defendant has not filed a response to the plaintiff's Motion for Approval.[2]

## II. LEGAL STANDARD

A district court has broad discretion to stay all proceedings pending the resolution of independent proceedings elsewhere. *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936). Such power is incidental to the power inherent in every court to control the disposition **[*5]** of the cases on its docket. *Clinton v. Jones*, 520 U.S. 681, 706-07, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997) (citing *Landis*, 299 U.S. at 254). While the courts within this circuit do not appear to have adopted a precise test for determining whether to issue a stay, "courts have noted a number of relevant considerations," the "most important" of which "is the balance of hardships; the moving party has the burden of proving that it will suffer irreparable injury if the case moves forward, and that the non-moving party will not be injured by a stay." *Int'l Bhd. of Elec. Workers v. AT&T Network Sys. (Columbia Works)*, 879 F.2d 864 (Table),

[1] The timing of the Sixth Circuit's granting permission to pursue an interlocutory appeal in *Canaday* certainly calls into question the rationale behind the defendant's decision to wait until now to file its "Expedited Motion."

[2] In the Order granting conditional certification, the court instructed the defendant that no response was necessary unless it had a "new, previously unraised basis for objection." (Doc. No. 165, at 2.)

1989 WL 78212, at *8 (6th Cir. 1989) (citing *Landis*, 299 U.S. at 255 (1936); *Ohio Env't. Council v. U.S. Dist. Court*, 565 F.2d 393, 396 (6th Cir. 1977)). "The district court must also consider whether granting the stay will further the interest in economical use of judicial time and resources." *Id.*; *see also F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 628 (6th Cir. 2014) (quoting *Int'l Bhd.*, 1989 WL 78212, at *8). Additionally, a stay should not be for an "indefinite duration in the absence of pressing need." *Landis*, 299 U.S. at 255. "A court must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liability without undue delay." *Ohio Env't. Council*, 565 F.2d at 396.

## III. DISCUSSION

### A. Whether to Grant a Stay

F&D argues that the court should issue the requested stay because: (1) a stay is in the interest of judicial economy; (2) F&D will be significantly prejudiced if a stay is not entered, and there will be no way to cure that prejudice; and (3) a stay will not prejudice **[*6]** the public or the putative opt-in plaintiffs. The court is not persuaded.

*1. Judicial Economy*

First, with respect to the interest of judicial economy, F&D insists that any litigation activity involving out-of-state opt-in plaintiffs—including discovery and decertification—when the Sixth Circuit may "soon" confirm that those individuals cannot participate in this case "would be rendered entirely moot if the Sixth Circuit holds that those opt-ins cannot participate in the case." (Doc. No. 168, at 6.) It argues that the more efficient approach is to toll the statute of limitations for the out-of-state putative opt-ins but to delay sending notice and undertaking active litigation until, and if, "the Sixth Circuit rules that they can participate in this case." (*Id.*) F&D also insists that the pending appeal in *Canaday* will "have a dispositive impact on the potential claims of out-of-state individuals." (*Id.*) A decision that the court lacks personal jurisdiction over F&D with respect to those individuals, rendering those individuals ineligible to participate in this case, would, according to F&D, "result in significant confusion and prejudice to out-of-state individuals, who would be invited **[*7]** to join this case only to later learn that they are ineligible to participate in the case." (*Id.*)

At first blush, this argument appears quite logical. As the plaintiff points out, however, a ruling in *Canaday* that the jurisdictional holding in *BMS* does apply to FLSA collective actions would not automatically divest this court of jurisdiction in this case. Rather, F&D would be required to file a motion in this court seeking reconsideration of the prior determination that the court has jurisdiction and to obtain a ruling from this court that the *Canaday* opinion is on point and should apply retroactively here. Even if the court were to rule in favor of F&D at that juncture, however, such a determination would *not* necessarily mean that proceedings involving the out-of-state opt-ins up until that time would be rendered entirely moot or that the court would have wasted judicial resources. Rather, the more expedient route, under those circumstances, would likely be to sever the claims of the out-of-state opt-ins into separate lawsuits grouped by state and then to transfer those cases to the appropriate courts under 28 U.S.C. § 1406. *See, e.g., Does 1-144 v. Chiquita Brands Int'l, Inc.*, 285 F. Supp. 3d 228, 239 (D.D.C. 2018) ("Accordingly, severance of the claims for purposes **[*8]** of transfer to the proper jurisdictions is appropriate."); *Eastman Chem. Co. v. URS Corp.*, No. 2:10-CV-218, 2011 WL 3423389, at *11 (E.D. Tenn. Aug. 4, 2011) (severing claims against third-party defendants over which the court lacked jurisdiction and transferring those claims to an appropriate district under 28 U.S.C. § 1406(a)). This could occur with relatively minimal confusion to the out-of-state opt-ins and without unnecessarily stalling the proceedings relating to in-state opt-ins. Conversely, if the Sixth Circuit rules against the employer in *Canaday*, but this court has nonetheless stayed notice to the out-of-state opt-ins, then the court and the parties would be burdened by dual discovery tracks and a repeat of

written discovery, depositions, and motions practice.

Judicial economy would not necessarily be furthered by a stay.

*2. Prejudice to F&D*

F&D, as the party moving for a stay, "has the burden of proving that it will suffer irreparable injury if the case moves forward." *Int'l Bhd.*, 1989 WL 78212, at *8. In order to satisfy this burden, F&D argues that, if the court authorizes notice to out-of-state individuals and "the Sixth Circuit then concludes that those individuals cannot participate in this case, the sending of notice will be exactly the type of court-sponsored solicitation **[*9]** that the Supreme Court expressly forbade in *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989)." (Doc. No. 168, at 6 (also citing *In re JPMorgan Chase & Co.*, 916 F.3d 494, 502 (5th Cir. 2019), for the proposition that "alerting those who cannot ultimately participate in the collective 'merely stirs up litigation,' which is what *Hoffmann-La Roche* flatly proscribes."")).) F&D claims that such prejudice will be irremediable, because "Plaintiff's counsel will already have the contact information for individuals who cannot participate in this case," and "Plaintiff's counsel will likely initiate new actions in other states for individuals they represent solely as a result of what would then be considered jurisdictionally improper but Court-sponsored notice." (*Id.* at 7.) If all of this occurred, then F&D will ultimately end up "expend[ing] significant resources litigating claims that it would never have faced absent Court-sponsored notice to ineligible opt-in plaintiffs." (*Id.* ID.) It also claims that courts "routinely" grant stays in FLSA collective actions "when a pending appellate decision in another case could significantly affect the scope of the collective." (*Id.*)

Again, the court is not persuaded. First, in *Hoffman-LaRoche*, the Supreme Court held that, while the district courts have authority to facilitate **[*10]** notice in class actions, courts "exercising the discretionary authority to oversee the notice-giving process . . . must be scrupulous to respect judicial neutrality" and, "[t]o that end, . . . must take care to avoid even the appearance of judicial endorsement of the merits of the action." 493 U.S. at 174. The proposed notice in this case satisfies that directive. In *JPMorgan Chase*, the Fifth Circuit applied that rule to mean that courts do not "have unbridled discretion" to send notice to potential opt-in plaintiffs and, specifically, do not have the authority to send notice to individuals who had signed valid arbitration agreements and, therefore, were ineligible to pursue collective action claims in court against the defendant. *JPMorgan Chase*, 916 F.3d at 502-04. Here, however, the court has already excluded from the definition of the collective action those individuals who have signed arbitration agreements. The question at issue is not whether the putative opt-ins can pursue their claims in a collective court action at all, but simply whether they can pursue them *in this venue*. And, if, as referenced above, the court ultimately determines (based on the outcome in *Canaday* or otherwise) that they cannot, transfer of those cases **[*11]** rather than outright dismissal will likely be indicated. The defendant will not be significantly prejudiced by being required to defend against colorable claims in the appropriate jurisdictions.

Second, and largely for the same reasons, those cases upon which F&D relies as holding that a stay was appropriate pending resolution of a Supreme Court or circuit court decision are inapplicable here, as they all involve situations in which resolution of the pending appeal would be dispositive of an entire claim or defense to a cause of action as a whole. *See, e.g., Santti v. Menard, Inc.*, No. 4:17CV1243, 2017 WL 8784743 (N.D. Ohio Dec. 21, 2017) (granting motion to stay an FLSA collective action pending the Supreme Court's decision in *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 200 L. Ed. 2d 889 (2018), which was "likely to directly affect the present action," in which the plaintiff challenged the validity and enforceability of the Arbitration and Waiver Provisions of the Employment Agreement she had signed, as *Epic* would (and ultimately did) consider whether the Federal Arbitration Act's saving clause provided a basis for refusing to enforce an arbitration agreement that incorporates a waiver of the ability to bring a collective action under the

FLSA); *Griffith v. Menard, Inc.*, 2:18-cv-81, 2018 WL 1907348, at *3-4 (S.D. Ohio Apr. 23, 2018) (same, **[*12]** entering stay and noting that *Epic* would impact the plaintiffs' ability to proceed in court); *Campanelli v. ImageFIRST Healthcare Laundry Specialists, Inc.*, No. 15-cv-04456-PJH, 2017 WL 2929450, at *3 (N.D. Cal. July 10, 2017) (granting a stay pending issuance of *Epic*, because the decision would have a "dramatic impact on the size of the putative class/collective"); *see also Fed. Trade Comm'n v. Lending Club Corp.*, No. 18-cv-02454-JSC, 2020 WL 4898136, at *1(N.D. Cal. Aug. 20, 2020) (finding that a stay was warranted, because the Supreme Court was "poised to address 'an issue of enormous consequence to this case,'" specifically, whether the Federal Trade Commission was authorized "to seek monetary relief at all"); *Kirchgessner v. CHLN, Inc.*, No. CV-15-1048-PHX-SMM, 2016 WL 9525224, at *1 (D. Ariz. May 11, 2016) (staying action pending the Ninth Circuit's resolution of an appeal raising the same issue confronting the district court, which was expected to be dispositive of whether counts 1 and 2 of the FLSA complaint stated an FLSA minimum wage violation at all).

Here, the question of whether the opt-ins will have signed arbitration agreements is no longer at issue, and the defendant does not argue that the Sixth Circuit's decision will affect the question of whether the plaintiff has stated a colorable claim under the FLSA. The cases upon which **[*13]** F&D relies are simply inapposite, and the court finds that it has not satisfied its burden of showing a likelihood of irreparable harm if a stay is not granted.

*3. Prejudice to the Plaintiff*

F&D argues that a stay would not prejudice the plaintiff or the putative opt-ins, because it proposes that the out-of-state opt-in plaintiffs' claims be tolled pending resolution of the Sixth Circuit appeal. As the plaintiff points out, however, that case has yet even to be briefed, there is no indication whether it will then be appealed to the Supreme Court, and staying the out-of-state individuals' claims indefinitely is potentially prejudicial to the plaintiffs. As the court has already acknowledged, F&D's workforce appears to turn over fairly rapidly. Where, as here, the case has already been delayed for nearly a year while the parties have litigated issues relating to arbitration agreements and no discovery has been conducted, staying the case and allowing F&D to withhold contact information for out-of-state members would likely compound the difficulty of locating and contacting putative members. With the passage of time, the contact information for former full-time employees in F&D's possession **[*14]** will become increasingly inaccurate. In addition, for individuals whose claims may be small, additional delay will serve to disincentivize their participation, as they move on to different jobs and their tenure at F&D becomes more remote in time. And people's memories fade—those of the putative plaintiffs and those of F&D witnesses as well. *See Hoffman-La Roche*, 493 U.S. at 170 (finding that employees must receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate"). This factor weighs heavily against an indefinite stay.

*4. Conclusion*

Weighing these factors leads the court to conclude that the defendant has not met its burden of showing that a stay is necessary to protect the interest of judicial economy or avoid irreversible harm to the defendant. The motion to stay will be denied.

**B. Whether to Alter the Class Definition**

Now, after the parties have already litigated how the FLSA collective should be defined, the defendant seeks to further narrow that definition, excluding notice to those who were hired and terminated the same day and those who worked fewer than three full days. More specifically, F&D seeks to be excused **[*15]** from including on the list of putative members of the collective to be provided to the plaintiff those individuals who fall in that category. Although it does not formally request a modification of the definition of the collective, F&D cites a number of cases that have held that

an FLSA collective should be defined to include only those individuals who worked more than forty hours in at least one work week. *See, e.g., Hollis v. Alston Pers. Care Servs., LLC*, No. 1:16CV1447, 2017 WL 3327591, at *4 (M.D.N.C. Aug. 3, 2017) (limiting notice to employees who may have submitted time cards reflecting more than forty hours of work in one week); *Watson v. Adv. Distrib. Servs., LLC*, 298 F.R.D. 558, 565 (M.D. Tenn. 2014) (Trauger, J.) (requiring that notice be limited to employees who worked over forty hours in a workweek).

While it is true that only individuals who actually worked overtime and were not properly paid for that overtime work will be entitled to recover under the FLSA, this is clearly another matter the defendant could have brought to the court's attention before now. In response to this portion of the Expedited Motion, the plaintiff argues that the defendant's argument is untimely and that it has presented no valid reason for its failure to raise this issue in its opposition to the plaintiff's conditional **[*16]** certification motion, as a result of which it waived this argument. He also contends that the defendant improperly seeks to exclude individuals who the defendant believes do not have viable claims and that "choosing which plaintiffs within the collective are entitled to notice based on Defendant's perception of the merits of their claims is not Defendant's prerogative." (Doc. No. 170, at 12.) Finally, the plaintiff argues that the court should not reconsider its prior ruling based on the "hypothetical chance that some individuals who do not have claims may opt in" or continue to "litigate the scope of the collective action indefinitely." (Doc. No. 170, at 15.)

The defendant's failure to raise this issue previously is entirely unjustified, and the court will not continue to litigate indefinitely the scope of the collective action. Moreover, the defendant has not raised any objection to the plaintiff's Motion for Approval of Revised Notice. This portion of the defendant's Expedited Motion will also be denied.

Further, because the plaintiff's proposed Amended Notice complies with the Order granting conditional certification, and the defendant has not raised any new objection to it, the **[*17]** Motion for Approval will be granted.

## IV. CONCLUSION AND ORDER

For the reasons set forth herein, the defendant's Expedited Motion to Stay Notice for Out-of-State Individuals, to Exclude Notice to Individuals Who Worked Three or Fewer Total Days, and for an Accelerated Telephonic Hearing (Doc. No. 167) is **DENIED**, and its Request for a Telephonic Hearing or, in the Alternative, Motion for Leave to File a Reply (Doc. No. 171) is **DENIED AS MOOT**.

The plaintiff's Motion for Approval of Revised Notice (Doc. No. 166) is **GRANTED**, and the proposed Amended Notice is **APPROVED**, subject to the plaintiff's inclusion of the appropriate dates in paragraph 4 thereof, prior to distribution.

The defendant must supply the names and contact information for those entitled to notice of this action by the close of business on **Tuesday, November 17, 2020**.

It is so **ORDERED**.

/s/ Aleta A. Trauger

ALETA A. TRAUGER

United States District Judge

---

End of Document




As of: January 6, 2021 9:16 PM Z

# Jones v. Credit Acceptance Corp.

United States District Court for the Eastern District of Michigan, Southern Division

October 31, 2016, Decided; October 31, 2016, Filed

Civil Action No.: 15-13165

**Reporter**

2016 U.S. Dist. LEXIS 174152 *

VEDIA L. JONES, Plaintiff, v. CREDIT ACCEPTANCE CORPORATION, Defendant/Third-Party Plaintiff, v. KALEAYAH JACKSON, Third-Party Defendant.

**Subsequent History:** Adopted by, Stay granted by Jones v. Credit Acceptance Corp., 2016 U.S. Dist. LEXIS 173383 ( E.D. Mich., Dec. 15, 2016)

**Counsel:** **[*1]** For Vedia L Jones, Plaintiff, ThirdParty Defendant: Stephen A. Thomas, Stephen A. Thomas, PLC, Detroit, MI.

For Credit Acceptance Corporation, Defendant, ThirdParty Plaintiff: Stephen W. King, King & Murray PLLC, Birmingham, MI.

**Judges:** ELIZABETH A. STAFFORD, United States Magistrate Judge. Honorable Victoria A. Roberts.

**Opinion by:** ELIZABETH A. STAFFORD

## Opinion

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION TO STAY [R. 21]**

**I. Introduction**

Plaintiff Vedia L. Jones alleges that Credit Acceptance Corporation ("CAC") harassed her with debt-collection calls from an automatic telephone dialer system, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* [R. 1]. The debt belonged to Jones's granddaughter, Third-Party Defendant Kaleayah Jackson. [*Id.*, PgID 3]. Jones alleges that she informed a CAC representative to stop calling her private cell phone, but that she continued to receive daily prerecorded and/or synthesized voice messages from CAC on her phone. [*Id.*, PgID 4]. Jones denies that she gave CAC consent to call her private cell phone, but CAC alleges in a third-party complaint that Jackson authorized CAC to call her using the phone number at issue. [*Id.*; R. 17, PgID 110-11].

Currently before the Court **[*2]** is CAC's motion to stay proceedings pending a D.C. Circuit ruling on the validity of a FCC Declaratory Ruling regarding the TCPA from July 2015. [R. 21]. For the reasons stated below, the Court recommends that CAC's motion be granted.

**II. Analysis**

**A.**

Under the TCPA, the term "automatic telephone dialing system" is defined as equipment that "has the capacity (A) to store or produce telephone numbers to be called, suing a random or sequential number generator; and (B) to dial such numbers." § 227(a)(1). Use of such an autodialer to call a cell phone without the "prior express consent of the called party" is prohibited. § 227(b)(1)(A)(iii). In July 2015, the FCC reaffirmed a previous statement that the TCPA defines autodialers to include equipment that "has the capacity to store or produce, and dial random or sequential numbers . . . even if it is not presently used for that purpose . . . ." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7972 (2015). The 2015 Ruling additionally clarified that "a called party may revoke consent at any time and through any reasonable means," and that "the TCPA requires the consent not of the intended recipient of a call, but of the current subscriber," although **[*3]** it provided for a "one call" safe-harbor, allowing the caller to gain actual or constructive notice once the number is reassigned from the party who gave consent. *Id.* at 7889-90, 7999-8000.

ACA International and other parties have petitioned the D.C. Circuit to review the July 2015 Ruling, raising as issues the definition of autodialer as including equipment that merely has the capacity to autodial; the provisions deeming a caller as having constructive knowledge of the reassignment of a number after only one call (whether answered or not); the definition of "called party"; and the Ruling's interpretation of the right of revocation of consent. *ACA International, et al. v. FCC*, No. 15-1211, R. 1567590, R. 1568291, R. 1568293, 2015 U.S. App. LEXIS 18554 (D.C. Circuit August 2015). Oral argument was heard on October 19, 2016.

CAC argues that proceedings in this matter should be stayed in the interest of judicial economy because the D.C. Circuit's decision may be dispositive. It cites a number of opinions in which a stay was entered pending the *ACA International* decision. [R. 21, PgID 142]. Jones responds that the D.C. Circuit is unlikely to overturn the July 2015 Ruling and that she would be prejudiced by a stay, and she cites a number of **[*4]** opinions in which stays pending the court's decision were denied. [R. 27, PgID 425-26]. The Court finds her claim of prejudice unconvincing and that the interest of judicial economy would be furthered by granting the motion to stay.

**B.**

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants, and the entry of such an order ordinarily rests with the sound discretion of the District Court." *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627 (6th Cir. 2014) (citations and internal quotation marks omitted). CAC bears the burden of demonstrating the need for a delay and that neither Jones nor the public will be harmed by a stay. *Id.* Despite the importance of balancing these hardships, "[t]he district court must also consider whether granting the stay will further the interest in economical use of judicial time and resources." *Id.* (citations and internal quotation marks omitted).

CAC's argument that the D.C. Circuit Court's decision regarding the July 2015 Ruling will likely be dispositive of the issues raised in this lawsuit is not persuasive. CAC claims, "If the term 'called party' is amended by the D.C. Circuit **[*5]** to include the 'intended recipient,' then there will be no liability under the TCPA in this case." [R. 21, PgID 151]. But the specific issue raised before the D.C. Circuit addresses intended recipients who were previous subscribers of the number at issue. *Fontes v. Time Warner Cable Inc., No*. CV14-2060-CAS(CWX), 2015 U.S. Dist. LEXIS 169580, 2015 WL 9272790, at *2 (C.D. Cal. Dec. 17, 2015). That is not the issue in this case; Jones claims she was the subscriber of the phone number at issue since 2006, [R. 1, PgID 3], and CAC has not claimed that Jackson was a subscriber when she gave consent. Jones also states that she informed a CAC agent that the number belonged to her and to stop calling. [*Id.*, PgID 4]. So even if the D.C. Circuit decision leads to a conclusion that CAC had sufficient consent to call Jones's number, her

claims against CAC may still have merit if she properly revoked such consent. And even if the autodialer definition in the July 2015 Ruling goes too far by including equipment that only has the potential to autodial, that does not mean that the equipment used to call Jones would not be considered an autodialer under a more narrow definition.

Having said that, the decision from the D.C. Circuit could affect the standards that would be relevant to a motion **[*6]** for summary judgment and to jury instructions. Specifically, the court's decision may be relevant to the determination of whether CAC could rely upon Jackson's alleged consent, of whether Jones properly revoked any consent and of the proofs necessary for determining whether the equipment CAC used to call Jones was an autodialer under the TCPA. Jones argues that the D.C. Circuit Court is unlikely to overturn the July 2015 Ruling, but the FCC was "sharply divided" on many of the pertinent issues, especially the proper definition of autodialer. *Fontes*, 2015 U.S. Dist. LEXIS 169580, 2015 W.L. 9272790 at *3. "[I]n light of the close divide amongst the FCC commissioners and the fact that at least one commissioner believes the FCC's ruling is 'flatly inconsistent with the TCPA,' there is a legitimate possibility that the Court of Appeals may overturn that ruling. Accordingly, the proper interpretation of the TCPA remains unclear." 2015 U.S. Dist. LEXIS 169580, [WL] at *4. Anticipating that a decision from the D.C. Circuit Court would arrive around the end of 2016, the court in *Fontes* granted the defendant's motion to stay. 2015 U.S. Dist. LEXIS 169580, [WL] at 5.

*See also Coatney v. Synchrony Bank*, No. 616CV389ORL22TBS, 2016 U.S. Dist. LEXIS 118768, 2016 WL 4506315, at *2 (M.D. Fla. Aug. 2, 2016) ("A stay will conserve judicial resources, will help clarify the law, and will enable this Court to render a sound **[*7]** decision."); *Rose v. Wells Fargo Advisors, LLC*, No. 1:16-CV-562-CAP, 2016 U.S. Dist. LEXIS 85287, 2016 WL 3369283, at *2 (N.D. Ga. June 14, 2016) ("[G]ranting a stay may simplify the issues in this case and conserve judicial resources because any order by this court issued in reliance on the July 2015 Ruling will be called into question if the D.C. Circuit overturns the July 2015 Ruling.").

Jones notes that other courts have disagreed. For example, in *Caudill v. Wells Fargo Home Mortg., Inc.*, No. CV 5: 16-066-DCR, 2016 U.S. Dist. LEXIS 89136, 2016 WL 3820195, at *3 (E.D. Ky. July 11, 2016), the court denied a motion for stay, reasoning that it was unlikely that the *ACA International* case would be dispositive even if it impacted the standards for revoking consent; that the plaintiff contended that the defendant's equipment would meet a more narrow definition of autodialer than allowed by the July 2015 Ruling; and that the length of the stay would be uncertain. Jones also cites opinions such as *Baisden v. Credit Adjustments, Inc.*, 813 F.3d 338 (6th Cir. 2016) as indicating that a third party who does not possess common authority over a phone can never provide the requisite prior express consent. Nonetheless, the Court believes that a stay is warranted.

While understanding that erroneous jury instructions require reversal only if they are confusing, misleading and prejudicial, *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1075 (6th Cir. 2015), proceeding on motions for summary judgment **[*8]** or to trial with uncertain standards would unnecessarily invite potential prejudicial and reversible error, and thus potentially waste judicial resources. Jones argues that it is clear that CAC actually used an autodialer when calling her, but CAC did not admit that in its amended answer. [R. 17]. In fact, CAC denies that Jones informed its agent to stop calling her phone and that it nonetheless continued to call her number using autodial equipment. [*Id.*, ¶¶ 17-18]. The Court should not speculate whether clarification of the standards that govern the TCPA will make a difference when these factual issues are being resolved. Moreover, Jones's reliance on *Baisden* is misplaced because its description of "prior express consent" relied in part on the July 2015 Ruling that is now under review, *see* 813 F.3d at 343-44, and the issue in *Baisden* was not whether a third party may provide the requisite consent for a creditor to call a particular phone number, so that opinion does not resolve the issue raised here.

Nor has Jones demonstrated prejudice. She asserts that, because she has deposed two corporate witnesses and is close to filing a motion for summary judgment, she would be placed at a tactical disadvantage **[*9]** if a stay were granted. The logic of this argument is not evident, and there is no tactical advantage to conducting discovery and preparing for trial when the TCPA standards are uncertain. *Rose*, 2016 U.S. Dist. LEXIS 85287, 2016 WL 3369283 at *2 ("[I]f the case is not stayed, the defendant may suffer hardship in conducting discovery and trial preparation in light of the uncertain difference between "potential" capacity and "theoretical" capacity under the definition of an ATDS."). And while the length of a stay would be uncertain, the D.C. Circuit Court has already held oral argument, so the stay should not be unduly long. *See Small v. GE Capital, Inc.*, No. EDCV152479JGBDTBX, 2016 U.S. Dist. LEXIS 118959, 2016 WL 4502460, at *3 (C.D. Cal. June 9, 2016) ("Although Plaintiff is correct that it is unclear when the D.C. Circuit will issue its ruling, numerous district courts within this district have stayed TCPA actions as early as December 2015 in anticipation of a ruling by the D.C. Circuit."); *Rose*, 2016 U.S. Dist. LEXIS 85287, 2016 WL 3369283 at *2 ("[T]he appeal before the D.C. Circuit is not likely to remain pending for an extended period of time, and the possible prejudice to the plaintiff is minimal.").

In light of the uncertainty surrounding the proper interpretation of the TCPA and the lack of demonstrated prejudice to Jones, the interest of judicial economy warrants a stay. **[*10]**

### III. Conclusion

For the reasons stated above, the Court recommends that CAC's motion to stay [R. 21] be **GRANTED**.

/s/ Elizabeth A. Stafford

ELIZABETH A. STAFFORD

United States Magistrate Judge

Dated: October 31, 2016

End of Document


Caution
As of: January 6, 2021 9:20 PM Z

# Jones v. Fiorella Ins. Agency

United States District Court for the Southern District of Florida

July 1, 2020, Decided; July 1, 2020, Entered on Docket

CASE NO. 20-CV-14105-ROSENBERG/MAYNARD

**Reporter**
2020 U.S. Dist. LEXIS 119167 *; 2020 WL 3637377

PAUL JONES, individually and on behalf of others similarly situated, Plaintiff, v. FIORELLA INSURANCE AGENCY, Defendant.

**Counsel: [*1]** For Paul Jones, individually and on behalf of all others similarly situated,, Plaintiff: Rachel E Kaufman, Avi Robert Kaufman, Kaufman PA, Miami, FL.

For Fiorella Insurance Agency, Inc., a Florida limited liability company, Defendant: Ian M. Ross, LEAD ATTORNEY, Stumphauzer Foslid Sloman Ross & Kolaya, PLLC, Miami, FL.

**Judges:** ROBIN L. ROSENBERG, UNITED STATES DISTRICT JUDGE.

**Opinion by:** ROBIN L. ROSENBERG

## Opinion

**ORDER GRANTING DEFENDANT'S MOTION TO STAY**

The matter is before the Court on Defendant Fiorella Insurance Agency, Inc.'s Motion to Stay Proceedings. DE 10. The Motion has been fully briefed. For the following reasons, Defendant's Motion is granted.

**I. BACKGROUND**

This matter concerns alleged violations of the Telephone Consumer Protection Act of 1991. 47 U.S.C. § 227 (2020). The Plaintiff, Paul Jones, filed a class action complaint on behalf of all individuals who received pre-recorded telemarketing calls from Defendant, Fiorella Insurance Agency, Inc. Jones alleges that Fiorella sent him, and other putative class members, pre-recorded telemarketing calls for the purpose of selling life insurance. DE 1 at 6-7. In its answer to Jones' complaint, Fiorella denied these allegations and raised several affirmative defenses. DE **[*2]** 6 at 6-7; one affirmative defense challenges the constitutionality of the TCPA on First Amendment grounds. DE 6 at 7.

Fiorella's affirmative defense based on the First Amendment is implicated in a case before the Supreme Court this term. Several weeks before Fiorella filed its Motion to Stay, the Supreme Court heard oral arguments in *American Association of Political Consultants, Inc. v. FCC*, 923 F.3d 159 (4th. Cir. 2019) ("*AAPC*"), *cert. granted sub nom. Barr v. American Association of Political Consultants, Inc.*, No. 19-631. *AAPC* raises the question of whether an exception to the TCPA's automated-call restriction for government-debt violates the First Amendment and, if there is a constitutional violation, whether the proper remedy is to sever the exception from the remainder of the statute. DE 10 at 2. Fiorella argues that the Court's ruling in *AACP* has the potential to moot this action or, at a minimum, narrow the issues presented and

therefore requests a stay pending the Court's decision. *Id.* Jones disagrees and opposes the Motion. DE 12.

## II. ANALYSIS

When deciding whether to stay proceedings, the Court's discretion is guided by several considerations: "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and **[*3]** effort for itself, for counsel, and for litigants. How this can be done calls for the exercise of judgment which must weigh competing interests and maintain an even balance. *Landis v. North American Co.*, 299 U.S. 248, 254-255 (1936). This exercise of judgment between competing interests takes the form of the following factors: (1) whether the litigation is at an early stage; (2) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (3) whether a stay will simplify the issues in question and streamline the trials; and (4) whether a stay will reduce the burden of litigation on the parties and on the court." *Rubinstein v. Keshet Inter Vivos Trust*, No. 17-61019-Civ-Williams/Torres, 2018 WL 3730868, at *2 (S.D. Fla. Apr. 7, 2018); *see also Coatney v. Synchrony Bank*, No. 6:16-cv-389-Orl-22TBS, 2016 WL 4506315, at *1 (M.D. Fla. Aug. 2, 2015) (applying only the last three factors to weigh whether a stay is appropriate). In addition to these factors, the decision to stay proceedings must not be immoderate—the stay must be within reasonable, determinable limits. *Ortega Trujillo v. Conover & Co. Commc'n, Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000) (finding that the district court abused its discretion when it ordered a stay without a discernable end).

The proponent of a stay bears the burden of establishing its need. *Clinton v. Jones*, 520 U.S. 681, 708, (1997). And, as Justice Cardozo warned, "[w]e must be on our guard against depriving the processes of justice **[*4]** of their suppleness of adaption to varying conditions." *Landis*, 299 U.S. at 256. With these considerations in mind, the Court turns to whether Fiorella has established that a stay of proceedings pending the Supreme Court's ruling is appropriate.

Applying the first factor, the litigation's early stage favors granting Fiorella's Motion to Stay. Jones filed his complaint in the beginning of April. DE 1. The parties have not yet undergone extensive pretrial proceedings. Furthermore, a Supreme Court decision, which may arrive by the end of this term, would not result in a significant impact on the current pretrial deadlines. DE 7 at 4-6.

While the Court acknowledges the difficulties a stay may impose on Jones, a stay would not unduly prejudice or tactically disadvantage Jones; therefore, the second factor also weighs in favor of granting the Motion to Stay. Jones asserts that a stay will substantially impact the discovery process. DE 12 at 5-6. Specifically, Jones contends that a stay in proceedings would jeopardize his efforts to conduct discovery requests from relevant third parties and thus claims that a stay would result in the irreparable loss of relevant information. *Id.* The potential length of a stay is **[*5]** especially relevant to Jones's concerns. Yet, in the event that the Supreme Court's decision is not issued until early fall, discovery will be stayed only for several months. Furthermore, as Fiorella points out, Jones has already submitted subpoenas to the relevant third parties and conducted preliminary discovery proceedings. DE 13 at 3.

The third factor—whether a stay will simplify the issues in question and streamline the trial—also weighs in favor of granting the Motion to Stay. As Fiorella argues, the Supreme Court's ruling in *AACP* has the potential to moot Jones's entire cause of action. DE 10 at 2. While it is true, as Jones responds, that the majority of the TCPA may be upheld with only the offending provision severed from the statute, DE 12 at 3-4, the ruling will nevertheless impact the viability of one of Fiorella's affirmative defenses. DE 6 at 7. Other courts have recognized that regardless of the outcome the ruling will clarify the issues and provide guidance. *See Lacy v. Comcast Cable Commc'ns, LLC*, No. 3:19-CV-05007-RBL, 2020 WL 2041755, at *2 (W.D. Wash. Apr. 28, 2020) ("it would be unwise to predict the Supreme Court's course of action with any certainty. The opinion in

*AAPC* may provide useful guidance in this case."); **[*6]** *Seefeldt v. Entm't Consulting Int'l, LLC.*, No. 4:19-CV-00188, 2020 WL 905844, at *3 (E.D. Mo. Feb. 25, 2020) ("Whatever the case, having studied the matter carefully, it seems the best approach is to wait for much-needed clarity from the Supreme Court—at least as to the government-debt exception problem, but also potentially the definitional problem.")

Finally, granting a stay will reduce the burden of litigation on both the parties and the Court. Recognizing, among other considerations, the diminishing effect a stay would have on the burden of litigation, this Court, along with another court in this district, has previously stayed proceedings in a TCPA case pending the decision in *AACP. See Caraboolad v. Sun Tan City, LLC*, Case No. 9:20-cv-80109-RLR, DE 44 (entered May 5, 2020); *Doyle v. Florida Health Sol. Corp.*, Case No. 1:19-cv-24013-DPG, DE 26 (entered April 30, 2020). Moreover, district courts across the country have issued orders staying proceedings to conserve judicial resources. *See Nakai v. Charter Commc'ns, Inc.*, No. CV 19-8035-GW-SSX, 2020 WL 1908949, at *6 (C.D. Cal. Apr. 15, 2020) ("a brief stay here [] will promote judicial economy.")*;* *Loftus v. Signpost Inc.*, No. 19-CV-7984 (JGK), 2020 WL 2848231, at *2 (S.D.N.Y. June 2, 2020) ("[e]ven a decision from the Supreme Court that would not be dispositive of issues in this case could contain guidance that would allow **[*7]** this litigation to proceed on a reasonable and efficient basis."); *Boger v. Citrix Sys., Inc.*, No. 8:19-CV-01234-PX, 2020 WL 1939702, at *2 (D. Md. Apr. 22, 2020) (issuing a stay in effort to preserve judicial resources and limit client expenditures on a potentially invalidated cause of action).

## III. CONCLUSION AND RULING

The factors that the Court must consider weigh in favor of granting Defendant's Motion to Stay. The Supreme Court's decision in *AACP* will clarify the issues presented and will reduce the litigation burden on both the parties and the Court. The stay will likely be limited to several months thereby limiting any substantial adverse effect on the Plaintiff. In light of the foregoing reasons, the Defendant's Motion to Stay [DE 10] is **GRANTED** insofar as this case is stayed pending the Supreme Court's decision in *AAPC*. The parties shall file a status report updating the Court on the status of *AAPC* by no later than August 17, 2020 and at three-month intervals after that date. The Clerk of the Court shall **ADMINISTRATIVELY CLOSE THIS CASE**.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 1st day of July, 2020.

/s/ Robin L. Rosenberg

ROBIN L. ROSENBERG

UNITED STATES DISTRICT JUDGE

---

End of Document



As of: January 6, 2021 9:21 PM Z

# Loftus v. Signpost, Inc.

United States District Court for the Southern District of New York

October 19, 2020, Decided; October 19, 2020, Filed

19 cv 7984 (JGK)

**Reporter**
2020 U.S. Dist. LEXIS 193130 *

WILLIAM LOFTUS, Plaintiff, - against - SIGNPOST, INC., Defendant.

**Prior History:** Loftus v. Signpost Inc., 2020 U.S. Dist. LEXIS 97036 (S.D.N.Y., June 2, 2020)

**Counsel: [*1]** For William Loftus, individually and on behalf of all others similarly situated, Plaintiff: Andrew Heidarpour, Heidarpour Law Firm, PLLC, Washington, DC; Anthony Paronich, Paronich Law, P.C., Hingham, MA.

For SignPost, Inc., Defendant: Kristapor Vartanian, Kabat Chapman & Ozmer, Los Angeles, CA; Michael David Kabat, Ryan D. Watstein, Kabat Chapman & Ozmer LLP, Atlanta, GA.

**Judges:** John G. Koeltl, United States District Judge.

**Opinion by:** John G. Koeltl

## Opinion

**MEMORANDUM OPINION AND ORDER**

**JOHN G. KOELTL, District Judge**:

The plaintiff brings this putative class action against Signpost Inc., alleging violations of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. §227 et seq. The defendant, Signpost Inc., moves to stay this action pending the Supreme Court's decision in Facebook Inc. v. Duguid, No. 19-511, which potentially will answer the question of what type of equipment qualifies as an automatic telephone dialing system ("ATDS"). The answer to that question is pivotal in this case and may shape the progress of discovery and the ultimate outcome in this case. In a previous decision, this Court stayed this case pending the decision of another Supreme Court case, Barr v. Am. Ass'n of Political Consultants, No. 19-631, 140 S. Ct. 812, 205 L. Ed. 2d 449. See Loftus v. Signpost Inc., No. 19-cv-7984, 2020 U.S. Dist. LEXIS 97036, 2020 WL 2848231, at *1 (S.D.N.Y. June 2, 2020), Dkt. 41. The **[*2]** Court applied the five factors *set* out by the court in Kappel v. Comfort, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996), and stayed the action. Those same factors support a stay of this action pending a decision by the Supreme Court in the Facebook case.

A decision in the Facebook case may substantially resolve the present case, easing the burden of discovery on the defendant and saving judicial resources. The plaintiff will not be harmed by the stay because the defendant has attested that it is aware of its obligations and has instituted a litigation hold to preserve documents that may be relevant to the litigation. The stay is for a relatively brief period of time because the Supreme Court will likely decide the Facebook case at some point in the current Term. The balance of the relevant

factors weighs decidedly in favor of a stay. The defendant points out without contradiction that all of the other courts that have faced the question of whether to stay litigations pending a decision in the Facebook case have stayed similar cases.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. The defendant's motion to stay this action pending **[*3]** a decision by the Supreme Court in the Facebook case is **granted**. The parties should inform the Court promptly after the Supreme Court has decided the Facebook case and provide the Court with letter briefs on the effect of that decision on this case.

The Clerk is directed to close Docket No. 45.

**SO ORDERED**.

**Dated: New York, New York**

**October 19, 2020**

/s/ John G. Koeltl

**John G. Koeltl**

**United States District Judge**

---

End of Document


Caution
As of: January 6, 2021 9:14 PM Z

# Mendoza v. UnitedHealth Group Inc.

United States District Court for the Northern District of California

January 6, 2014, Decided; January 6, 2014, Filed

No. C 13-1553 PJH

**Reporter**
2014 U.S. Dist. LEXIS 1616 *

SUZAN MENDOZA, Plaintiff, v. UNITEDHEALTH GROUP INC., et al., Defendants.

**Prior History:** Mendoza v. UnitedHealth Group, Inc., 2013 U.S. Dist. LEXIS 65820 (N.D. Cal., May 8, 2013)

**Counsel:** **[*1]** For Suzan Mendoza, individually and on behalf of all others similarly situated, Plaintiff: Ari Jonathan Scharg, LEAD ATTORNEY, Edelson P.C., Chicago, IL; Benjamin H. Richman, Jay Edelson, Rafey S. Balabanian, Rafey Sarkis Balabanian, LEAD ATTORNEYS, Edelson LLC, Chicago, IL; Christopher Dore, LEAD ATTORNEY, PRO HAC VICE, Edelson LLC, Chicago, IL; Sean Patrick Reis, Edelson P.C., Rancho Santa Margarita, CA; Stefan Coleman, Law Offices of Stefan Coleman, LLC, Miami, FL.

For UnitedHealth Group Incorporated, a Minnesota corporation, HealthAllies, Inc., Defendants: Adam K Levin, Carolyn Anne DeLone, Hogan Lovells US LLP, Washington, DC; Mitchell E Zamoff, Hogan Lovells US LLP, Minneapolis, MN; Robert B. Hawk, Stacy R. Hovan, Hogan Lovells US LLP, Menlo park, CA.

For Optum, Inc., a Delaware corporation, Defendant: Adam K Levin, Carolyn Anne DeLone, Hogan Lovells US LLP, Washington, DC; Mitchell E Zamoff, Hogan Lovells US LLP, Minneapolis, MN; Robert B. Hawk, Hogan Lovells US LLP, Menlo park, CA.

For MD247.Com, Inc., a Florida corporation, Defendant: Karen Ann Doner, LEAD ATTORNEY, Roth Doner Jackson, McLean, VA; Mitchell Neil Roth, LEAD ATTORNEY, Roth Doner Jackson, PLC, McLean, VA; Brian Ted **[*2]** Hafter, LeClairRyan LLP, San Francisco, CA.

**Judges:** PHYLLIS J. HAMILTON, United States District Judge.

**Opinion by:** PHYLLIS J. HAMILTON

## Opinion

**ORDER**

Before the court is the motion of defendant MD247.com, Inc. ("MD247.com") for an order staying the above-entitled action. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion.

Defendant argues that this action should be stayed on primary jurisdiction grounds, because the FCC has undertaken consideration of a threshold issue raised by plaintiff's complaint, and that the court should defer any ruling on the issues until such time as the FCC has exercised its expertise in

deciding those issues.

The primary jurisdiction doctrine is "a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decision-making responsibility should be performed by the relevant agency rather than the courts." Davel Commc'ns, Inc. v. Qwest Corp., 460 F.3d 1075, 1080, 1086 (9th Cir. 2006); see also Syntek Semiconductor Co., Ltd. v. Microchip Tech., Inc., 307 F.3d 775, 780 (9th Cir. 2002).

The doctrine is applicable whenever the enforcement of a claim subject to a **[*3]** specific regulatory scheme requires resolution of issues that are within the special competence of an administrative body. See Davel Commc'ns, 460 F.3d at 1086. The doctrine is furthermore appropriate where conduct is alleged which is "at least arguably protected or prohibited by a regulatory statute," and agency resolution of an issue "is likely to be a material aid to any judicial resolution." See, e.g., GTE.Net LLC v. Cox Commc'ns, Inc., 185 F. Supp. 2d 1141, 1144 (S.D. Cal. 2002) (granting motion to stay on primary jurisdiction grounds).

While no fixed formula exists for applying the doctrine, the Ninth Circuit traditionally looks to four factors that must be satisfied for the doctrine to apply: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration. See Davel, 460 F.3d at 1087; United States v. Gen. Dynamics Corp., 828 F.2d 1356, 1362 (9th Cir. 1987); see also Clark v. Time Warner Cable, 523 F.3d 1110, 1115-16 (9th Cir. 2008).

On **[*4]** balance, these factors are satisfied here. Plaintiff has alleged that defendants MD247.com, UnitedHealth Group Incorporated, Optum, Inc., and HealthAllies, Inc. violated the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, et seq. ("the TCPA") by initiating calls to plaintiff's cellular telephone without her prior express consent using an automatic telephone dialing system ("ATDS"). Cplt ¶¶ 2-3. The TCPA and implementing regulations promulgated by the Federal Communications Commission ("FCC") define ATDS as "equipment which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers." See 47 U.S.C. § 227(a)(1); 47 C.F.R. § 64.1200(f)(2). See, e.g., Complaint ¶¶ 21-22.

MD247.com contends that at the time of the alleged calls, it did not utilize any capacity that its predictive dialer may have had to store or produce telephone numbers to be called using a random or sequential generator, and to dial such numbers. MD247.com asserts further that there has been considerable debate regarding what constitutes an ATDS, and of relevance to this action, whether the dialing equipment's present capacity is **[*5]** the determinative factor in classifying it as an ATDS, or whether the equipment's potential capacity with hardware and/or software alterations should be considered, regardless of whether the potential capacity is utilized at the time the calls are made.

The FCC is currently considering multiple petitions for a declaratory ruling that addresses this issue. See, e.g., FCC Items on Circulation, available at http://transition.fcc.gov/fcc-bin/circ_items.cgi (last visited Jan. 6, 2014). For example, on June 25, 2013, the FCC's Consumer and Governmental Affairs Bureau ("CGB") issued a public notice requesting comment on a petition for an expedited declaratory ruling by YouMail, Inc., seeking clarification that its sofware is not an ATDS because it does not have the current capacity to store, produce, or dial random or sequential numbers. On November 19, 2013, the CGB issued a public notice requesting comment on a petition for expedited declaratory ruling and/or rulemaking, from PACE, seeking a clarification that a dialing system is not an ATDS unless it has the capacity to dial numbers without human intervention. On December 2, 2013, the CGB issued a public notice requesting comment on a petition **[*6]** for expedited declaratory ruling filed by Glide Talk, Ltd., seeking clarification that the TCPA's restrictions on the use of autodialers to call wireless numbers applies only to equipment that

could at the time of the call, be used to store numbers or generate sequential or randomized telephone numbers.

As the issue raised by MD247 directly overlaps with the legal issues before the court by way of plaintiff's complaint, the court concludes that the FCC is in the process of utilizing its recognized expertise to consider issues pending before the court. As such, the prerequisites for application of the primary jurisdiction doctrine are satisfied, and allowing the FCC to resolve the foregoing issues prior to adjudicating the issue in the present action, in order to obtain the benefit of the FCC's guidance, is appropriate. See Davel Commc'ns, 460 F.3d at 1087. While the court is sensitive to plaintiff's concerns that allowing the FCC to rule upon the issues before the court will engender unfair delay, the court also notes that the September 10, 2013 correspondence between the then-acting head of the FCC and Congressional representatives (cited in MD247.com's papers) indicates that FCC anticipates **[*7]** resolving this issue relatively soon.

In these circumstances, and furthermore in view of the relatively early stage of the present action, the court finds that the benefit to be provided by FCC guidance on potentially dispositive issues in this litigation outweighs the benefit to plaintiff in allowing the action to proceed. As a result, the court accordingly GRANTS defendants' request to STAY the current action, pending the FCC's resolution of related issues.

No later than six months from the date of this order, the parties shall file a status statement with the court, advising as to the FCC's progress on resolving these issues.

**IT IS SO ORDERED.**

Dated: January 6, 2014

/s/ Phyllis J. Hamilton

PHYLLIS J. HAMILTON

United States District Judge

---

End of Document


Caution
As of: January 6, 2021 9:15 PM Z

# Monaghan v. Sebelius

United States District Court for the Eastern District of Michigan, Southern Division

June 26, 2013, Argued; June 26, 2013, Decided; June 26, 2013, Filed

Case No. 12-15488

**Reporter**
2013 U.S. Dist. LEXIS 89585 *; 2013 WL 3212597

THOMAS MONAGHAN, and DOMINO'S FARMS CORP., Plaintiffs, v. KATHLEEN SEBELIUS, et al, Defendants.

**Prior History:** Monaghan v. Sebelius, 931 F. Supp. 2d 794, 2013 U.S. Dist. LEXIS 35144 ( E.D. Mich., Mar. 14, 2013)

**Counsel:** **[*1]** For Domino's Farms Corporation, Thomas Monaghan, Plaintiffs: Erin E. Mersino, Ann Arbor, MI.

For Kathleen Sebelius, United States Department of Health and Human Services, Secretary of Labor Hilda L Solis, United States Department of Labor, Timothy Geithner, United States Department of Treasury, Defendants: Bradley P. Humphreys, U.S. Department of Justice, Civil Division, Federal Programs Branch, Washington, DC.

**Judges:** PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF, UNITED STATES DISTRICT JUDGE.

**Opinion by:** LAWRENCE P. ZATKOFF

## Opinion

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse, in the City of Port Huron, State of Michigan, on June 26, 2013.

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF UNITED STATES DISTRICT JUDGE

This matter is before the Court on Defendants' Motion to Stay Proceedings [dkt 43], which seeks to stay this case pending the Sixth Circuit Court of Appeals' decision in two related cases— *Autocam Corporation v. Sebelius*, No. 12-2673, and *Weingartz Supply Company v. Sebelius*, No. 13-1093. The parties have fully briefed the motion. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly **[*2]** aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the Motion be resolved on the briefs submitted, without oral argument. For the following reasons, Defendants' Motion is GRANTED.

### I. LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel,

and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936). A court considering a motion to stay should weigh the following factors: "[1] the potentiality of another case having a dispositive effect on the case to be stayed, [2] the judicial economy to be saved by waiting on a dispositive decision, [3] the public welfare, and [4] the hardship/prejudice to the party opposing the stay, given its duration." *Michael v. Ghee*, 325 F.Supp.2d 829, 831 (2004) (citing *Landis*, 299 U.S. at 255).

## II. ANALYSIS

Defendants argue that the Court should stay the proceedings here pending the Sixth Circuit's decision in *Autocam Corporation v. Sebelius*, No. 12-2673, 2012 U.S. App. LEXIS 26736 (6th Cir.), or *Weingartz Supply Company v. Sebelius*, No. 13-1093 (6th Cir.), **[*3]** whichever occurs first. *Weingartz* and *Autocam* reached differing results on the preliminary injunction issue, with the Eastern District of Michigan granting an injunction in *Weingartz*, and the Western District of Michigan denying the injunction in *Autocam.*

Plaintiffs argue that *Autocam* is not controlling because the Court previously found the facts in that case distinguishable from those in this case. Plaintiffs also argue that if the Sixth Circuit decides *Weingartz* before *Autocam*, that decision will do nothing to negate the unique factual circumstances of this case. Although these potential differences may give rise to different resolutions on the merits in *Weingartz* and *Autocam*, the factual circumstances and central legal issues in both cases are substantially similar to those in this case. The cases involve similar issues—namely plaintiffs from for-profit, secular corporations challenging the validity and constitutionality of the Preventive Services Mandate of the Affordable Care Act. In each case, the plaintiff represents a for-profit, secular company seeking not to comply on the grounds that to do otherwise would burden the religious beliefs of the company's owners. As in this case, **[*4]** the plaintiffs in *Weingartz* and *Autocam* do not qualify for any type of religious or other exemption from the Mandate. As such, the Court finds *Weingartz* and *Autocam* to be substantially similar to this case and that the Sixth Circuit's decision in either one will likely provide guidance in the Court's decisions in this case and narrow the issues the Court must resolve.

Given this, it would be at odds with the notion of judicial economy for this Court to proceed in this case and risk reaching an ultimate resolution that is inconsistent with precedent the Sixth Circuit creates shortly thereafter. The Court, therefore, will await the binding guidance of the Sixth Circuit's resolution of *Weingartz* or *Autocam.*

Last, Plaintiffs do not demonstrate any prejudice or hardship requiring the Court to deny Defendants' Motion to Stay. The status quo established through the Court's December 31, 2012, Order granting Plaintiffs' Motion for Temporary Restraining Order will remain in effect during the pendency of this case. *See* Dkt. 39 at 20. And, as noted, waiting for additional guidance from the Sixth Circuit promotes judicial economy and efficiency. Therefore, staying this case does not create an undue **[*5]** hardship on Plaintiffs.

Accordingly, IT IS HEREBY ORDERED that Defendants' Motion to Stay Proceedings [dkt 43] is GRANTED.

IT IS FURTHER ORDERED that this proceeding is stayed pending the Sixth Circuit's decision in *Autocam* or *Weingartz*, after which this proceeding shall resume upon motion by either party.

IT IS SO ORDERED.

/s/ Lawrence P. Zatkoff

LAWRENCE P. ZATKOFF

UNITED STATES DISTRICT JUDGE

Dated: June 26, 2013

---

End of Document


Neutral
As of: January 6, 2021 9:24 PM Z

# Neal v. Wal-Mart Stores, Inc.

United States District Court for the Western District of North Carolina, Charlotte Division

May 18, 2020, Decided; May 19, 2020, Filed

CIVIL ACTION NO. 3:17-CV-022-KDB-DCK

**Reporter**
2020 U.S. Dist. LEXIS 88203 *

CURTIS NEAL, on behalf of himself and others similarly situated, Plaintiff, v. WAL-MART STORES, INC., d/b/a WALMART, and SYNCHRONY BANK, f/k/a SYNCHRONY RETAIL BANK, Defendants.ROY CAMPBELL, on behalf of himself and all others similarly situated, Plaintiff, v. SYNCHRONY BANK, Defendant.

**Prior History:** Neal v. Wal-Mart Stores, Inc., 2019 U.S. Dist. LEXIS 124694 (W.D.N.C., July 25, 2019)

**Counsel:** **[*1]** For Curtis Neal, on behalf of himself and others similarly situated, Plaintiff: Aaron David Radbil, LEAD ATTORNEY, PRO HAC VICE, Greenwald Davidson Radbil PLLC, Austin, TX; Adrienne D. McEntee, LEAD ATTORNEY, Terrell Marshall Law Group PLLC, Seattle, WA; Wesley Steven White, Law Offices of Wesley S. White, Charlotte, NC.

For Barbara Mott, Case No. 3:18cv221, Consol Plaintiff: Aaron David Radbil, LEAD ATTORNEY, PRO HAC VICE, Greenwald Davidson Radbil PLLC, Austin, TX; Adrienne D. McEntee, Beth Ellen Terrell, LEAD ATTORNEYS, PRO HAC VICE, Terrell Marshall Law Group PLLC, Seattle, WA; Robert W. Murphy, LEAD ATTORNEY, PRO HAC VICE, Law Office of Robert W. Murphy, Fort Lauderdale, FL; Wesley Steven White, LEAD ATTORNEY, Law Offices of Wesley S. White, Charlotte, NC.

For Roy Campbell, Case No. 3:18cv501, Consol Plaintiff: Ruth M. Allen, LEAD ATTORNEY, Ruth Allen Law, PLLC, Raleigh, NC; Sergei Lemberg, Stephen F. Taylor, LEAD ATTORNEYS, PRO HAC VICE, Lemberg Law, LLC, Wilton, CT.

For Wal-Mart Stores, Inc., doing business as Walmart, Synchrony Bank, Defendants: Julia B. Strickland, Julieta Stepanyan, LEAD ATTORNEYS, PRO HAC VICE, Stroock & Stroock & Lavan LLP, Los Angeles, CA; Michael D DeFrank, **[*2]** LEAD ATTORNEY, Samuel Allen Slater, Wyrick Robbins Yates & Ponton LLP, Raleigh, NC.

**Judges:** David C. Keesler, United States Magistrate Judge.

**Opinion by:** David C. Keesler

## Opinion

**ORDER**

**THIS MATTER IS BEFORE THE COURT** on the "Motion Of Defendant Synchrony Bank To Stay Proceedings" (Document No. 71) filed February 26, 2020 and the "Motion Of Defendant Synchrony Bank For Leave To File Surreply In Support Of Its Opposition To Plaintiffs' Motion To Compel"

(Document No. 87) filed on April 10, 2020. These motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and are ripe for disposition. Having carefully considered the motions, the record, and applicable authority, the undersigned will grant the motions.

The "Motion Of Defendant Synchrony Bank To Stay Proceedings" (Document No. 71) and "...Memorandum Of Law In Support..." (Document No. 71-1) were filed on February 26, 2020. Defendant Synchrony Bank ("Defendant") moves to stay proceedings before this Court pending rulings by the United States Supreme Court in Barr v. American Association of Political Consultants Inc. (No. 19-631) and Facebook, Inc. v. Duguid (No. 19-511). (Document No. 71, p. 2). Defendant contends that Barr "has the potential to moot **[*3]** this action altogether." Id. Even if the Supreme Court upholds the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") in Barr, Defendant asserts the Court "will likely act soon after on the pending certiorari petition in Facebook to resolve the significant circuit split on what constitutes an 'automatic telephone dialing system' ("ATDS") under the TCPA — a pivotal issue in this case." Id. Defendant contends that a stay will promote efficiency and will not prejudice Plaintiffs. (Document No. 71, p. 2).

Defendant provides the following instructive legal authority:

> A trial court has broad discretion to stay all proceedings in an action pending resolution of independent proceedings elsewhere. *See Landis*, 299 U.S. at 254. This discretion is "incident to [a district court's] power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706-07, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997); *see also Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6, 118 S. Ct. 1761, 140 L. Ed. 2d 1070 (1998) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.") (quotation marks omitted). Moreover, a "district court ordinarily has discretion to delay proceedings when a higher court will issue a decision that may affect the outcome of the pending case." **[*4]** *White v. Ally Financial Inc.*, 969 F. Supp. 2d 451, 461-62 (S.D.W. Va. 2013); *see also Hickey v. Baxter*, 833 F.2d 1005 (4th Cir. 1987) (affirming "district court acted within its discretion in staying proceedings while awaiting guidance from the Supreme Court in a case that could decide relevant issues").
>
> In deciding whether to grant a stay, federal courts generally consider the following: "(1) interest of plaintiff in proceeding expeditiously balanced against prejudice to plaintiff caused by delay, (2) burden on defendant, (3) convenience to the court, (4) interests of persons not party to the litigation and (5) the public interest." *Suntrust Mortg., Inc. v. Busby*, No. 2:09CV10, 2009 U.S. Dist. LEXIS 122251, 2009 WL 4801347, at *7 (W.D.N.C., Dec. 7, 2009) (citing *In re Mid-Atlantic Toyota Antitrust Lit.*, 92 F.R.D. 358, 359 (D.Md. 1981)). Importantly, the "parties and claims need not be identical in order for one action to be stayed or dismissed in deference to an earlier action." *Landis*, 299 U.S. at 254.

(Document No. 71-1, pp. 11-12).

"Plaintiffs' Memorandum Of Law In Opposition To Defendant's Motion To Stay Proceedings" (Document No. 77) was filed on March 11, 2020. Plaintiffs argue that the likelihood the Supreme Court could strike down the TCPA is "extremely remote." (Document No. 77, pp. 5-6) (citations omitted). Plaintiffs further argue that the Supreme Court has not even granted the petition for writ of certiorari in Facebook, and that "the Supreme Court may never address **[*5]** the ATDS definition." (Document No. 77, p. 6).

Defendant has also filed a "Reply..." (Document No. 80) brief and Notices Of Supplemental Authority" (Document Nos. 94 and 103).

The undersigned acknowledges that this case has already been subject to significant delays, and that the Supreme Court's pending decision(s) *may* have little, if any, impact on this case; nevertheless, the undersigned is persuaded that the stay should be allowed. A decision in Barr is expected in a matter

of weeks, and the undersigned finds that any inconvenience or prejudice caused by waiting for a ruling in Barr is outweighed by the possibility that the outcome of that case might have an impact here. However, this Court is unlikely to stay this matter indefinitely, and at this time will decline to stay this case pending a decision in Facebook. Once the Supreme Court decides Barr, the parties will be expected to file a Status Report and this Court will determine how to proceed.

Also, pending is the "Motion Of Defendant Synchrony Bank For Leave To File Surreply In Support Of Its Opposition To Plaintiffs' Motion To Compel" (Document No. 87). Although this motion was not consented to, it does not appear that Plaintiffs **[*6]** have filed any opposition. The undersigned will grant the motion and accept "Defendant Synchrony Bank's Surreply In Support Of Its Opposition To Plaintiff's Motion To Compel" (Document No. 99); See also (Document Nos. 87-2, 87-3).

**IT IS, THEREFORE, ORDERED** that the "Motion Of Defendant Synchrony Bank To Stay Proceedings" (Document No. 71) is **GRANTED**. This matter is **STAYED** until otherwise ordered by the Court.

**IT IS FURTHER ORDERED** that the parties shall confer and file a Status Report, jointly if possible, within **fourteen (14) days** of the United States Supreme Court's decision in Barr v. American Association of Political Consultants Inc. (No. 19-631).

**IT IS FURTHER ORDERED** that the "Motion Of Defendant Synchrony Bank For Leave To File Surreply In Support Of Its Opposition To Plaintiffs' Motion To Compel" (Document No. 87) is **GRANTED**.

Signed: May 18, 2020

/s/ David C. Keesler

David C. Keesler

United States Magistrate Judge

End of Document



As of: January 6, 2021 9:11 PM Z

# NFC Tech. LLC v. HTC Am., Inc.

United States District Court for the Eastern District of Texas, Marshall Division

March 11, 2015, Decided; March 11, 2015, Filed

Case No. 2:13-CV-1058-WCB

**Reporter**
2015 U.S. Dist. LEXIS 29573 *; 2015 WL 1069111

NFC TECHNOLOGY LLC, Plaintiff, v. HTC AMERICA, INC., ET AL., Defendants.

**Prior History:** NFC Tech., LLC v. HTC Am., 2014 U.S. Dist. LEXIS 105230 (E.D. Tex., Aug. 1, 2014)

## Case Summary

**Overview**
HOLDINGS: [1]-Although the inherent delay of patent litigation from a stay pending administrative inter partes review of patent claims was somewhat prejudicial and the litigation had progressed for over a year, a stay was warranted since petitions for review were granted and the outcome of the review was substantially likely to simplify or even obviate the need for further litigation.

**Outcome**
Motion to stay granted.

## LexisNexis® Headnotes

Civil Procedure > Judicial Officers > Judges > Discretionary Powers

Patent Law > US Patent & Trademark Office Proceedings > General Overview

***HN1***[ ] **Judges, Discretionary Powers**

A district court has the inherent power to control its own docket, including the power to stay proceedings before it. In particular, the question whether to stay proceedings pending inter partes review of a patent is a matter committed to the district court's discretion. A stay is particularly justified when the outcome of a Patent and Trademark Office proceeding is likely to assist the court in determining patent validity or eliminate the need to try infringement issues.

Civil Procedure > Judicial Officers > Judges > Discretionary Powers

Patent Law > US Patent & Trademark Office Proceedings > General Overview

***HN2***[ ] **Judges, Discretionary Powers**

District courts typically consider three factors when determining whether to grant a stay pending inter partes review of a patent in suit: (1) whether the stay will unduly prejudice the nonmoving party; (2) whether the proceedings before the court have reached an advanced stage, including whether discovery is complete and a trial date has been set; and (3) whether the stay will likely result in simplifying the case before the court. Based on

those factors, courts determine whether the benefits of a stay outweigh the inherent costs of postponing resolution of the litigation.

Civil Procedure > Judicial Officers > Judges > Discretionary Powers

Patent Law > US Patent & Trademark Office Proceedings > General Overview

***HN3***[] **Judges, Discretionary Powers**

Any delay in the vindication of patent rights by a stay pending inter partes review of patent claims is prejudicial to a patent owner. To be sure, that interest is entitled to weight. However, that factor is present in every case in which a patentee resists a stay, and it is therefore not sufficient, standing alone, to defeat a stay motion.

Patent Law > US Patent & Trademark Office Proceedings > General Overview

***HN4***[] **Patent Law, US Patent & Trademark Office Proceedings**

If inter partes proceedings before the Patent Trial and Appeal Board result in confirmation of the patent claims being asserted in court, the defendant is estopped from challenging the validity of the claims on any ground that was, or could reasonably have been, asserted in the inter partes proceeding. 35 U.S.C.S. § 315(e)(2). On the other hand, if the proceedings result in cancelation of some or all of the asserted claims, either some portion of the litigation will fall away, or the litigation will come to an end altogether.

**Counsel: [*1]** David Folsom, Mediator, Pro se, Texarkana, TX USA.

For Nfc Technology, Llc, Plaintiff Benjamin Levi, Brandon M Jordan, Robert A Auchter, McKool Smith PC - D.C., Washington, DC USA; Jennifer Leigh Truelove, McKool Smith - Marshall, Marshall, TX USA; Laura A Handley, McKool Smith PC - NY, New York, NY USA; Samuel Franklin Baxter, McKool Smith - Marshall, Marshall, TX USA.

For Htc America, Inc., Defendant: Jerry Robin Selinger, LEAD ATTORNEY, Patterson & Sheridan LLP - Dallas, Dallas, TX USA; Matthew C Bernstein, LEAD ATTORNEY, Miguel J Bombach, Ryan B Hawkins, Thomas N Millikan, Perkins Coie LLP - San Diego, San Diego, CA USA; Jennifer Parker Ainsworth, Wilson Robertson & Cornelius PC, Tyler, TX USA.

For Lg Electronics USA, Inc., Lg Electronics Mobilecomm U.S.A., Inc. D/B/A LG Mobile Phones, Defendants: Michael J McKeon, LEAD ATTORNEY, Christian A Chu, Scott A Elengold, Fish & Richardson PC - Washington DC, Washington, DC USA; Jane J Du, Fish & Richardson PC - Dallas, Dallas, TX USA; Melissa Richards Smith, Gillam & Smith, LLP, Marshall, TX USA.

For Htc Corporation, Defendant: Matthew C Bernstein, LEAD ATTORNEY, Miguel J Bombach, Ryan B Hawkins, Thomas N Millikan, Perkins Coie LLP - San Diego, **[*2]** San Diego, CA USA; Jennifer Parker Ainsworth, Wilson Robertson & Cornelius PC, Tyler, TX USA.

For Lg Electronics Mobilecomm U.S.A., Inc. D/B/A LG Mobile Phones, Counter Claimant Michael J McKeon, LEAD ATTORNEY, Fish & Richardson PC - Washington DC, Washington, DC USA; Melissa Richards Smith, Gillam & Smith, LLP, Marshall, TX USA.

For Lg Electronics USA, Inc., Counter Claimant: Michael J McKeon, LEAD ATTORNEY, Fish & Richardson PC - Washington DC, Washington, DC USA; Melissa Richards Smith, Gillam & Smith, LLP, Marshall, TX USA.

For Nfc Technology, Llc, Counter Defendant: Benjamin Levi, Robert A Auchter, McKool Smith

PC - D.C., Washington, DC USA; Samuel Franklin Baxter, McKool Smith - Marshall, Marshall, TX USA.

For Lg Electronics USA, Inc., Counter Claimant: Michael J McKeon, LEAD ATTORNEY, Christian A Chu, Scott A Elengold, Fish & Richardson PC - Washington DC, Washington, DC USA; Melissa Richards Smith, Gillam & Smith, LLP, Marshall, TX USA.

**Judges:** WILLIAM C. BRYSON, UNITED STATES CIRCUIT JUDGE.

**Opinion by:** WILLIAM C. BRYSON

## Opinion

**MEMORANDUM OPINON AND ORDER**

Before the Court is a motion to stay proceedings in the district court filed by defendants HTC America, Inc., and HTC Corporation. Dkt. No. 145. The motion **[*3]** is GRANTED, and this case will be stayed pending the completion of the inter partes review proceeding before the Patent Trial and Appeal Board ("PTAB").

**BACKGROUND**

Plaintiff NFC Technology LLC ("NFCT") filed this action against HTC America, Inc., on December 5, 2013. HTC Corporation was added as a defendant in an amended complaint filed on April 10, 2014. The two defendants are collectively referred to here as HTC. The amended complaint alleged that HTC infringed two patents owned by NFC: U.S. Patent No. 6,700,551 ("the '551 patent") and U.S. Patent No. 7,665,664 ("the '664 patent").

On July 23 and 24, 2014, HTC filed two petitions with the PTAB requesting that the PTAB conduct an inter partes review of each asserted claim of the '551 patent and the '664 patent. NFCT subsequently asserted additional claims of the '664 patent in the litigation against HTC (claims 14, 15, and 19), after which HTC filed a third petition with the PTAB on December 6, 2014, seeking review of those claims in addition to the claims previously identified in the earlier petitions for review.

On February 4, 2015, the PTAB granted HTC's first two petitions for inter partes review. A week later, HTC filed the present motion seeking a stay pending the conclusion of the inter partes review proceedings before the PTAB. NFCT opposes the motion. **[*4]** The parties have briefed the motion to stay, which was orally argued before the Court on March 3, 2015.

**DISCUSSION**

***HN1***[] A district court has the inherent power to control its own docket, including the power to stay proceedings before it. See Clinton v. Jones, 520 U.S. 681, 706, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."). How to best manage the court's docket "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." Landis v. N. Am. Co., 299 U.S. 248, 254-55, 57 S. Ct. 163, 81 L. Ed. 153 (1936); Gonzalez v. Infostream Grp., Inc., No. 2:14-cv-906 (E.D. Tex. Mar. 2, 2015). In particular, the question whether to stay proceedings pending inter partes review of a patent is a matter committed to the district court's discretion. See Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (request for stay pending inter partes reexamination). A stay is particularly justified when "the outcome of a PTO proceeding is likely to assist the court in determining patent validity or eliminate the need to try infringement issues." Evolutionary Intelligence, LLC v. Millennial Media, Inc., No. 5:13-cv-4206, 2014 U.S. Dist. LEXIS 81090, 2014 WL 2738501, at *2 (N.D. Cal. June 11, 2014); see also 3rd Eye Surveillance, LLC v. Stealth Monitoring, Inc., No. 6:14-cv-162,

2015 U.S. Dist. LEXIS 4213, 2015 WL 179000, at *1 (E.D. Tex. Jan. 14, 2015); Surfast, Inc. v. Microsoft Corp., No. 2:12-cv-333, 2014 U.S. Dist. LEXIS 160062, 2014 WL 6388489, at *2 (D. Me. Nov. 14, 2014); Norman IP Holdings, LLC v. TP-Link Techs. Co., No. 6:13-cv-384, 2014 U.S. Dist. LEXIS 143426, 2014 WL 5035718, at *2 (E.D. Tex. Oct. 8, 2014); **[*5]** Air Vent, Inc. v. Owens Corning Corp., No. 2:10-cv-1699, 2012 U.S. Dist. LEXIS 64294, 2012 WL 1607145, at *3 (W.D. Pa. May 8, 2012); Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983).

***HN2***[] District courts typically consider three factors when determining whether to grant a stay pending inter partes review of a patent in suit: (1) whether the stay will unduly prejudice the nonmoving party, (2) whether the proceedings before the court have reached an advanced stage, including whether discovery is complete and a trial date has been set, and (3) whether the stay will likely result in simplifying the case before the court. See Lennon Image Techs., LLC v. Macy's Retail Holdings, Inc., No. 2:13-cv-235, 2014 U.S. Dist. LEXIS 130645, 2014 WL 4652117, at *2 (E.D. Tex. Sept. 17, 2014); Market-Alerts Pty. Ltd. v. Bloomberg Fin. L.P., 922 F. Supp. 2d 486, 489 (D. Del. 2013); Soverain Software LLC v. Amazon.com, Inc., 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005). Based on those factors, courts determine whether the benefits of a stay outweigh the inherent costs of postponing resolution of the litigation. EchoStar Techs. Corp. v. TiVo, Inc., No. 5:05-cv-81, 2006 U.S. Dist. LEXIS 48431, 2006 WL 2501494 (E.D. Tex. July 14, 2006).

Those three factors largely overlap with the four factors that Congress has expressly set forth as governing the question whether a stay should be granted pending covered business method ("CBM") review proceedings before the PTAB. Those four factors are:

> (A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;
>
> (B) whether discovery **[*6]** is complete and whether a trial date has been set;
> (C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and
> (D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 18(b)(1), 125 Stat. 284, 331 (2011) ("the AIA"). Congress's addition of a fourth factor requiring an inquiry into whether a stay will reduce the burden of litigation on the parties and on the court indicates that special attention should be given to minimizing the burdens of litigation. While that factor has been noted as the basis for a distinction between the standard for stay motions in CBM review proceedings and stay motions in inter partes review proceedings, see Progressive Cas. Ins. Co. v. Safeco Ins. Co., No. 1:10-cv-1370, 2013 U.S. Dist. LEXIS 54899, 2013 WL 1662952, at *2 (N.D. Ohio Apr. 17, 2013), courts considering stay applications in the inter partes review setting have been attentive to that concern as well, see, e.g., Market-Alerts Pty. Ltd. v. Bloomberg Finance L.P., 922 F. Supp. 2d 486, 489 (D. Del. 2013); Ultratec, Inc. v. Sorenson Commc'ns, Inc., No. 13-cv-346, 2013 U.S. Dist. LEXIS 162459, 2013 WL 6044407 (W.D. Wis. Nov. 13, 2013). The Court now turns to an analysis of each of the factors bearing on whether to grant a stay of the district court proceedings pending the resolution of HTC's petitions **[*7]** for inter partes review.

**1. Prejudice**

NFCT argues that the delay inherent in granting a stay would lead to undue prejudice. It makes no specific allegations of prejudice other than to claim that ***HN3***[] any delay in the vindication of patent rights is prejudicial to a patent owner. To be sure, that interest is entitled to weight. See Network-1 Sec. Solutions, Inc. v. Alcatel-Lucent USA Inc., No. 6:11-cv-492, at 9, 2015 U.S. Dist. LEXIS 31452 (E.D. Tex. Jan. 5, 2015); Lennon Image Techs., LLC v. Macy's Retail Holdings, Inc., No. 2-13-cv-235, 2014 U.S. Dist. LEXIS 130645, 2014 WL 4652117, at *2 (E.D. Tex. Sept. 17, 2014); ThinkOptics, Inc. v. Nintendo of Am., Inc., No. 6:11-cv-455, 2014 U.S. Dist. LEXIS 128450, 2014

WL 4477400, at *1 (E.D. Tex. Feb. 27, 2014); Unifi Sci. Batteries, LLC v. Sony Mobile Commc'ns AB, No. 6:12-cv-224, 2014 U.S. Dist. LEXIS 129388, 2014 WL 4494479, at *2 (E.D. Tex. Jan. 14, 2014); Voltstar Techs., Inc. v. Superior Commc'ns, Inc., No. 2:12-cv-82, 2013 U.S. Dist. LEXIS 119190, 2013 WL 4511290, at *2 (E.D. Tex. Aug. 22, 2013). However, that factor is present in every case in which a patentee resists a stay, and it is therefore not sufficient, standing alone, to defeat a stay motion. See E-Watch, Inc. v. Lorex Canada, Inc., No. H-12-331, 2013 U.S. Dist. LEXIS 138198, 2013 WL 5425298, at *2 (S.D. Tex. Sept. 26, 2013); Semiconductor Energy Lab. Co. v. Chimei Innolux Corp., No. SACV 12-21, 2012 U.S. Dist. LEXIS 186322, 2012 WL 7170593, at *3 (C.D. Cal. Dec. 19, 2012); TierraVision, Inc. v. Google, Inc., No. 11-cv-2170, 2012 U.S. Dist. LEXIS 21463, 2012 WL 559993, at *3 (S.D. Cal. Feb. 21, 2012).

NFCT does not dispute HTC's contention that it does not compete with HTC and that monetary relief will be sufficient to compensate it for any injury **[*8]** to its patent rights. NFCT's only other claim of prejudice is its conclusory claim that it "would be tactically disadvantaged because, during [the stay] period, memories will fade and discovery may likely be lost." Dkt. No. 149, at 11. That generalized claim of injury is entitled to little weight, however, as NFCT has not made any showing as to particular evidence or discovery that is at risk of being lost. A blanket statement that evidence may become stale or be lost does not amount to a compelling showing of prejudice.

Finally, NFCT contends that "it would be unduly prejudiced and tactically disadvantaged by a stay because of HTC's dilatory motive." Dkt. No. 149, at 12; see also id. at 13-15 (contending that HTC has "unclean hands" based on HTC's conduct by making "speaking objections" and raising improper claims of privilege during a series of depositions during the week of February 9-12, 2015). NFCT's claim of dilatory behavior appears to be based principally on HTC's motion to transfer this case to the Southern District of California (subsequently amended to seek transfer to the Northern District of California). There is nothing unusual about filing a motion to transfer, and NFCT has pointed **[*9]** to nothing about the filing of the transfer motion in this case that would affect HTC's entitlement to a stay. NFCT also complains, without elaboration, about HTC's motion to stay this action in light of a declaratory judgment action brought be a third party, a motion that was denied. The Court sees nothing facially improper in the filing of that motion, and NFCT's brief offers nothing of substance that would lead the Court to conclude that the motion was inappropriate or that the stay should be denied because of the filing of that motion. Nor does the Court discern anything in the allegations regarding HTC's conduct during the February 9-12 depositions that should have any effect on the Court's decision on the stay motion. The Court therefore concludes that the prejudice factor cuts slightly against a stay, but no more than would typically be the case when a plaintiff is faced with the prospect of a delay in obtaining monetary relief on its claims.

### 2. The State of the Proceedings

This action was instituted more than a year ago. By the time the motion to stay was filed, the parties had engaged in significant discovery, and claim construction briefing was complete. However, fact discovery **[*10]** does not close for another month, and significant pretrial discovery, filings, motions, and other events remain to be completed before the scheduled trial date of September 8, 2015. Clearly, the case is not "in its infancy"; it is far enough along that a stay would interfere with ongoing proceedings. On the other hand, it appears likely that the bulk of the expenses that the parties would incur in pretrial work and trial preparation are still in the future. Thus, denying a stay because of the progress of the case to this point would impose significant expenses on the parties that might be avoided if the stay results in the simplification (or obviation) of further court proceedings.

Another consideration that bears on this factor is whether the defendant acted with reasonable dispatch in filing its petitions for inter partes review and then, after the petitions were granted, in filing its motion for a stay. The petitions for inter partes

review were filed seven and one-half months after the action was brought, and four months after NFCT filed its infringement contentions. The motion for a stay was filed very promptly after the PTAB instituted the inter partes review.

Given the complexity **[*11]** entailed in seeking inter partes review, a delay of seven and one-half months from the filing of the complaint is not unreasonable. That is particularly true in light of the fact that the petitions were filed only four months after NFCT served its infringement contentions on HTC. See Destination Maternity Corp. v. Target Corp., 12 F. Supp. 3d 762, 766-68 (E.D. Pa. 2014) (petition for inter partes review filed less than four months after infringement contentions was reasonably timely); Software Rights Archive, LLC v. Facebook, Inc., No. 12-3970, 2013 U.S. Dist. LEXIS 133707, 2013 WL 5225522, at *6 (N.D. Cal. Sept. 17, 2013) (petition filed just over four months after identification of asserted claims was reasonable); Semiconductor Energy Lab. Co. v. Chimei Innolux Corp., No. SACV 12-21, 2012 U.S. Dist. LEXIS 186322, 2012 WL 7170593, at *3 (C.D. Cal. Dec. 19, 2012) (3-4 month delay in filing petition after infringement contentions is reasonable). To be sure, if the petitions had been filed several months earlier, the PTAB's decision on the petitions would have come early enough that the stay motion could have been decided at a time that would have saved the parties some discovery expenses and much of the expense associated with the claim construction proceeding. Nonetheless, the Court does not regard HTC's conduct in this regard as dilatory, and will not weigh the delay in filing the petitions for inter partes review against HTC. In sum, the state of the proceedings is neutral or, at **[*12]** most, cuts slightly against the issuance of a stay.

### 3. Simplification of the Issues

In the Court's view, the most important factor bearing on whether to grant a stay in this case is the prospect that the inter partes review proceeding will result in simplification of the issues before the Court. Congress's purpose in creating an inter partes review procedure was to allow the administrative agency that issues patents to consider new information bearing on whether those patents should be canceled or confirmed. Giving the agency the authority to consider the validity of patents in the inter partes review process was designed in large measure to simplify proceedings before the courts and to give the courts the benefit of the expert agency's full and focused consideration of the effect of prior art on patents being asserted in litigation.

The benefits of the reexamination process for cases in litigation have been described in a way that applies equally to inter partes review:

> 1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.
> 2. Many discovery problems relating to prior art can be alleviated by the PTO examination.
>
> 3. In those cases **[*13]** resulting in effective invalidity of the patent, the suit will likely be dismissed.
> 4. The outcome of the reexamination may encourage a settlement without the further use of the Court.
> 5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.
> 6. Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.
>
> 7. The cost will likely be reduced both for the parties and the Court.

Fisher Controls Co. v. Control Components, Inc., 443 F. Supp. 581, 583 (S.D. Iowa 1977), quoted with approval in Premier Int'l Assocs. LLC v. Hewlett-Packard Co., 554 F. Supp. 2d 717, 720 (E.D. Tex. 2008).

In this case, the likelihood of some or all of those benefits flowing from inter partes review is high. ***HN4***[] If the proceedings before the PTAB result in confirmation of the patent claims being asserted in court, the defendant will be estopped from challenging the validity of the claims on any ground that was, or could reasonably have been, asserted in the inter partes proceeding. 35 U.S.C. §

315(e)(2). On the other hand, if the proceedings result in cancelation of some or all of the asserted claims, either some portion of the litigation will fall away, or the litigation will come to an end altogether.

While the PTAB's decision to institute inter partes review ordinarily means that there is a substantial **[*14]** likelihood of simplification of the district court litigation, that likelihood is far more speculative before the PTAB decides whether to institute inter partes review. For that reason, the grant of inter partes review has been treated as a highly significant factor in the courts' determination of whether to stay cases pending PTAB review. Thus, it is important to the Court's decision that in this case the PTAB has acted on two of the defendants' three petitions for inter partes review and in doing so has instituted inter partes review proceedings on most of the claims at issue in this case.

The Federal Circuit recently addressed the closely related question whether a stay should be granted pending "covered business methods" ("CBM") review after the PTAB has instituted review proceedings. See VirtualAgility, Inc. v. Salesforce.com, Inc., 759 F.3d 1307 (Fed. Cir. 2014). The circuit court in that case held that the district court erred in denying a stay after the PTAB had granted the defendants' petition for CBM review. The court stated that it was "not error for the district court to wait until the PTAB made its decision to institute CBM review before it ruled on the motion" to stay. Id. at 1315. The court added that "[w]hile a motion to stay could be granted even before the **[*15]** PTAB rules on a post-grant review petition, no doubt the case for a stay is stronger after post-grant review has been instituted." Id. at 1316.

The court in VirtualAgility held that the patentee, which could be adequately compensated through a damages remedy, could not make a showing of undue prejudice from a stay, and that the evidence did not indicate that a stay would give the defendants a clear tactical advantage. 759 F.3d at 1318-20. Moreover, the court found that the disposition of the review would streamline the proceedings before the district court and decrease the burden on the parties and the court, and that the case was not so far advanced at the time the stay motion was filed as to justify the denial of the requested stay. Id. at 1313, 1320. For those reasons, the court held that the district court should have entered a stay pending the PTAB's resolution of the CBM review proceeding.

NFCT argues that because VirtualAgility involved CBM review, not inter partes review, the Federal Circuit's analysis in VirtualAgility does not apply here. It is true that the stay provisions for CBM review are statutory, while the stay practice for inter partes has been developed by the courts. However, the standards for granting stay **[*16]** relief are generally similar. As noted above, the additional statutory factor applied in the CBM review context—whether a stay will reduce the burden of litigation on the parties and the court—is a consideration that courts often taken into account in determining whether to grant a stay pending inter partes review.

The overlap between the standards for granting a stay in those two contexts is not surprising, since both CBM review and inter partes review, like reexamination, are designed to promote the same policy goals. That is to give the Patent and Trademark Office ("the PTO"), the expert agency that issued the patents in suit, an opportunity to determine in the first instance whether the patents are valid in light of the cited prior art and to simplify district court infringement proceedings. See In re Etter, 756 F.2d 852, 857 (Fed. Cir. 1985) ("When the patent is concurrently involved in litigation [one function of reexamination] is to free the court from any need to consider prior art without the benefit of the PTO's initial consideration.").

NFCT is correct that Congress's inclusion of a stay provision in the CBM review section of the AIA clearly signaled a desire to make stay relief readily available in CBM review cases. Moreover, **[*17]** the legislative history of the AIA makes it apparent that Congress intended for district courts to be liberal in granting stays pending CBM review. As Senator Schumer observed regarding the CBM review provision, Congress intended to place "a very heavy thumb on the scale in favor of a stay being granted" once the PTAB instituted CBM

review proceedings. 157 Cong. Rec. S1363 (daily ed. Mar. 8, 2011) (statement of Sen. Chuck Schumer). But Congress's desire to enhance the role of the PTO and limit the burden of litigation on courts and parties was not limited to the CBM review context. The legislative history indicates that Congress recognized that the same underlying policy considerations that apply to CBM review apply to inter partes review as well. See H. Rep. No. 112-98, Part I, at 48 (2011) (statutory post-grant review procedures were designed to be "quick and cost effective alternatives to litigation"); 157 Cong. Rec. S952 (daily ed. Feb. 28, 2011) (inter partes review was intended to provide a "faster, less costly alternative[] to civil litigation to challenge patents) (statement of Sen. Chuck Grassley); id. at S5319 (daily ed. Sept. 6, 2011) (post-grant review of patents, including inter partes review, **[*18]** was meant to be "an inexpensive substitute for district court litigation" that "allows key issues to be addressed by experts in the field") (statement of Sen. Jon Kyl). In light of the parallel policies underlying the CBM and inter partes review proceedings, it is not surprising that courts have applied generally similar analysis to requests for stays in both settings.

In fact, since the circuit court's decision in VirtualAgility, courts have been nearly uniform in granting motions to stay proceedings in the trial court after the PTAB has instituted inter partes review proceedings. See Capella Photonics, Inc. v. Cisco Sys., Inc., No. C-14-3348, 2015 U.S. Dist. LEXIS 27953 (N.D. Cal. Mar. 6, 2015); Gentherm Can., Ltd. v. IGB Auto., Ltd., No. 13-11536, 2015 U.S. Dist. LEXIS 23180, 2015 WL 804657 (E.D. Mich. Feb. 26, 2015); Verinata Health, Inc. v. Ariosa Diagnostics, Inc., No. 12-cv-5501, 2015 U.S. Dist. LEXIS 12693, 2015 WL 435457 (N.D. Cal. Feb. 2, 2015); Service Solutions U.S., L.L.C. v. Autel.US Inc., No. 13-10534, 2015 U.S. Dist. LEXIS 9582, 2015 WL 401009 (E.D. Mich. Jan. 28, 2015); In re CTP Innovations, LLC, Patent Litig., MDL 14-MD-2581, 2015 U.S. Dist. LEXIS 8142, 2015 WL 317149 (D. Md. Jan. 23, 2015); Safe Storage LLC v. Dell Inc., Civil Action No. 12-1624 (D. Del. Jan. 22, 2015); Cutsforth, Inc. v. Westinghouse Air Brake Techs. Corp., Civil No. 12-1200, 2015 U.S. Dist. LEXIS 31453 (D. Minn. Jan. 15, 2015); CANVS Corp. v. United States, No. 10-540 C, 2014 U.S. Claims LEXIS 1550 (Fed. Cl. Dec. 19, 2014); Kaneka Corp. v. SKC Kolon PI, Inc., No. CV 11-3397, 2014 U.S. Dist. LEXIS 182809 (C.D. Cal. Dec. 5, 2014); Locata LBS LLC v. Paypal Inc., No. C 14-1864, 2014 U.S. Dist. LEXIS 182792 (N.D. Cal. Dec. 4, 2014); **[*19]** Surfcast, Inc. v. Microsoft Corp., No. 2:12-cv-333, 2014 U.S. Dist. LEXIS 160062, 2014 WL 6388489 (D. Me. Nov. 14, 2014); Norman IP Holdings, LLC v. Chrysler Group LLC, No. 6:13-cv-278, 2014 U.S. Dist. LEXIS 182788 (E.D. Tex. Oct. 8, 2014); Cypress Semiconductor Corp. v. GSI Tech., Inc., No. 13-cv-2013, 2014 U.S. Dist. LEXIS 142858, 2014 WL 5021100 (N.D. Cal. Oct. 7, 2014); Intellectual Ventures II LLC v. Suntrust Banks, Inc., No. 1:13-cv-2454, 2014 U.S. Dist. LEXIS 142295, 2014 WL 5019911 (N.D. Ga. Oct. 7, 2014); Evolutionary Intelligence, LLC v. Sprint Nextel Corp., No. C-13-4513, 2014 U.S. Dist. LEXIS 139066, 2014 WL 4802426 (N.D. Cal. Sept. 26, 2014); PersonalWeb Techs., LLC v. Google Inc., No. 5:13-cv-1317, 2014 U.S. Dist. LEXIS 116172, 2014 WL 4100743 (N.D. Cal. Aug. 20, 2014); Intellectual Ventures II LLC v. U.S. Bancorp, Civil No. 13-2071, 2014 U.S. Dist. LEXIS 153638, 2014 WL 5369386 (D. Minn. Aug. 7, 2014); Affinity Labs of Texas LLC v. Samsung Elecs. Co., No. 14-cv-2717, 2014 U.S. Dist. LEXIS 105850, 2014 WL 3845684 (N.D. Cal. Aug. 1, 2014); Depomed Inc. v. Purdue Pharma L.P., Civil Action No. 13-571, 2014 U.S. Dist. LEXIS 102109, 2014 WL 3729349 (D.N.J. July 25, 2014).[1]

---

[1] The post-VirtualAgility cases that have departed from that general approach have involved unusual facts. For example, in Drone Technologies, Inc. v. Parrot S.A., No. 14-cv-111, 2014 U.S. Dist. LEXIS 162117, 2014 WL 6607484 (W.D. Pa. Nov. 19, 2014), the court noted that the defendants had been guilty of "flagrant failure to permit this case to proceed through discovery" and had entered a default judgment against the defendants on the merits. Under those circumstances, the court saw no reason to further delay the proceedings before it. In SCVNGR, Inc. v. eCharge Licensing, LLC, Civil Action No. 13-12418, 2014 U.S. Dist. LEXIS 135408, 2014 WL 4804738 (D. Mass. Sept. 25, 2014), Intellectual Ventures II L.L.C. v. JP Morgan Chase & Co., No. 13 Civ. 3777, 2014 U.S. Dist. LEXIS 129854 (S.D.N.Y. Aug. 11, 2014), and Invensys Systems, Inc. v. Emerson Electric Co., No. 6:12-cv-799, 2014 U.S. Dist. LEXIS 128454, 2014 WL 4477393 (E.D. Tex. July 27, 2014), the courts denied stays because the PTAB had **[*20]** granted

The same has been true of motions to stay proceedings in the trial court after the PTAB has instituted CBM review proceedings. See Moneycat Ltd. v. Paypal Inc., No. 14-cv-2490, 2014 U.S. Dist. LEXIS 156168, 2014 WL 5689844 (N.D. Cal. Nov. 4, 2014); Secure Axcess, LLC v. U.S. Bank Nat'l Ass'n, No. 6:13-cv-717, 2014 U.S. Dist. LEXIS 182789 (E.D. Tex. Oct. 20, 2014); DataTreasury Corp. v. Fiserv, Inc., No. 2:13-cv-431, 2014 U.S. Dist. LEXIS 182805 (E.D. Tex. Sept. 29, 2014); Solutran, Inc. v. Elavon, Inc., No. 13-cv-2637, 2014 U.S. Dist. LEXIS 182791 (D. Minn. Sept. 18, 2014); Segin Sys., Inc. v. Stewart Title Guar. Co., No. 2:13-cv-190, 2014 U.S. Dist. LEXIS 109968, 2014 WL 3895931 (E.D. Va. Aug. 8, 2014); see also Versata Software, Inc. v. Callidus Software, Inc., No. 2014-1468, 780 F.3d 1134, 2015 U.S. App. LEXIS 3552, 2015 WL 981523 (Fed. Cir. Feb. 27, 2015); Benefit Funding Sys. LLC v. Advance Am. Cash Advance Ctrs. Inc., 767 F.3d 1383 (Fed. Cir. 2014).

That near-uniform line of authority reflects the principal point made by the court in VirtualAgility—that after the PTAB has instituted review proceedings, the parallel district court litigation ordinarily should be stayed. The decisions cited above have applied the same general approach in the analogous setting of inter partes review.[2]

With that said, it is nonetheless necessary to determine whether there are circumstances in this case that would call for a departure from that general practice and make a stay inappropriate. As noted above, the other factors bearing on the Court's exercise of its discretion to grant or deny a stay do not cut strongly either in favor of or against a stay. Nor has NFCT **[*22]** pointed to any special circumstances that would counsel against granting a stay in this case.

The only wrinkle pointed out by NFCT is that the PTAB's order granting inter partes review did not include all of the asserted claims of the '664 patent. In particular, currently asserted claims 14, 15, and 19 were not included in the petition for inter partes review of the '664 patent or the PTAB's order granting inter partes review of that patent. For that reason, NFCT contends that the stay should be denied. NFCT argues that with those claims omitted from the inter partes review, the PTAB's decision in the review proceeding is unlikely to result in a significant simplification of the case. The Court does not agree.

The reason that three of the claims of the '664 patent were not included in the defendant's original petition for inter partes review of the '664 patent is that at the time the petition was filed, NFCT had not asserted those claims against HTC. When NFCT asserted those claims in the litigation, HTC promptly petitioned for those claims to be added to the inter partes review proceeding. The absence, at least for now, of those claims from the inter partes review is therefore chargeable to NFCT, not to HTC. In light of the relationship **[*23]** between those claims and the claims for which review was granted, it seems entirely possible that the claims will be added to the review. In any event, even if the PTAB restricts its review to the claims of the '551 patent and the initially asserted claims of the '664 patent, any disposition by the PTAB is likely to simplify the proceedings before this Court, at the very least with respect to the '551 patent. Accordingly, in light of the fact that the PTAB has already instituted review of the two patents in suit in this case, the "simplification" factor cuts strongly in favor of granting a stay in this case pending the completion of the inter partes review process.

---

review of only some of the asserted claims or patents, and the courts were not persuaded that the PTAB review proceedings were likely to result in significant simplification of the issues in suit.

[2] Without acknowledging the line of authority cited above, NFCT argues that courts "routinely deny motions to stay where the litigation has progressed as far as the **[*21]** present litigation." Dkt. No. 149, at 8. NFCT cites four cases for that proposition. In three of the four cited cases, a large number of the claims at issue were not undergoing inter partes review. The remaining case, Unifi Sci. Batteries, LLC v. Sony Mobile Commc'ns AB, No. 6:12-cv-224, 2014 U.S. Dist. LEXIS 129388, 2014 WL 4494479 (E.D. Tex. Jan. 14, 2014), predated the Federal Circuit's decision in VirtualAgility. Moreover, the inter partes review proceeding in that case involved only a small minority of the references at issue in the litigation, which the court found reduced the likelihood that the inter partes review proceeding would result in simplification of the case before the court. Thus, contrary to NFCT's suggestion, the four cases it cites do not represent the "routine." Instead, they contain unusual facts that render them exceptions, rather than representing the general rule.

**CONCLUSION**

After weighing all the factors that bear on whether to grant a stay pending inter partes review, the Court concludes that the balance of those factors favors HTC. Accordingly, in the exercise of its discretion this Court will grant HTC's motion to stay all proceedings in this case pending the completion of the inter partes review before the PTAB. The parties are directed to advise the Court promptly when the PTAB issues its decision in the inter partes review proceeding.

IT IS SO ORDERED.

SIGNED this 11th day of March, 2015.

/s/ William C. Bryson

**[*24]** WILLIAM C. BRYSON

UNITED STATES CIRCUIT JUDGE

---

End of Document



As of: January 6, 2021 9:21 PM Z

# Palmer v. Kci United States

United States District Court for the District of Nebraska

November 3, 2020, Decided; November 3, 2020, Filed

4:19CV3084

**Reporter**

2020 U.S. Dist. LEXIS 204718 *; 2020 WL 6441268

CATHERINE PALMER, individually and on behalf of all others similarly situated; Plaintiff, vs. KCI USA, INC., Defendant.

**Counsel:** **[*1]** For Catherine Palmer, individually and on behalf of all others similarly situated, Plaintiff: Aaron D. Radbil, GREENWALD, DAVIDSON LAW FIRM, Austin, TX; Gary M. Klinger, MASON, LIETZ LAW FIRM - CHICAGO, Chicago, IL.

For KCI USA, INC., Defendant: Craig A. Knickrehm, Jonathan M. Brown, WALENTINE, O'TOOLE LAW FIRM, Omaha, NE; David Krueger, Eric L. Zalud, Laura E. Kogan, Warren McClurg, PRO HAC VICE, BENESCH, FRIEDLANDER LAW FIRM - CLEVELAND, Cleveland, OH; Thomas O. Crist, BENESCH, FRIEDLANDER LAW FIRM - CLEVELAND, Cleveland, OH.

**Judges:** Michael D. Nelson, United States Magistrate Judge.

**Opinion by:** Michael D. Nelson

## Opinion

**ORDER**

This matter is before the Court on the Motion for Leave to File an Amended Class Action Complaint (Filing No. 44) filed by Plaintiff, Catherine Palmer, and on the Motion to Stay (Filing No. 46) filed by Defendant, KCI USA, Inc. For the following reasons, the Court will deny Palmer's motion for leave to amend and will grant KCI's motion to stay.

**BACKGROUND**

KCI is a licensed durable medical equipment provider and a wound care company providing prescription wound devices for medical patients within the United States. Palmer filed a putative class action complaint against KCI on August 19, 2019, **[*2]** alleging KCI violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA") by making calls to individuals believed to be KCI's debtors, including Palmer and other class members, using an "automatic telephone dialing system" ("ATDS") and/or an "artificial or prerecorded voice" without prior express consent. Palmer alleges between March and June 2019 she received seven autodialed calls on her cellular telephone from KCI. The caller left pre-recorded voicemails regarding an overdue medical account for a different individual. (Filing No. 1). Palmer was not a customer or debtor of KCI, but, due to the transposition of a digit in the telephone number, KCI made the calls to Palmer's cellular telephone rather than the intended individual. Palmer's complaint proposes the following class definition for a "wrong number" class:

> All persons and entities throughout the United States (1) to whom KCI USA, Inc. placed, or

> caused to be placed, a call directed to a number assigned to a cellular telephone service, but not assigned to the intended recipient of KCI USA, Inc.'s calls, (3) by using an automatic telephone dialing system or an artificial or prerecorded voice, (4) from four years prior to the date **[*3]** of this complaint through and including the date of class certification.

(Filing No. 1 at p. 9). Palmer, on behalf of herself and the class, seeks $500 in statutory damages for each call, as well as treble damages due to her allegation that some or all of KCI's telephone calls were made willfully and knowingly in violation of the TCPA.

In accordance with the deadline selected by the parties in their Rule 26(f) Report (Filing No. 24), the Court entered an order on November 13, 2019, setting various case progression deadlines, including January 15, 2020, as the deadline for parties to move to amend pleadings or add parties. (Filing No. 26). Plaintiff filed the instant motion for leave to amend on August 24, 2020, after the deadline expired. Palmer alleges she learned during discovery that, "as a matter of pattern and practice," KCI "does not obtain prior express consent from consumers to whom it places calls by using an ATDS or an artificial or prerecorded voice" and instead "assumes" prior express consent exists. (Filing No. 44-3 at p. 15). Palmer contends that she first learned this information during a Rule 30(b)(6) deposition of KCI on July 29, 2020. (Filing No. 44 at p. 5). Specifically, KCI's designated **[*4]** deponent testified, "[W]e don't have direct consent from the patient. It's assumed through the fact that a requester has ordered our product in order to help treat a patient. Therefore, we would contact them for usage." (Filing No. 44-2 at p. 7). Based upon this testimony, Palmer seeks to file an amended complaint with two class definitions, including a similarly defined "wrong number" class as alleged in her original complaint, as well as a broader class Palmer calls a "Dialer and Prerecorded Voice Class," defined as:

> All persons and entities throughout the United States (1) to whom KCI USA, Inc. placed, or caused to be placed, a call directed to a number assigned to a cellular telephone service, (3) by using the Cisco Unified Contact Center Enterprise dialing system, or an artificial or prerecorded voice, (4) from August 19, 2015 through and including the date of class certification.

(Filing No. 44-4).

In opposing Palmer's motion to amend, KCI asserts the facts underlying Palmer's request to amend were available to her much earlier than the Rule 30(b)(6) deposition. In Palmer's written discovery requests, she had asked KCI to describe its "efforts to verify or confirm that telephone number [(xxx) **[*5]** xxx-7223] was assigned to the intended recipient of [KCI's] calls." In KCI's answers to interrogatories provided to Palmer on February 10, 2020, KCI answered, "KCI's customer ordered a prescription medical device from KCI through the customer's healthcare provider, voluntarily providing the telephone number for communications regarding the prescription medical device." (Filing No. 45-1).

KCI has also filed a motion to stay the case pending the Supreme Court of the United States' decision in *Facebook, Inc. v. Duguid*, No. 19-511, 2020 WL 3865252, at *1 (U.S. July 9, 2020), which will resolve a circuit split regarding whether the TCPA's definition of an ATDS encompasses any device that can "store" and "automatically dial" telephone numbers, even if the device does not "use a random or sequential number generator." KCI used a Cisco Unified Contact Center Enterprise dialing system to make the phone calls to Palmer. KCI asserts the *Facebook* ruling will conclusively resolve whether the equipment used by KCI is an ATDS within the meaning of the TCPA, which is an essential element of Palmer's individual claim and the claim of the putative class.

## ANALYSIS

### I. Motion to Amend

When a party seeks leave to amend under Rule 15(a) of the Federal Rules of Civil Procedure outside of the time period established by a

scheduling order, **[*6]** the party must first demonstrate good cause under Rule 16(b). See *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008); *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008). Palmer filed the instant motion for leave to amend on August 24, 2020, seven months after the motion to amend pleadings deadline had expired under the case progression order. Therefore, Palmer must demonstrate good cause to amend her pleadings. See *Sherman*, 532 F.3d at 716.

"The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Sherman*, 532 F.3d at 716 (citing *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006)). "[I]f the reason for seeking the amendment is apparent before the deadline and no offsetting factors appear, the Rule 16 deadline must govern." *Financial Holding Corp. v. Garnac Grain Co.*, 127 F.R.D. 165, 166 (W.D. Mo. 1989). Although prejudice to the nonmovant resulting from modification of the scheduling order may be a relevant factor, the court will generally not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines. See *Sherman*, 532 F.3d at 717 (citing *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)). "[T]he 'good cause' standard [of Rule 16(b)] is an exacting one, for it demands a demonstration that the existing schedule cannot be reasonably met despite the diligence of the party seeking the extension." *Scheidecker v. Arvig Enters.*, 193 F.R.D. 630, 632 (D. Minn. 2000) (citation omitted). Whether to grant a motion for leave to amend is within the sound discretion of the district court. *Popoalii*, 512 F.3d at 497.

Palmer asserts good cause exists for her belated motion **[*7]** to amend because she did not learn the information supporting her proposed amendments until KCI's Rule 30(b)(6) deposition on July 29, 2020, wherein KCI's designated deponent testified, "[W]e don't have direct consent from the patient. It's assumed through the fact that a requester has ordered our product in order to help treat a patient. Therefore, we would contact them for usage." (Filing No. 44-2 at p. 7). Palmer contends that this is the first time she learned "as a matter of pattern and practice—for all of KCI's customers" that KCI does not obtain prior express consent directly from the intended recipient of its calls. (Filing No. 48 at p. 10). Palmer argues she has been diligent in pursuing this amendment because she first served KCI with written discovery requests seeking information regarding KCI's practices to obtain prior consent on October 28, 2019, and although KCI responded on February 10, 2020, directing her to see attached documents, it did not actually attach any responsive documents. (Filing No. 44 at p. 4).

The Court finds Palmer has not demonstrated she was diligent in attempting to meet the scheduling order's deadline to amend pleadings, which expired seven months before she **[*8]** filed the instant motion. First, although Palmer claims she did not learn the basis for her proposed amendments until the July 29, 2020, deposition, Palmer had facts in her possession as early as February 10, 2020, which, had she pursued them, would have supported her proposed amendments. In particular, on February 10, 2020, KCI answered that it obtained the telephone number [(xxx) xxx-7223] when KCI's customer ordered a prescription medical device through the customer's healthcare provider, "voluntarily providing the telephone number for communications regarding the prescription medical device." In other words, Palmer was informed in February 2020 that KCI obtained the 7223-telephone number from a healthcare provider as an intermediary, and not from intended recipient him or herself. True, this answer does not state that *all* of KCI's customer's telephone numbers are obtained from a healthcare provider rather than the customer/patient him or herself, but KCI's answer was enough to have prompted further investigation or inquiry had Palmer been diligent. Additionally, if Palmer believed KCI's responses to written discovery were insufficient in February 2020, Palmer could have, and should **[*9]** have, taken action to have KCI to remedy its deficient responses much earlier. Finally, KCI correctly points out that its non-lawyer, Rule 30(b)(6) deponent's testimony that "we don't have direct consent from the patient" is a legal conclusion; the court will determine whether KCI's practices constitutes express prior consent under

the TCPA. See *S. Wine & Spirits of Am., Inc. v. Div. of Alcohol & Tobacco Control*, 731 F.3d 799, 811 (8th Cir. 2013)("A 30(b)(6) witness's legal conclusions are not binding on the party who designated him."). It bears repeating that KCI's designated deponent's testimony that "we don't have direct consent from the patient" was followed by her statement that, "[consent] is assumed through the fact that a requester has ordered our product in order to help treat a patient" — which is the same process KCI stated it used to obtain the 7223-telephone number in its February 2020 interrogatory answer. In other words, the factual basis for Palmer's proposed amendments was available to her several months before filing the instant motion. See *Financial Holding Corp.*, 127 F.R.D. at 166 ("[I]f the reason for seeking the amendment is apparent before the deadline and no offsetting factors appear, the Rule 16 deadline must govern."). Therefore, the Court finds Palmer has not demonstrated good cause justifying her long delay in seeking **[*10]** to amend her complaint.

Having concluded Palmer did not exercise due diligence to comply with the scheduling order, the Court does not need to address the remaining arguments regarding unfair prejudice and futility. See *Sherman*, 532 F.3d at 717 (finding the court generally will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines). Nevertheless, the Court also finds that permitting the belated amendment would be prejudicial to KCI. The deadlines to complete written discovery, expert disclosures, and depositions, have all concluded, and the parties are preparing for class action and dispositive motion practice on Palmer's original pleading containing only her "wrong number" individual claim and "wrong number" putative class. Permitting Palmer to amend her complaint at this late hour to convert this case from a "wrong number" action into an action that essentially includes all calls KCI has made to all its customers would be unfairly prejudicial. See *Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000) ("Where an amendment would likely result in the burdens of additional discovery and delay to the proceedings, a court usually does not abuse its discretion in denying leave to amend."). Therefore, under the circumstances, **[*11]** the Court will deny Palmer's motion for leave to amend.

### II. Motion to Stay

KCI moves the Court for an order staying all proceedings pending the decision of the Supreme Court in *Facebook, Inc. v. Duguid*, No. 19-511, wherein the court granted certiorari to resolve, "Whether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'" KCI argues this decision will determine a "crucial question" of law in this litigation.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 57 S. Ct. 163, 81 L. Ed. 153 (1936). A federal district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997). In evaluating a stay, a court should consider several relevant factors, including "maintaining control of its docket, conserving judicial resources, and the important interest of providing for the just determination of cases pending before the court," *Rosales v. Heath*, No. 8:17CV87, 2017 U.S. Dist. LEXIS 88911, 2017 WL 2533365, at *2 (D. Neb. 2017)(Zwart, M.J.), and **[*12]** the "possible damage, hardship and inequities to the parties to the lawsuit and the relationship of the stay to the fulfillment of judicial objectives of simplification of the issues in question and trial of the case." *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, No. 806CV458, 2007 U.S. Dist. LEXIS 59314, 2007 WL 2344805, at *1 (D. Neb. Aug. 14, 2007)(Bataillon, J.)(quoting *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991)). A stay may be warranted where the matter implicates "rights which are inextricably tied to [a] pending . . . claim in [another

court]." *Id.* (quoting *Kemp v. Tyson Seafood Grp., Inc.*, 19 F. Supp. 2d 961, 965 (D. Minn. 1998)). Typically, the applicant for a stay has the burden to show specific hardship or inequity if he or she is required to go forward. See *Landis*, 299 U.S. at 255.

In weighing the above factors, the Court finds that a stay of the case pending the *Facebook* decision is warranted. Palmer seeks to certify a class of persons who received ATDS calls or prerecorded calls from KCI as part of a singular class. Whether the Cisco Unified Contact Center Enterprise dialing system used by KCI to qualifies as an ATDS is an essential element of Palmer's claim under the TCPA and of the putative class's claim. See *Brenner v. Am. Educ. Servs.*, 702 F. App'x 503, 504 (8th Cir. 2017)(affirming summary judgment in favor of defendant where the plaintiff "failed to provide probative evidence that [the defendant] used an [ATDS], or a prerecorded or artificial voice to make calls to his cell phone, an essential element **[*13]** of his claim."). Although the *Facebook* decision will not conclusively resolve the claim for receiving "prerecorded or artificial voice" calls, it will conclusively resolve whether a tenable ATDS claim exists.

Further, a stay in this case pending the Supreme Court's decision in *Facebook* will "avoid exhausting judicial resources" and will conserve the parties' resources. The deadlines to complete written discovery, expert disclosures, and depositions, are all concluded. The next significant deadline is the motion for class certification deadline of November 6, 2020. The dispositive motion deadline is in January 2021. The Supreme Court's decision in *Facebook* will clarify the law before the parties expend significant time and effort filing and briefing motions to certify a class and for summary judgment and will aid the court's determination of those motions.

Palmer argues she and the putative class will be prejudiced by the stay because it will indefinitely stay the case and permit KCI from continuing to violate the TCPA. (Filing No. 53 at pp. 11-12). However, Palmer has not identified any personal continuing harm from KCI, as she testified during her deposition that the calls from KCI **[*14]** ended in June 2019. (Filing No. 60-1). See *Burnett v. Ocwen Loan Servicing*, LLC, No. 17 C 3474, 2017 U.S. Dist. LEXIS 185439, 2017 WL 5171226, at *3 (N.D. Ill. Nov. 8, 2017) ("[A] stay in this case will not deprive Plaintiffs of needed relief from the alleged unlawful calls because Plaintiffs do not allege the calls are presently ongoing."). And, although the delay caused by the stay may be significant, it is not indeterminate. Oral argument in *Facebook* is set for December 8, 2020, and a decision would be expected sometime next summer. On balancing judicial and party resources against the relatively minor delay this stay will cause Palmer, the Court finds a stay is appropriate. Upon consideration,

**IT IS ORDERED:**

1. Plaintiff's Motion for Leave to File an Amended Class Action Complaint (Filing No. 44) is denied;
2. Defendant's Motion to Stay (Filing No. 46) is granted;
3. All outstanding deadlines in this case are stayed pending the Supreme Court's decision in *Facebook, Inc. v. Duguid et al.*, No. 19-511.

Dated this 3rd day of November, 2020.

BY THE COURT:

/s/ Michael D. Nelson

United States Magistrate Judge

---

End of Document




As of: January 6, 2021 9:17 PM Z

# Rose v. Wells Fargo Advisors, LLC

United States District Court for the Northern District of Georgia, Atlanta Division

June 14, 2016, Decided; June 14, 2016, Filed

CIVIL ACTION NO. 1:16-CV-562-CAP

**Reporter**
2016 U.S. Dist. LEXIS 85287 *; 2016 WL 3369283

MICHAEL ROSE, Plaintiff, v. WELLS FARGO ADVISORS, LLC, Defendant.

**Counsel:** **[*1]** For Michael Rose, Plaintiff: Marc Brian Hershovitz, LEAD ATTORNEY, Marc B. Hershovitz, P.C., Atlanta, GA.

For Wells Fargo Advisors, LLC, Defendant: Alexandra Krasovec, Eric J. Troutman, LEAD ATTORNEYS, PRO HAC VICE, Dorsey & Whitney-C.CA, Costa Mesa, CA; Erin McGarry Moore, Parker, Hudson, Rainer & Dobbs, LLP, Atlanta, GA; Nancy H. Baughan, Parker, Hudson, Rainer & Dobbs, LLP -GA, Atlanta, GA.

**Judges:** CHARLES A. PANNELL, JR., United States District Judge.

**Opinion by:** CHARLES A. PANNELL, JR.

## Opinion

**ORDER**

This matter is before the court on the defendant's motion to stay [Doc. No. 10][1] and the plaintiff's motion for leave to file a supplemental brief to inform the court of new relevant case law [Doc. No. 18]. As an initial matter, the motion for leave to file a supplemental brief regarding new case law [Doc. No. 18] is GRANTED.

In the amended complaint [Doc. No. 12], the plaintiff contends that the defendant repeatedly violated the Telephone Consumer Protection Act ("TCPA") by sending **[*2]** him more than 600 texts messages without his consent. The text messages continued even after efforts by the plaintiff's wife to have the defendant stop sending the unwanted messages.

The defendant moved to stay this action pending a decision by the United States Supreme Court in *Spokeo, Inc. v. Robins*, 135 S. Ct. 1892, 191 L. Ed. 2d 762 (2015) (granting petition for writ of certiorari) and a decision by the Court of Appeals for the D.C. Circuit in *ACA Int'l, et al. v. Fed. Commncn's Comm.*, 2015 U.S. App. LEXIS 18554, No. 15-1211 (D.C. Cir. July 13, 2015). Since the filing of the motion to stay, the Supreme Court issued its opinion in *Spokeo*.[2] Therefore, the only issue for this court to consider is whether to stay

[1] The motion to stay was filed in alternative along with a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3). The plaintiff filed an amended complaint within the time allowed by Federal Rule of Civil Procedure 15(a)(1)(B); therefore, the court has dismissed the motion to dismiss as moot [Doc. No. 21].

[2] The plaintiff provided the court with the recent decision by the Supreme Court as an attachment to his motion for leave to file a supplemental brief to inform the court of new relevant case law [Doc. No. 18]. *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 194 L. Ed. 2d 635, 2016 WL 2842447 (U.S. 2016).

this action pending a decision in *ACA*.

A district court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936)). Federal courts routinely exercise their power to stay a proceeding where a pending decision in another court would "have a substantial or controlling effect on the claims and issues in the stayed case." **[*3]** *Miccosukee Tribe of Indians of Fla. v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th Cir. 2009).

In *ACA*, the D.C. Circuit will address, among other things, what type of equipment constitutes an "ATDS." Under the TCPA, an "ATDS" is equipment "which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). On appeal is the Federal Communications Commissions' ("FCC") finding that a piece of equipment has sufficient capacity to qualify as an ATDS if it has the present or "potential" capacity to store or produce numbers to be called using a random generator, but not if it only has the "theoretical" capacity. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd 7961 (2015) ("July 2015 Ruling"). The July 2015 Ruling does not clarify the difference between "potential" and "theoretical" capacity. The D.C. Circuit will determine whether the FCC's treatment of the term "capacity" in defining ATDS is "arbitrary, capricious, [or] an abuse of discretion," and thus results in an approach that does not comport with the caller's constitutional rights of due process and freedom of speech, and that disregards the applicable statute.

Whether the defendant here used an ATDS in sending text **[*4]** messages to the plaintiff is a threshold issue for liability under the TCPA and for the scope of discovery. Furthermore, the final briefing in the *ACA* appeal was completed on February 24, 2016. *See Errington v. Time Warner Cable Inc.*, No. 215CV02196RSWLDTB, 2016 U.S. Dist. LEXIS 66317, 2016 WL 2930696, at *4 (C.D. Cal. May 18, 2016). Accordingly, the appeal before the D.C. Circuit is not likely to remain pending for an extended period of time, and the possible prejudice to the plaintiff is minimal. On the other hand, if the case is not stayed, the defendant may suffer hardship in conducting discovery and trial preparation in light of the uncertain difference between "potential" capacity and "theoretical" capacity under the definition of an ATDS. Finally, granting a stay may simplify the issues in this case and conserve judicial resources because any order by this court issued in reliance on the July 2015 Ruling will be called into question if the D.C. Circuit overturns the July 2015 Ruling.

Based on the foregoing, the defendant's motion to stay this action pending a decision by the Court of Appeals for the D.C. Circuit [Doc. No. 10] is GRANTED. Either party may request the court to lift the stay once the ACA appeal has been decided. Preferably, the parties **[*5]** will jointly move to lift the stay in order to avoid wasting time with response and reply briefings.

**SO ORDERED** this 14th day of June, 2016.

/s/ Charles A. Pannell, Jr.

CHARLES A. PANNELL, JR.

United States District Judge

---

End of Document



As of: January 6, 2021 9:22 PM Z

# Saunders v. Sunrun, Inc.

United States District Court for the Northern District of California

October 29, 2020, Decided; October 29, 2020, Filed

Case No. 19-cv-04548-HSG

**Reporter**

2020 U.S. Dist. LEXIS 202015 *; 2020 WL 6342937

CURTIS SAUNDERS, Plaintiff, v. SUNRUN, INC., Defendant.

**Prior History:** Saunders v. Sunrun, Inc., 2020 U.S. Dist. LEXIS 144053 (N.D. Cal., Aug. 11, 2020)

**Counsel:** **[*1]** For Curtis Saunders, individually and on behalf of all others similarly situated, Plaintiff: Robert Ahdoot, LEAD ATTORNEY, Ahdoot & Wolfson, P.C., Los Angeles, CA; Eugene Y. Turin, PRO HAC VICE, McGuire Law, P.C., Chicago, IL; Yevgeniy Y. Turin, McGuire Law, P.C., Chicago, IL.

For Sunrun, Inc., a Delaware corporation, Defendant: Tahir Lynn Boykins, LEAD ATTORNEY, Kelley Drye & Warren LLP, Los Angeles, CA; Glenn T Graham, PRO HAC VICE, Kelley Drye Warren LLP, Parsippany, NJ; Lauri Anne Mazzuchetti, PRO HAC VICE, Kelley Drye Warren LLP, Parsippany, NJ.

**Judges:** HAYWOOD S. GILLIAM, JR., United States District Judge.

**Opinion by:** HAYWOOD S. GILLIAM, JR.

## Opinion

**ORDER GRANTING MOTION TO STAY**

Re: Dkt. No. 52

Before the Court is the motion filed by Defendant Sunrun, Inc. ("Sunrun") to stay the Telephone Consumer Protection Act ("TCPA") claim alleged in Plaintiff Curtis Saunders's class action complaint. Dkt. No. 52 ("Mot."). Plaintiff alleges two causes of action: violations of (1) the TCPA, 47 U.S.C. § 227*et seq.*; and (2) the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 632.7. Dkt. No. 1 ("Compl.") at ¶¶ 3, 6. The Court previously stayed the CIPA claim pending the California Supreme Court's review of *Smith v. LoanMe, Inc.*, 43 Cal. App. 5th 844, 848, 257 Cal. Rptr. 3d 61 (Cal. Ct. App. 2019). Dkt. No. 45. Defendant now seeks to stay the TCPA **[*2]** claim pending the United States Supreme Court's decision in *Facebook, Inc. v. Duguid*, No. 19-511, 207 L. Ed. 2d 1118, 2020 WL 3865252 (Mem) (*pet. granted* U.S. July 9, 2020). Plaintiff does not oppose the motion. Dkt. No. 54 ("Opp.").

According to Plaintiff, Defendant violated the TCPA by sending unauthorized text messages using an automated telephone dialing system ("ATDS"). Compl. at ¶¶ 35, 37. The TCPA prohibits placing calls[1] to cellular telephone lines using an ATDS without the recipient's consent. 47 U.S.C. §227(b)(1)(A). The TCPA defines an ATDS as

[1] A text message constitutes a "call" for purposes of the TCPA. *See Satterfield*, 569 F.3d at 954.

"equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* §227(a)(1). Notably, there is a circuit split concerning the scope of the definition of an ATDS. *Compare Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1043 (9th Cir. 2018), *and Allan v. Pennsylvania Higher Educ. Assistance Agency*, 968 F.3d 567, 574 (6th Cir. 2020), *with Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018), *and Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 469 (7th Cir. 2020), *and Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1306, 1310 (11th Cir. 2020). On July 9, 2020 the Supreme Court granted certiorari in *Facebook, Inc. v. Duguid* to address TCPA's definition of an ATDS, and oral argument has been set for December 8, 2020. Dkt. No. 55 at 2.

Given the Supreme Court's grant of certiorari and forthcoming decision, the Court exercises its discretion to stay Plaintiff's TCPA claim. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition **[*3]** of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). In deciding whether to issue a stay, the Court considers three factors: (1) "the possible damage which may result from the granting of a stay;" (2) "the hardship or inequity which a party may suffer in being required to go forward;" and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

The Court finds in its discretion that both party and judicial resources will be most efficiently used if the TCPA claim is stayed until the Supreme Court clarifies the scope of the TCPA's definition of an ATDS. The parties correctly note that a decision in *Duguid* will likely simplify the matter and inform the parameters of discovery. *See* Mot. 7; Opp. 1. And there appears to be minimal risk of prejudice to either party, particularly in the light of Plaintiff's consent. *See Pamintuan v. Bristol-Myers Squibb Co.*, No. 16-cv-00254-HSG, 2016 U.S. Dist. LEXIS 91758, at *4 (N.D. Cal. July 14, 2016) (granting motion to stay after heavily weighing plaintiff's consent). Finally, any risk of harm is further minimized because the stay will be limited **[*4]** in duration. *See Stone v. Sterling Infosystems, Inc.*, No. 2:15-CV-00711-MCE, 2015 U.S. Dist. LEXIS 99161, 2015 WL 4602968, at *2 (E.D. Cal. July 29, 2015) (noting minimal harm to plaintiff from staying case due to Supreme Court's customary practice to decide cases within twelve months).

Accordingly, the Court **GRANTS** Defendant's unopposed motion to stay the TCPA claim pending the *Duguid* decision. The Court directs the parties to submit a joint status report within 48 hours of the *Duguid* decision. The status report should simply attach the decision with no legal or factual argument or characterization.

**IT IS SO ORDERED**.

Dated: 10/29/2020

/s/ Haywood S. Gilliam, Jr.

HAYWOOD S. GILLIAM, JR.

United States District Judge

---

End of Document




As of: January 6, 2021 9:11 PM Z

# Sparling v. Doyle

United States District Court for the Western District of Texas, El Paso Division

March 3, 2014, Decided; March 3, 2014, Filed

EP-13-CV-00323-DCG

**Reporter**

2014 U.S. Dist. LEXIS 200068 *; 2014 WL 12489985

LEANNE SPARLING and MICHAEL J. SPARLING, on behalf of and as representatives for MICHAEL L. SPARLING, deceased, Plaintiffs, v. JONATHAN VINCENT DOYLE, an individual; JACOB GEISSLER, an individual; USPLABS JACK3D, LLC; USPLABS, LLC; USPS HOLDING, LLC; GNC CORPORATION; NATURAL ALTERNATIVES INTERNATIONAL, INC.; and DOES 1-500, inclusive, Defendants.

**Subsequent History:** Dismissed without prejudice by, in part Sparling v. Doyle, 2014 U.S. Dist. LEXIS 74362 (W.D. Tex., May 30, 2014)

Motion denied by, Motion denied by, As moot Sparling v. Doyle, 2014 U.S. Dist. LEXIS 190997 (W.D. Tex., Oct. 22, 2014)

Costs and fees proceeding at, Motion granted by Sparling v. Doyle, 2014 U.S. Dist. LEXIS 190977 (W.D. Tex., Oct. 22, 2014)

Motion granted by, in part, Motion denied by, in part, Claim dismissed by Sparling v. Doyle, 2014 U.S. Dist. LEXIS 151113 (W.D. Tex., Oct. 23, 2014)

Motion granted by, in part, Motion denied by, in part, Request denied by, As moot Sparling v. Doyle, 2015 U.S. Dist. LEXIS 182903 (W.D. Tex., Jan. 9, 2015)

Later proceeding at Sparling v. Doyle, 2015 U.S. Dist. LEXIS 182887 (W.D. Tex., Jan. 9, 2015)

Motion granted by, Motion denied by, Motion denied by, As moot Sparling v. Doyle, 2015 U.S. Dist. LEXIS 97204 (W.D. Tex., July 27, 2015)

Objection overruled by Sparling v. Doyle, 2016 U.S. Dist. LEXIS 6648 (W.D. Tex., Jan. 20, 2016)

**Counsel:** **[*1]** For Leanne Sparling, on behalf of and as representatives for Michael L Sparling, deceased, Michael J Sparling, on behalf of and as representatives for Michael L Sparling, deceased, Plaintiffs: Anne Andrews, LEAD ATTORNEY, PRO HAC VICE, Andrews and Thornton, Irvine, CA USA; John C. Thornton, LEAD ATTORNEY, Andrews & Thornton, Irvine, CA USA; Joseph Isaac, LEAD ATTORNEY, Scherr & Legate, PLLC, El Paso, TX USA; Sean Thomas Higgins, LEAD ATTORNEY, Andrews & Thorton, Irvine, CA USA.

For Jonathan Vincent Doyle, (an individual), Jacob Geissler, (an individual), Usplabs Jack3d, Llc, Usplabs, Llc, Usplabs Holding, Llc, Gnc Corporation, Defendants: Bruce S. Deming, LEAD ATTORNEY, PRO HAC VICE, Law Offices of Bruce S. Deming, Esq., Arlington, VA USA; Bruce W. Steckler, Sean R. Cox, LEAD ATTORNEYS, PRO HAC VICE, Steckler, L.L.P., Dallas, TX USA; Joe A. Spencer, Jr., LEAD ATTORNEY, Attorney at Law, El Paso, TX USA; Mazin A. Sbaiti, LEAD ATTORNEY, Sbaiti & Company PLLC, Dallas, TX USA; Pamela J. Lormand, LEAD ATTORNEY, Brewer & Lormand, PLLC, New Orleans, LA USA; Andres Eduardo Almanzan, Mounce, Green, Myers, Safi, Paxson & Galatzan, El Paso, TX USA; H. Keith Myers, Mounce, Green, Myers, Safi & Galatzan, **[*2]** P.C., El Paso, TX USA; Paul G. Preston, The Preston Law Firm, LLOC, New Orleans, LA USA.

For Natural Alternatives International, Inc., Defendant: Kevin Monroe Bell, LEAD ATTORNEY, PRO HAC VICE, Patton Boggs LLP, Washington, DC USA; Richard J. Oparil, LEAD ATTORNEY, Ponzio, Bromberg & Newman, P.C., Washington, DC USA; Russell W. Schell, Timothy D. Ryan, LEAD ATTORNEYS, Schell Cooley, LLP, Addison, TX USA.

Does 1-500, inclusive, Defendant, Pro se.

For Andrews & Thornton, Sean T Higgins, Movants: Joseph L. Hood, Jr., LEAD ATTORNEY, Windle Hood Alley Norton Brittain & Jay, LLP, El Paso, TX USA; Sean Thomas Higgins, LEAD ATTORNEY, Andrews & Thorton, Irvine, CA USA.

For Anne Andrews, John D Thornton, Movants: Joseph L. Hood, Jr., LEAD ATTORNEY, Windle Hood Alley Norton Brittain & Jay, LLP, El Paso, TX USA.

**Judges:** DAVID C. GUADERRAMA, UNITED STATES DISTRICT JUDGE.

**Opinion by:** DAVID C. GUADERRAMA

## Opinion

**ORDER GRANTING STAY**

Presently before the Court is Defendants Jonathan Vincent Doyle, Jacob Geissler, USPLABS Jack3d, LLC, USPlabs, LLC, USPlabs Holding, LLC, GNC Corporation's (collectively "Defendants") "Amended Motion to Stay Case" (ECF No. 64), filed on January 23, 2014.[1] After reviewing the motion and responses thereto, **[*3]** as well as the applicable law, the Court grants the motion to stay for the reasons stated herein.

### I. Background

Plaintiffs filed this action on February 13, 2013, in the Superior Court of the State of California in and for the County of San Diego, titled *Leanne Sparling, et al. v. USPlabs, LLC, et al.*, Case No. 37-2013-00034663-CU-PL-CTL. The Complaint purports to set forth nine causes of action arising out of the alleged use by Plaintiffs' son, Michael L. Sparling, of dietary supplements allegedly manufactured and distributed by Defendants. Plaintiffs' causes of action include negligence, strict products liability—defective design, strict products liability—failure to warn, breach of express warranty, breach of implied warranty, unlawful business practices under California Business and Professions Code § 17200, *et seq.*, and wrongful death. The Complaint also asserted a request for punitive damages.

On March 21, 2013, Defendants properly removed this action to the United States District Court for the Southern District of California pursuant to 28 U.S.C. §§ 1441 and 1446. (ECF No. 1). Plaintiffs did not challenge removal. The matter was assigned to the Honorable Janis L. Sammartino. The parties subsequently filed four separate motions: (i) Defendants' Motion to **[*4]** Dismiss, ECF No. 6; (ii) Plaintiffs' Discovery Motion, ECF No. 13; (iii) Defendants' Motion to Transfer Venue, ECF No. 14; and (iv) Defendant Natural Alternatives International, Inc.'s Motion to Dismiss, ECF No. 15. After approximately eight months after the case was removed, on October 11, 2013, the presiding judge granted Defendants' Motion to Transfer Venue, finding that the Western District of Texas was, on balance, the more convenient forum under 28 U.S.C. § 1404. (ECF No. 39).

[1] Prior to filing the instant motion, the Court notes that the above defendants filed a prior "Motion to Stay Case" (ECF No. 62) on the same day. While the initial motion was not opposed by the parties, Plaintiffs' counsel informed Defendants' counsel after the filing of the initial motion that they do oppose the motion. As such, Defendants filed an Amended Motion to Stay Case. In accord, the Motion to Stay Case is DENIED AS MOOT.

On October 16, 2013, the instant case was transferred to this Court. Thereafter, on January 13, 2014, Defendant USPlabs, LLC, ("USPlabs) filed a motion for transfer and consolidation with the Judicial Panel of Multidistrict Litigation ("JPML"), requesting transfer of this case along with eight other cases for pretrial proceedings. *See* Defs.' Am. Mot. to Stay, Ex. 1, at 9-24. Therein, USPlabs proposes either the Eastern District of Pennsylvania or, alternatively, the Western District of Texas as the transferee district. *See id.* Taking judicial notice of the filings submitted to the JPML, *see In re OxyElite Pro & Jack3d Prods. Liab. Litig.*, MDL No. 2523 (J.P.M.L. 2014), ECF No. 58, the Court notes that there is a panel hearing **[*5]** set for March 27, 2014, to address all pending motions to transfer pursuant to 28 U.S.C. § 1407.

Defendants now seek a temporary stay until the MDL panel renders a decision on the pending motion for transfer and consolidation. Aside from Plaintiffs' opposition, Defendant Natural Alternatives International, Inc., also opposes the instant motion; however, it has not filed a written response expressing its opposition.

## II. Applicable Law

A pending transfer motion before the MDL panel does not deprive the district court in which the action is then pending of jurisdiction over pretrial matters. *See* J.P.M.L R. Proc. 2.1(d) ("The pendency of a motion . . . does not limit the pretrial jurisdiction of that [presiding] court"); *In re Air Crash Disaster at Paris, France, on Mar. 3, 1974*, 376 F.Supp. 887, 888 (J.P.M.L. 1974) ("[T]he mere pendency of a motion before the Panel does not affect or suspend orders and discovery proceedings in the transferor district court. . . ."). In other words, a district judge should not automatically stay discovery, postpone rulings on pending motions, or generally suspend further rulings upon a party's motion to the MDL panel for transfer and consolidation. *See* Manual For Complex Litig. (Fourth) § 20.131 (2004). In accord, **[*6]** the MDL panel has observed that "the use of stay orders by the district courts, particularly in the area of discovery, is usually undesirable," while "[a] stay of proceedings concerning questions common to all cases, such as class representation, may be appropriate to preserve the question for the transferee judge and avoid inconsistent rulings." *In re Penn Cent. Secs. Litig.*, 333 F. Supp. 382, 384 n.4 (J.P.M.L. 1971). Nonetheless, the matter of a stay "is within the sole discretion of the transferor judges." *Air Crash Disaster*, 376 F.Supp. at 888.

Indeed, incidental to its power to control the disposition of its docket, a district court has the inherent power to stay proceedings. *See Clinton v. Jones*, 520 U.S. 681, 706, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997); *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55, 57 S. Ct. 163, 81 L. Ed. 153 (1936); *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983). "The proponent of a stay bears the burden of establishing its need." *Clinton*, 520 U.S. at 708. In determining whether a stay is proper, the district court should consider three factors: (1) the potential prejudice to the non-moving party; (2) the hardship and inequity to the moving party if the action is not stayed as well as the (3) judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated. *See La. Stadium & Exposition Dist. v. Fin. Guar. Ins. Co.*, Civ. A. No. 09-CV-235, 2009 U.S. Dist. LEXIS 35004, 2009 WL 926982, at * 1 (E.D. La. Apr. 2, 2009). When exercising its discretion, the Court is "guided by the policies of justice and efficiency." *Boudreaux v. Metro. Life Ins. Co.*, Civ. A. No. 95-CV-138, 1995 U.S. Dist. LEXIS 2656, 1995 WL 83788, at *1 (E.D. La. Feb. 24, 1995).

## III. Discussion

In support of the Amended Motion to Stay, Defendants argue: (1) a temporary **[*7]** stay would engender minimal prejudice to Plaintiffs; (2) allowing the action to continue would create a hardship for Defendants by exposing them to unnecessary proceedings and the potential for inconsistent rulings; (3) a temporary stay would promote judicial economy and efficiency by avoiding duplicative efforts by this Court. *See* Am. Mot. to Stay 3-5. Plaintiffs argue that they will be

prejudiced by the stay because they will endure further delay before they can litigate their claims. *See* Pls.' Resp. 3, ECF No. 65. Moreover, Plaintiffs assert that it is unlikely that the JPML will grant Defendants' pending motion for transfer and consolidation because very few cases are implicated, that is, a total of nine cases. *See id.* at 3-4. Further, Plaintiffs contend that Defendants should be required to disclose their initial disclosures and that serving initial disclosures would not pose a burden on Defendants, even if consolidation was granted. *See id.* at 4.

The Court finds that a stay pending resolution of Defendants' MDL motion for transfer and consolidation is warranted in this case. Accordingly, the Court will consider each of the three factors generally used to determine whether a stay is appropriate **[*8]** under these circumstances.

*A. Potential Prejudice to the Non-moving Party*

The Court finds that Plaintiffs will endure minimal prejudice by a stay in this matter. While the case was initiated in April 2013, little discovery has taken place between the parties for they have not yet submitted initial disclosures as of January 29, 2014. *See* Pls.' Resp. 5. As such, a temporary stay will only compel Plaintiffs to endure a slight delay given the fact that the panel hearing is only three weeks away from the date of this order. Observing that district courts frequently grant motions to stay after concluding that the plaintiff will not be prejudiced by a slight delay, the Court finds that the delay in the instant case is comparable to a significant number of cases that granted a stay. *See Curtis v. BP Am., Inc.*, 808 F. Supp. 2d 976, 982 (S.D. Tex. 2011) (citing *Tench v. Jackson Nat'l Life Ins. Co.*, Civ. A. No. 99-CV-5182, 1999 U.S. Dist. LEXIS 18023, 1999 WL 1044923, at *2 (N.D. Ill. Nov. 12, 1999) (MDL panel hearing only one week away)); *La. Stadium*, 2009 U.S. Dist. LEXIS 35004, 2009 WL 926982, at *1 (noting that defendants' responsive pleadings are due before MDL panel 18 days after the court issued the stay); *Kennedy v. Novartis Pharm., Corp.*, Civ. A. No. 02-CV-2331, 2002 U.S. Dist. LEXIS 17266, 2002 WL 31051601, at *1 (E.D. La. 2002) (noting MDL panel had already ordered a conditional order of transfer and finding minimal prejudice where stay would create a three to four week delay).

Without commenting on whether the JPML will grant or deny Defendants' motion for transfer and **[*9]** consolidation, the Court notes that if the JPML were to deny Defendants' motion, Plaintiffs will not be significantly prejudiced. At most, Plaintiffs will incur a one to two month delay considering the amount of time it will take the JPML to render a decision on transferability and consolidation following the hearing on March 27, 2014. Thus, though a stay would briefly inhibit Plaintiffs' progress in the present litigation for a period of time, the Court finds that Plaintiffs face a minimal likelihood of prejudice if a stay is granted.

*B. Hardship and Inequity to the Moving Party if the Action is not Stayed*

Defendants assert that in the absence of a stay, they would be harmed by duplicative proceedings and consequently, inconsistent rulings. *See* Mot. to Stay 4-5. Furthermore, Defendants allege that "any rulings that this Court makes prior to the case's transfer to the MDL most likely will be reconsidered by the MDL Court post-transfer." *Id.* at 5.

Presently, there are two motions to dismiss by Defendants pending before this Court. As such, the Court finds that if the Court ruled on said motions, the parties may have to re-litigate and re-explore the issues presented therein. This duplicative type **[*10]** of litigation is not only prejudicial to Defendants but also Plaintiffs because all parties may be required to revisit rulings made by this Court prior to transfer. *See In re Plumbing Fixture Cases*, 298 F.Supp. 484, 496 (J.P.M.L. 1968) ("[P]roposals to transfer civil actions in which important pretrial motions are under submission or are reaching the point of submission . . . . include motions for dismissal, for summary judgment or for determination of the class action questions, among others."). Because there are pending dispositive motions presently before this Court, the Court finds that the hardship endured by Defendants is significant.

*C. Judicial Economy*

Lastly, the Court concedes that awarding a stay will promote judicial economy and efficiency by avoiding duplicative efforts by this Court. *See* Am. Mot. to Stay 5. That is, the Court should evade "needlessly expending its energies familiarizing itself with the intricacies of a case that the transferee judge may have to duplicate if the cases are consolidated." *Id.* (quoting *Rivers v. Walt Disney, Co.*, 980 F. Supp. 1358, 1360-61 (C.D. Cal. 1997) (internal quotations omitted)). As such, the Court finds that judicial economy is best served when judicial resources are conserved.

Finding that dispositive motions are pending and that delay is not significant, the Court **[*11]** concludes that a stay pending transfer to MDL is warranted in this case.

**IV. Conclusion**

Accordingly, **IT IS HEREBY ORDERED** Defendants Jonathan Vincent Doyle, Jacob Geissler, USPLABS Jack3d, LLC, USPlabs, LLC, USPlabs Holding, LLC, GNC Corporation's (collectively "Defendants") "Amended Motion to Stay Case" (ECF No. 64) is **GRANTED**.

**IT IS FURTHER ORDERED** Defendants Jonathan Vincent Doyle, Jacob Geissler, USPLABS Jack3d, LLC, USPlabs, LLC, USPlabs Holding, LLC, GNC Corporation's (collectively "Defendants") "Motion to Stay Case" (ECF No. 62) is **DENIED AS MOOT**.

**So ORDERED and SIGNED this** 3rd **day of March, 2014**.

/s/ David C. Guaderrama

**DAVID C. GUADERRAMA**

**UNITED STATES DISTRICT JUDGE**

---

End of Document

Cited
As of: January 6, 2021 9:15 PM Z

# Trim v. Mayvenn, Inc.

United States District Court for the Northern District of California

November 3, 2020, Decided; November 3, 2020, Filed

Case No. 20-cv-03917-MMC

**Reporter**
2020 U.S. Dist. LEXIS 205361 *; 2020 WL 6460543

LUCINE TRIM, individually and on behalf of all others similarly situated, Plaintiff, v. MAYVENN, INC., Defendant.

**Counsel: [*1]** For Lucine Trim, individually and on behalf of all others similarly situated, Plaintiff: Rachel Elizabeth Kaufman, LEAD ATTORNEY, Kaufman P.A., Miami, FL.

For Mayvenn, Inc., Defendant: Tiffany Cheung, LEAD ATTORNEY, Michael Burshteyn, Morrison & Foerster LLP, San Francisco, CA.

**Judges:** MAXINE M. CHESNEY, United States District Judge.

**Opinion by:** MAXINE M. CHESNEY

## Opinion

**AMENDED* ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY; CONTINUING CASE MANAGEMENT CONFERENCE**

Before the Court is defendant Mayvenn, Inc.'s ("Mayvenn") "Motion to Dismiss Plaintiff's Amended Complaint, or in the Alternative, to Stay This Action," filed September 8, 2020. Plaintiff Lucine Trim ("Trim") has filed opposition, to which Mayvenn has replied. Having considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

**BACKGROUND**

In the operative complaint, the First Amended Complaint ("FAC"), Trim alleges she has a cellular telephone number "for personal use," which number "has been on the NDNCR [National Do Not Call Registry] since December 3, 2019." (See FAC ¶¶ 45-46.) Trim alleges that, on April 24, 2020, she received the following text message from **[*2]** Mayvenn on her cellular phone:

> When you want something fun, quick and protective for your hair? WIG. Shop these ready to wear units: https://mvnn.co/uJwLvIY - Reply HELP for help, STOP to quit.

(See id. ¶ 42.) Trim further alleges that, on May 4, 2020, she received a second text message from Mayvenn on her cellular phone, which read as follows:

> Mother's day is soon. Forget the florist, what she really wants is a wig. No-contact delivery goes right to her door:

* The sole amendments are to substitute "July 16, 2021" for "July 17, 2021" and "July 9, 2021" for "July 10, 2021." (See pp. 10:15-16.)

[1] By order filed October 9, 2020, the Court took the matter under submission.

https://mvnn.co/9tTRKWf - Reply HELP for help, STOP to quit.

(See id.)

According to Trim, "[a] text message sent from an SMS short code," like the two text messages she received from Mayvenn, is "characteristic" of a message sent using an "automated telephone dialing system" ("ATDS"), which system "dials a large volume of telephone numbers from a prepared list." (See FAC ¶ 43.) Trim also alleges "the fact that automated responses were available to the text messages indicates that the [messages] were made with an ATDS." (See id. ¶ 44.)

Trim alleges she "has never provided prior express written consent to receive" text messages from Mayvenn, and the messages "invaded" her "privacy and solitude," "wasted" her time, "annoyed" her, "harassed" **[*3]** her, and "consumed the battery life and memory of [her] . . . cellular telephone[]." (See id. ¶¶ 48-49.)

Based on the above allegations, Trim asserts, pursuant to the Telephone Consumer Protection Act ("TCPA"), two claims on behalf of herself and two classes, namely, an "Automated Call Class" and a "National Do Not Call Registry Class."

**DISCUSSION**

By the instant motion, Mayvenn seeks an order dismissing the FAC, or, in the alternative, staying the instant action pending the Supreme Court's decision in Facebook, Inc. v. Duguid, No. 19-511 (S. Ct. 2019), and the Federal Communications Commission's ("FCC") "declaratory ruling interpreting the definition of an ATDS." (See Mot. at 1:13-17, 1:23-24.)

**A. Motion to Dismiss**

Mayvenn argues the FAC is subject to dismissal, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, for lack of standing. Specifically, Mayvenn contends, Trim's allegations are "insufficient to establish injury-in-fact." (See Mot. at 3:2-3); see also Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011) (holding challenge to Article III standing properly brought by motion under Rule 12(b)(1)).

To establish Article III standing, a plaintiff must have "suffered an injury in fact" that is "fairly traceable to the challenged conduct" and is "likely to be redressed by a favorable judicial **[*4]** decision." See Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016). The "injury in fact" must be both "concrete and particularized." See id. at 1548 (internal quotation and citation omitted). To be "particularized," an injury "must affect the plaintiff in a personal and individual way"; to be "concrete," the "injury must be de facto; that is, it must actually exist." See id. (internal quotations and citations omitted). Although Article III standing requires a concrete injury, a "violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact . . . [and] a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." See id. at 1549 (emphasis in original).

In Van Patten v. Vertical Fitness Group, LLC, 847 F.3d 1037 (9th Cir. 2017), the Ninth Circuit, noting "Congress identified unsolicited contact as a concrete harm, and gave consumers a means to redress this harm," held "a violation of the TCPA is a concrete, de facto injury." See id. at 1043. Here, Trim, as noted, alleges she received unsolicited telemarketing messages from Mayvenn, and, relying on Van Patten, asserts she "need not allege any additional harm." (See Opp. at 2:24-3:2 (quoting Van Patten).)

Nevertheless, Mayvenn argues, Trim's claims fail because she "does not allege actually reading, **[*5]** reviewing, or spending any time on [the] text messages" (see Mot. at 2:23-24), and, "[b]ased on recent trends in TCPA jurisprudence, [Trim's] alleged receipt of two text messages does not establish Article III standing" (see id. at 2:14-15). As set forth below, however, the cases on which Mayvenn relies in support of such argument (see Mot. at 3:5-5:9), are readily distinguishable.

First, Shuckett v. DialAmerica Marketing, Inc., No. 17-cv-2073-LAB, 2019 U.S. Dist. LEXIS 127049,

2019 WL 3429184 (S.D. Cal. July 29, 2019), concerned a telephone call, not a text message, and the district court, in granting the defendant's motion for summary judgment, found there was no evidence the plaintiff therein was aware of the call, which "went unanswered." See 2019 U.S. Dist. LEXIS 127049, [WL] at *3. Next, Selby v. Ocwen Loan Servicing, LLC, No. 3:17-CV-973-CAB-BLM, 2017 U.S. Dist. LEXIS 189995, 2017 WL 5495095 (S.D. Cal. Nov. 16, 2017), concerned debt collection calls, which the District Court held were not covered under the TCPA. See 2017 U.S. Dist. LEXIS 189995, [WL] at *3 (finding "the TCPA was not intended to protect any concrete interests associated with calls from debt collectors or creditors"). Mayvenn's reliance on the remaining cases likewise is misplaced, as each such case relied on the law of the Eleventh Circuit, which, unlike the Ninth Circuit, has held "receiving a single text message" is "not a basis for invoking **[*6]** the jurisdiction of federal courts." See Salcedo v. Hanna, 936 F.3d 1162, 1172 (11th Cir. 2019) (holding "[t]he chirp, buzz, or blink of a cell phone receiving a single text message" is insufficient to state a concrete harm; noting Ninth Circuit "has reached the opposite conclusion"); see, e.g., Fenwick v. Orthopedic Specialty Inst., PLLC, No. 19-CV-62290, 2020 U.S. Dist. LEXIS 21566, 2020 WL 913321, at *5 (S.D. Fla. Feb. 4, 2020) (dismissing TCPA claim alleging receipt of two text messages; citing Salcedo).

Accordingly, the Court finds Trim's TCPA claims are not subject to dismissal for lack of standing.

**B. Motion to Stay**

**1. Stay Pending Decision in Facebook**

Mayvenn argues the Court should stay the instant action pending the Supreme Court's decision in Facebook, wherein the Supreme Court will resolve the following issue:

> Whether the definition of ATDS in the TCPA encompasses any device that can "store" and "automatically dial" telephone numbers, even if the device does not "us[e] a random or sequential number generator."

See Facebook, No. 19-511 (S. Ct. Oct. 17, 2019), Pet. for Writ of Cert. at ii.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936). A court may "find it is efficient for its own docket and the fairest **[*7]** course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case," even if the "issues in such proceedings" are not "necessarily controlling of the action before the court." See Leyva v. Certified Grocers of Cal., Ltd., 593 F.2d 857, 863-64 (9th Cir. 1979).

The proponent of a stay bears the burden of showing such relief is warranted. See Clinton v. Jones, 520 U.S. 681, 708, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997). In deciding whether to stay proceedings pending resolution of another action, a district court must weigh "the competing interests which will be affected by the granting or refusal to grant a stay," including (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." See Lockyer v. Mirant Corp., 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962)).

The Court considers each of the above-listed factors, in turn.

**a. Damage Resulting from Granting of Stay**

The Court first considers the "possible damage which may result from the granting of a stay." See Lockyer, 398 F.3d at 1110 (internal quotation and citation omitted).

Here, Trim argues "[a] stay risks the loss of relevant evidence" **[*8]** and "needlessly delays

potential recovery of [Trim] and putative class members." (See Opp. to Mot. at 9:1-2, 10:10-11.) The Court is not persuaded. Trim's concern that the requested stay will result in a loss of evidence is, in the absence of supporting facts, no more than speculation, particularly given the likely short duration of the stay. See Docket, Facebook, No. 19-511 (U.S. Sept. 16, 2020) (setting oral argument in Facebook for December 8, 2020); Aleisa v. Square, Inc., No. 20-cv-00806-EMC, 2020 U.S. Dist. LEXIS 188024, 2020 WL 5993226, at *7 (N.D. Cal. Oct. 9, 2020) (granting stay pending decision in Facebook; noting, "[t]he Supreme Court is likely to issue an opinion on this question in the first half of 2021"). Further, the "[m]ere delay in receiving damages is an insufficient basis to deny a stay." See Ludlow v. Flowers Foods, Inc., No. 18-cv-1190-JLS, 2020 U.S. Dist. LEXIS 27246, 2020 WL 773253, at *2 (S.D. Cal. Feb. 18, 2020).

Accordingly, the Court finds the first factor weighs in favor of a stay.

**b. Hardship or Inequity Party May Suffer Absent Stay**

The Court next considers "the hardship or inequity which a party may suffer in being required to go forward." See Lockyer, 398 F.3d at 1110 (internal quotation and citation omitted).

Here, Mayvenn contends that, "[a]bsent a stay, at a minimum, [it] would be required to spend significant time and resources conducting **[*9]** discovery regarding text message platforms based on a governing legal standard that is likely to change within the year," and that "the parties would similarly be forced to litigate the ATDS issue through summary judgment or trial, incurring substantial costs." (See Mot. at 9:7-12.) In response, Trim, citing Lockyer, contends, "[a]s a matter of well-established Ninth Circuit law, being required to defend a suit, without more, does not constitute a clear case of hardship or inequity." (See Opp. at 8:5-8 (internal quotation and citation omitted).) In Lockyer, however, the plaintiff had, unlike here, made out a "fair possibility" of harm, see Lockyer, 398 F.3d at 1112, and, "when the opponent does not adduce evidence that it will be harmed by a stay[,] . . . courts have considered the moving party's burden in litigating the case to be a legitimate form of hardship," see Arris Sols., Inc. v. Sony Interactive Entm't LLC, No. 17-CV-01098-EJD, 2017 U.S. Dist. LEXIS 168520, 2017 WL 4536415, at *2 (N.D. Cal. Oct. 10, 2017) (internal quotation and citation omitted).

Accordingly, the Court finds the second factor weighs in favor of a stay.

**c. Orderly Course of Justice**

Lastly, the Court considers "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions **[*10]** of law which could be expected to result from a stay." See Lockyer, 398 F.3d at 1110 (internal quotation and citation omitted).

In that regard, Trim argues a stay "would not lead to a comprehensive or expedient disposition of the case," because, according to Trim, a decision in Facebook will have "absolutely no impact on [her] National Do Not Call Registry claim." (See Opp. 5:7-8, 5:23-25 (internal quotation, citation, and emphasis omitted).)[2] Even if a decision in Facebook will not resolve the instant action in its entirety, however, the parties do not dispute that such decision will provide "valuable assistance to the court in resolving" Trim's TCPA claim alleging Mayvenn's use of an ATDS. See Leyva, 593 F.2d at 863; see also Gallion v. Charter Commc'ns Inc., 287 F. Supp. 3d 920, 932 (C.D. Cal. 2018) (granting stay pending D.C. Circuit's decision as to "what constitutes an ATDS"; noting "the D.C. Circuit's decision will significantly impact one ground for defendants' potential liability in this putative class action and will at least define the

[2] To the extent Trim contends a decision in Facebook would not affect the holding in Marks v. Crunch San Diego, LLC, 904 F.3d 1041 (9th Cir. 2018), the Court notes the relevant holding is the same in both cases, and, indeed, the Ninth Circuit, in reaching its decision in Facebook, relied on its decision in Marks. See Facebook, 926 F.3d at 1151. Consequently, any decision as to that holding in Facebook will, in effect, constitute a decision as to that holding in Marks as well.

scope of discovery regarding ATDS").

The district court cases on which Trim relies in arguing a stay is not appropriate where such stay would not lead to a "comprehensive" disposition of the case (see Opp. to Mot. at 5:7-8 **[*11]** (internal quotation and citation omitted)), are readily distinguishable on their facts. In Izor v. Abacus Data Systems, Inc., No. 19-cv-01057-HSG, 2020 U.S. Dist. LEXIS 64454 (N.D. Cal. Apr. 13, 2020), there was no more than the movant's "hope" that the issue raised in the district court would even be decided by the Supreme Court. See id. at *4. In Branch Banking & Trust Co. v. Fishing Vessel TOPLESSS, No. ELH-12-2364, 2012 U.S. Dist. LEXIS 170296, 2012 WL 6019288 (D. Md. Nov. 29, 2012), the district court denied a motion to stay proceedings on a federal claim pending the defendant's appeal of a state court's denial of its motion to set aside a default on a related state law claim, where the defendant had not "articulated any reason to suggest that a resolution in its favor [was] imminent, or even likely" on the default, let alone on the merits of the common issue. See 2012 U.S. Dist. LEXIS 170296, [WL] at *5. In Hunt Valley Baptist Church, Inc. v. Baltimore County, Maryland, No. ELH-17-804, 2018 U.S. Dist. LEXIS 54081, 2018 WL 1570256 (D. Md. Mar. 29, 2018), the district court denied a motion to stay pending a decision in a state court case where the state court proceedings "had already been stayed," and, apparently, in favor of "allow[ing] the federal case to proceed first." See 2018 U.S. Dist. LEXIS 54081, [WL] at *3.

In the three remaining cases, the requests for a stay were based on Facebook, which, at the time those requests were made, was at a much earlier **[*12]** stage of the appellate proceedings, in particular, before briefing was complete and oral argument set, and, in one instance, even before any briefing had been filed. See, e.g., Becker v. Keller Williams Realty, Inc., No. 19-cv-81451, 2020 U.S. Dist. LEXIS 155545, *3 (S.D. Fla. Aug. 27, 2020), Doc. No. 49 (finding court could not "prognosticate" when decision in Facebook would be issued; noting "the briefs in the Facebook case have not been filed and the Supreme Court has yet to set oral argument"). Further, as Mayvenn points out, a number of those cases were, at the time the stay was requested, "significantly more procedurally advanced" in the district court (see Reply 9:1-2); see, e.g., Becker, No. 19-cv-81451, 2020 U.S. Dist. LEXIS 155545, *3 (S.D. Fla. Aug. 27, 2020), Doc. No. 49 (noting, "[d]iscovery ha[d] been proceeding, expert disclosure [was] almost complete," and trial was set to commence in seven months), whereas "the early stage of this litigation weighs in favor of a stay," see Aleisa, 2020 U.S. Dist. LEXIS 188024, 2020 WL 5993226, at *8 (granting stay pending decision in Facebook; noting case was "still in the pleadings stage" (internal quotation and citation omitted)).

Accordingly, to the extent Mayvenn seeks a stay pending a decision in Facebook, the Court finds the third factor weighs **[*13]** in favor of a stay, and, having found the other two factors likewise weigh in favor of a stay, will grant a stay pending the decision therein.

**2. Stay Pending FCC's Declaratory Ruling**

Citing the primary jurisdiction doctrine, Mayvenn argues a stay, either in addition to or in the alternative to a stay pending a decision in Facebook, should be issued pending a declaratory ruling by the FCC as to the definition of an ATDS.

"The primary jurisdiction doctrine allows courts to stay proceedings . . . pending the resolution of an issue within the special competence of an administrative agency." Clark v. Time Warner Cable, 523 F.3d 1110, 1114 (9th Cir. 2008). The doctrine "applies in a limited set of circumstances" and "is not designed to secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit." See id. (internal quotations and citations omitted). Rather, the doctrine "is properly invoked when a claim is cognizable in federal court but requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." Brown v. MCI WorldCom Network Servs., Inc., 277 F.3d 1166, 1172 (9th Cir. 2002).

Here, according to Mayvenn, the FCC, on October

3, 2018, released a Public Notice seeking comment on the definition **[*14]** of an ATDS and the period for such comment is now closed. (See Mot. at 7:8-16.) Given the Ninth Circuit's consistent resolution of that question without awaiting administrative input, however, the Court finds it presents neither "a matter of first impression" nor "a particularly complicated issue that merits waiting for FCC guidance." See Izor v. Abacus Data Sys., Inc., No. 19-CV-01057-HSG, 2019 U.S. Dist. LEXIS 130865, 2019 WL 3555110, at *3 (N.D. Cal. Aug. 5, 2019) (internal quotation and citation omitted) (finding stay pending FCC guidance on what constitutes ATDS not justified under primary jurisdiction doctrine); see also Singer v. Las Vegas Athletic Clubs, 376 F. Supp. 3d 1062, 1069 (D. Nev. 2019) (denying stay sought under primary jurisdiction doctrine; noting "Ninth Circuit courts have consistently rejected requests to stay actions pending further FCC rulemaking").

Moreover, "courts must also consider whether invoking primary jurisdiction would needlessly delay the resolution of claims," see Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 760 (9th Cir. 2015) (holding "efficiency is the deciding factor in whether to invoke primary jurisdiction"), and, unlike a stay pending the Supreme Court's decision in Facebook, "a stay . . . pending an FCC decision could be indefinite," see Bacon v. Artificial Grass Liquidators Location 1, Inc., No. 18-CV-01220-JLS-ADS, 2019 U.S. Dist. LEXIS 231120, 2019 WL 8811867, at *5 (C.D. Cal. May 1, 2019), thereby needlessly delaying the resolution of Trim's **[*15]** claims.

Accordingly, the Court declines to stay the instant action pending the FCC's declaratory ruling.

**CONCLUSION**

For the reasons stated above, Mayvenn's "Motion to Dismiss Plaintiff's Amended Complaint, or in the Alternative, to Stay This Action" is hereby GRANTED in part and DENIED in part, as follows:

1. To the extent Mayvenn seeks an order staying the above-titled action pending a decision in Facebook, the Motion is hereby GRANTED, and the parties are hereby DIRECTED to submit, no later than 14 days after such decision, a Status Report setting forth their joint or respective positions as to the effect of said decision on the instant action.

2. In all other respects, the Motion is hereby DENIED.

In light of the foregoing, the Case Management Conference is hereby CONTINUED from November 20, 2020, to July 16, 2021, at 10:30 a.m. A Joint Case Management Statement shall be filed no later than July 9, 2021.

**IT IS SO ORDERED**.

Dated: November 3, 2020

/s/ Maxine M. Chesney

MAXINE M. CHESNEY

United States District Judge

---

End of Document

No *Shepard's* Signal™
As of: January 6, 2021 9:24 PM Z

# Whattoff-Hall v. Portfolio Recovery Assocs., LLC

United States District Court for the Southern District of California

July 23, 2020, Decided; July 23, 2020, Filed

Case No. 3:19-cv-02267-CAB-MSB

**Reporter**

2020 U.S. Dist. LEXIS 130375 *; 2020 WL 5223546

KATERINE WHATTOFF-HALL, Plaintiff, v. PORTFOLIO RECOVERY ASSOCIATES, LLC, Defendant.

**Counsel:** **[*1]** For Katerine Whattoff-Hall, Plaintiff: Joshua B. Swigart, LEAD ATTORNEY, Swigart Law Group, APC, San Diego, CA; Daniel G. Shay, Law Office of Daniel G. Shay, San Diego, CA.

For Portfolio Recovery Associates, LLC, Defendant: Jessica Rose Ellis Lohr, LEAD ATTORNEY, Troutman Pepper Hamilton Sanders LLP, San Diego, CA.

**Judges:** Hon. Cathy Ann Bencivengo, United States District Judge.

**Opinion by:** Cathy Ann Bencivengo

## Opinion

**ORDER GRANTING JOINT MOTION TO STAY CASE**

[Doc. No. 19]

Plaintiff and Defendant, through their respective counsel, stipulate and respectfully request a stay of all proceedings in this case pending a global mediation of fifty-four (54) related pending matters and the decision of the Supreme Court of the United States in *Facebook, Inc. v. Duguid*, No. 19-511 (July 9, 2020). Accordingly, the parties STIPULATE and AGREE as follows:

1. Plaintiff alleges Portfolio Recovery Associates, LLC ("PRA") violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), and the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788, *et seq.* ("Rosenthal Act" or "RFDCPA").

2. Plaintiff's counsel represents a total of fifty-four (54) individual consumers in active matters making similar allegations **[*2]** against PRA. These fifty-four (54) related cases are currently pending in Judicial Arbitration Mediation Services ("JAMS"), American Arbitration Association ("AAA"), and the United States District Court for the Southern District of California.

3. In the TCPA portion of all of these cases, the plaintiff alleges PRA used an automatic telephone dialing system ("ATDS") to place telephone calls to a cellular telephone without prior express consent.

4. In its Answer to the Complaint, PRA asserted that "the telephone system used to allegedly contact Plaintiff does not constitute an automatic telephone dialing system ('ATDS') under the TCPA."

5. On July 9, 2020, the Supreme Court of the United States granted certiorari in *Facebook, Inc. v. Duguid*, No. 19-511. The central issue the Supreme Court will review and consider in *Facebook* is the definition of an ATDS under the

TCPA. Specifically, "[w]hether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'" *See* Petition for Writ of Certiorari at ii, *Facebook, Inc.*, No. 19-511 (U.S. Oct. 17, 2019). The case **[*3]** will be argued before the Supreme Court during the October 2020 Term.

6. As evidenced by the parties' pleadings, the definition of an automatic telephone dialing system under the TCPA is a central, and disputed, issue in the present action.

7. The parties agree that a stay of all proceedings in this matter is appropriate until the Supreme Court issues a decision in *Facebook* regarding the definition of an automatic telephone dialing system under the TCPA.

8. Additionally, Plaintiff's counsel and PRA have agreed in the interim to participate in mediation of the approximate fifty-four (54) related pending matters. Any settlement agreement would resolve all pending claims.

9. The proposed stay is in the furtherance of judicial economy and will avoid unnecessary expense for the parties and this forum.

10. The proposed stay is for good cause and is not made for an improper purpose. No party will suffer any prejudice as a result of the stay.

Based on the above stipulation and agreement of the parties, it is hereby **ORDERED** that the parties' joint motion to stay this case is **GRANTED**. It is further **ORDERED** as follows:

1. All proceedings in this action are stayed pending the decision of the Supreme **[*4]** Court of the United States in *Facebook, Inc. v. Duguid*, No. 19-511 (July 9, 2020).

2. The parties shall provide the Court with a Stipulation and Proposed Order regarding remaining case management deadlines within fourteen (14) days of the Supreme Court's decision in *Facebook*.

3. The stay may be lifted at any time by order of the Court.

4. Should the parties reach a settlement agreement, the parties will promptly file a joint motion to dismiss.

5. The Clerk of Court shall administratively **CLOSE** this case until the stay is lifted.

It is **SO ORDERED**.

Dated: July 23, 2020

/s/ Cathy Ann Bencivengo

Hon. Cathy Ann Bencivengo

United States District Judge

---

End of Document




As of: January 6, 2021 9:12 PM Z

# Willis v. Big Lots, Inc.

United States District Court for the Southern District of Ohio, Eastern Division

April 16, 2014, Filed

Case No. 2:12-cv-604

**Reporter**

2014 U.S. Dist. LEXIS 196721 *

Allan Willis, individually and on behalf of all others similarly situated, Plaintiff, v. Big Lots, Inc., et al., Defendants.

**Subsequent History:** Related proceeding at Brosz v. Fishman, 99 F. Supp. 3d 776, 2015 U.S. Dist. LEXIS 52810 (S.D. Ohio, Apr. 14, 2015)

Dismissed by, in part, Motion granted by, in part, Motion denied by, in part Willis v. Big Lots, Inc., 2016 U.S. Dist. LEXIS 8028 (S.D. Ohio, Jan. 21, 2016)

Motion granted by, Request granted Willis v. Big Lots, Inc., 2016 U.S. Dist. LEXIS 99483 (S.D. Ohio, July 29, 2016)

Motion granted by, Class certification granted by Willis v. Big Lots, Inc., 242 F. Supp. 3d 634, 2017 U.S. Dist. LEXIS 38926 (S.D. Ohio, Mar. 17, 2017)

Motion denied by Willis v. Big Lots, Inc., 2017 U.S. Dist. LEXIS 38933 (S.D. Ohio, Mar. 17, 2017)

Magistrate's recommendation at Willis v. Big Lots, Inc., 2017 U.S. Dist. LEXIS 68233 (S.D. Ohio, May 4, 2017)

Motion denied by Willis v. Big Lots, Inc., 2017 U.S. Dist. LEXIS 92999 (S.D. Ohio, June 16, 2017)

Motion granted by, in part, Motion denied by, in part, Stay granted by, in part, Stay denied by, in part Willis v. Big Lots, Inc., 2017 U.S. Dist. LEXIS 152152 (S.D. Ohio, Sept. 19, 2017)

Judgment entered by, Costs and fees proceeding at Willis v. Big Lots, Inc., 2018 U.S. Dist. LEXIS 223175 (S.D. Ohio, Nov. 9, 2018)

**Counsel:** **[*1]** For Alan Willis, Individually and on Behalf of All Others Similarly Situated, City of Pontiac General Employees' Retirement System, Plaintiff: Austin P Brane, David W Mitchell, Kevin A. Lavelle, Lucas F Olts, PRO HAC VICE, Robbins Geller Rudman & Dowd LLP, San Diego, CA; Brian E Cochran, PRO HAC VICE, Robbins Geller Rudman Dowd LLP, San Diego, CA; Brian K Murphy, Joseph F Murray, Murray Murphy Moul + Basil LLP, Columbus, OH.

For Teamsters Local 237 Additional Security Benefit Fund, Plaintiff: Joseph F Murray, LEAD ATTORNEY, Murray Murphy Moul Basil LLP, Columbus, OH.

For Big Lots, Inc., Defendant: John Joseph Kulewicz, William Darrell Kloss, Jr., LEAD ATTORNEYS, Vorys Sater Seymour & Pease - 2, Columbus, OH; Aaron I. Karp, Caitlin N. Fitzpatrick, David A. Herman, Matthew P. Hendrickson, Michael A. Paskin, PRO HAC VICE, Cravath, Swaine & Moore LLP, New York, NY; Timothy G Cameron, PRO HAC VICE, Cravath, Swaine & Moore, LLP, New York, NY.

For Steven S. Fishman, Joe R. Cooper, Charles W Haubiel II, Timothy A. Johnson, Defendant: John Joseph Kulewicz, William Darrell Kloss, Jr., LEAD ATTORNEYS, Vorys Sater Seymour & Pease - 2, Columbus, OH; Caitlin N. Fitzpatrick, David A. Herman, Matthew **[*2]** P. Hendrickson, Michael A. Paskin, PRO HAC VICE, Cravath, Swaine & Moore LLP, New York, NY; Timothy G Cameron, PRO

HAC VICE, Cravath, Swaine & Moore, LLP, New York, NY.

**Judges:** MICHAEL H. WATSON, UNITED STATES DISTRICT JUDGE.

**Opinion by:** MICHAEL H. WATSON

## Opinion

**OPINION AND ORDER**

Plaintiff brings this securities class action under the Securities Exchange Act of 1934. He moves to partially lift the mandatory discovery stay that currently is in place as a result of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b)(3)(B). ECF No. 22. Specifically, Plaintiff seeks discovery of material Defendants have already produced to the Securities and Exchange Commission ("SEC") and other governmental entities, as well as discovery produced in other shareholder derivative actions against Defendants pending before this Court. Defendants oppose the motion.

The PSLRA provides in part:

> In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

15 U.S.C. § 78u-4(b)(3)(B). A motion to dismiss is pending in this **[*3]** case. ECF No. 28.

> The PSLRA's stay of discovery procedures was intended by Congress to protect innocent defendants from having to pay nuisance settlements in securities fraud actions in which a foundation for the suit cannot be pleaded; rather than lead to the conclusion that plaintiffs should receive more leniency in amending their pleadings, the stay of discovery procedures adopted in conjunction with the heightened pleading standards under the PSLRA is a reflection of the objective of Congress to provide a filter at the earliest stage (the pleading stage) to screen out lawsuits that have no factual basis.

*Miller v. Champion Enters., Inc.*, 346 F.3d 660, 691-92 (6th Cir. 2003) (quotes omitted). More specifically, "'Congress enacted the discovery stay in order to minimize the incentives for plaintiffs to file frivolous securities . . . actions in the hope either that corporate defendants will settle those actions rather than bear the high cost of discovery . . . or that the plaintiff will find during discovery some sustainable claim not alleged in the complaint." *Dipple v. Odell*, 870 F. Supp. 2d 386, 390 (E.D. Pa. 2012) (quoting *In re WorldCom Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D. N.Y. 2002) (internal citations omitted)).

To overcome the mandatory stay, a movant must demonstrate "exceptional circumstances." *Smith v. Robbins & Myers, Inc.*, No. 3:12-cv-281, 2012 U.S. Dist. LEXIS 157294, 2012 WL 5479061, at *2 (S.D. Ohio Oct. 26, 2012). The stay may **[*4]** be lifted only if the moving party shows both that the discovery request is particularized and that undue prejudice will result if the stay remains in place. 2012 U.S. Dist. LEXIS 157294, [WL] at *2-3. Mindful of these principles, the Court will proceed to examine whether Plaintiff has demonstrated that his request is particularized and that he will suffer undue prejudice if the stay is not lifted.

Plaintiff asserts he meets the particularized discovery prong because he seeks only materials already produced to governmental entities and plaintiffs in other lawsuits. A request for discovery is deemed particularized when the party who seeks the discovery adequately specifies the materials sought. *Nichting v. DPL, Inc.*, No. 3:11-cv-141, 2011 U.S. Dist. LEXIS 76739, 2011 WL 2892945, at *2 (S.D. Ohio July 15, 2011). Here, Defendants do not seriously contest that Plaintiffs request is particularized and instead focus their opposition on

Plaintiff's alleged inability to demonstrate undue prejudice. Given that Plaintiff seeks production of a limited universe of documents already produced to others, the Court finds that Plaintiff has met the requirement that the discovery request be particularized.

Plaintiff asserts that he will suffer undue prejudice if limited discovery is not permitted. He contends related **[*5]** matters are proceeding "rapidly," and his ability to recover might be compromised by any settlement Defendants might reach with the SEC. Plaintiff also maintains that the brazen nature of Defendants' fraud and the multiple investigations it spawned are indicative of exceptional circumstances.

Defendants argue that Plaintiff cannot show undue prejudice because the SEC has informed Big Lots that its investigation is closed, and it does not intend to recommend any enforcement action in this matter. Moreover, Defendants note that no discovery has been sought or produced in the related action currently pending before this Court. In addition, Defendants suggest that this is a fairly routine case that does not entail exceptional circumstances that would warrant lifting the stay.

Undue prejudice means improper or unfair treatment short of irreparable harm. *Nichting*, 2011 U.S. Dist. LEXIS 76739, 2011 WL 2892945, at *3. Delay resulting from the mandatory stay does not, by itself, constitute undue prejudice. *Id.*

There is a dearth of federal appellate authority on the subject of undue prejudice, and district courts are split as to whether the standard is met when a defendant has disclosed materials to the SEC or to parties in other lawsuits. On the one hand, **[*6]**

> courts have found that undue prejudice is present where the defendants have disclosed documentation in the midst of reorganizing, merging, or being acquired *(e.g., Royal Ahold*, 220 F.R.D. 246); where the defendants have submitted documentation in federal investigations *(e.g. In re LaBranche*, 333 F. Supp. 2d at 181-82); or where the defendants faced separate lawsuits ( *e.g., In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d at 305). In those cases, the courts were particularly concerned with the plaintiffs' abilities to adequately pursue settlement and other options when at an informational disadvantage compared to other parties. *See, e.g., In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d at 305 (without lifting the stay, plaintiff "would be prejudiced by its inability to make informed decisions about its litigation strategy in a rapidly shifting landscape."); *In re Delphi Corp.*, 2007 U.S. Dist. LEXIS 10408, 2007 WL 518626, at *7 (plaintiffs were not given access to same documents as creditors, causing them to face the risk that there would not be any funds at the conclusion of the action); *In re LaBranche*, 333 F. Supp. 2d at 184.

*Pension Trust Fund for Operating Engineers v. Assisted Living Concepts, Inc.*, 943 F. Supp. 2d 913, 916 (E.D. Wis. 2013) *("PTFOE")*. Courts with this view also reason that because the defendant has already produced the materials, the burden on the defendant is slight, so policy underpinnings of the PSLRA's mandatory stay apply with less force. *Id.* at 915.

On the other hand, "[m]any other courts, . . . have concluded that an informational disadvantage does not rise to the level **[*7]** of undue prejudice contemplated by the narrow statutory exception in 15 U.S.C. § 78u-4(b)(3)(B)." *Dipple v. Odell*, 870 F. Supp. 2d 386, 394 (ED. Pa. 2012) (citing cases). "'Whether PSLRA plaintiffs should be subjected to a discovery stay while other parties, who are bringing claims under other causes of action, are not subjected to a stay is a question for Congress, and one that Congress has answered." *Id.* (quoting *In re Refco, Inc. Sec. Litig.*, No. 05-8626, 2006 U.S. Dist. LEXIS 55639, 2006 WL 2337212, at *2 (S.D. N.Y. Aug. 8, 2006)). "The PSLRA automatic stay does not apply to government investigations, bankruptcy proceedings, internal investigations, or non-PSLRA actions. This incongruity is not evidence of undue prejudice, but rather is evidence of Congress's judgment that PSLRA actions should be treated differently than other actions." *Id.* (internal quotes and cites omitted).

The Court finds that Plaintiff has failed to establish undue prejudice even under the standard applied

by courts that recognize the informational disadvantage theory. First, the SEC's investigation has been completed, and the SEC does not plan to bring an enforcement action. Moreover, as Defendants note, this is not an investigation in which testimony of witnesses was taken. Rather, Defendants produced documents, and there is no allegation that those documents are at risk of being destroyed or concealed. **[*8]** In addition, since it appears a settlement with the SEC will not occur, any potential recovery or settlement with Plaintiff will not be reduced by the amount Defendants might have paid to the SEC.

Further, no discovery has been sought or produced in the other related cases before this Court, and none of those cases are proceeding rapidly. As a result, Plaintiff is not at an informational disadvantage visa vis the plaintiffs in those other actions. Although the Court tends to agree with Plaintiff that producing the documents would likely not impose a severe burden on Defendants, that fact alone does not establish undue prejudice or extraordinary circumstances.

In sum, the Court finds that Plaintiff has not demonstrated that production of the subject documents is necessary to avoid undue prejudice. This case does not entail extraordinary circumstances, and accordingly the Court **DENIES** Plaintiffs motion to partially lift the mandatory discovery stay, ECF No. 22.

**IT IS SO ORDERED**.

/s/ Michael H. Watson

**MICHAEL H. WATSON, JUDGE**

**UNITED STATES DISTRICT COURT**

---

End of Document